Kevin Theriot (Arizona Bar No. 030446)*
Erik Stanley (Arizona Bar No. 030961)*
Jeremiah Galus (Arizona Bar No. 030469)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org
estanley@ADFlegal.org
jgalus@ADFlegal.org

David J. Hacker (California Bar No. 249272)
ALLIANCE DEFENDING FREEDOM
101 Parkshore Drive, Suite 100
Folsom, CA 95630
(916) 923-2850
dhacker@ADFlegal.org

Casey Mattox (Virginia Bar No. 47148)*
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
cmattox@ADFlegal.org

Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678
(916) 960-2211
alex@medinamckelvey.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| FOOTHILL CHURCH, CALVARY CHAPEL CHINO HILLS, and SHEPHERD OF THE HILLS CHURCH, | Case No. |
| Plaintiffs, | |
| vs. | |
| MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendant. | |

Plaintiffs Foothill Church, Calvary Chapel Chino Hills, and Shepherd of the Hills Church (collectively, "Plaintiffs"), by and through their attorneys, state as follows:

## **NATURE OF THE ACTION**

1. In this action, Plaintiffs seek judicial review of Defendant's violations of the First and Fourteenth Amendments to the United States Constitution.

2. On August 22, 2014, Defendant imposed an unsupported and unnecessary requirement mandating that health insurance plans issued in California provide coverage for abortions, including voluntary and elective ones (the "Mandate").

3. Defendant chose not to exempt employee health plans paid for and offered by churches and other religious employers, even though the Mandate does not apply to other plans.

4. Plaintiffs, as Christian churches, hold and actively profess religious beliefs that include traditional Christian teachings on the sanctity of life.

5. Plaintiffs believe, as a matter of religious conviction, that it would be sinful and immoral for them intentionally to pay for, participate in, facilitate, or otherwise support abortion, which they believe destroys innocent human life.

6. Because federal law requires Plaintiffs to offer health insurance to their employees, the Mandate illegally and unconstitutionally coerces Plaintiffs to violate their religious beliefs under threat of heavy fines and penalties.

7. Defendant imposed the Mandate with full knowledge that it would coerce religious employers and churches like Plaintiffs to violate their sincerely held religious beliefs.

8. Plaintiffs now seek declaratory and injunctive relief to remedy this unjustified disregard of religious belief and impairment of conscience.

## **JURISDICTION AND VENUE**

9. This action raises questions under the Constitution of the United States, specifically the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988.

10. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11. This Court has authority to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and under Federal Rule of Civil Procedure 57.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant resides in this district.

## **THE PARTIES**

13. Plaintiff Foothill Church is a non-profit Christian church located in Glendora, California. Foothill Church currently offers health insurance plans to its employees through Kaiser Permanente and Blue Shield. Its plan year begins and ends annually on or about July 1.

14. Plaintiff Calvary Chapel Chino Hills is a non-profit Christian church located in Chino, California. Calvary Chapel Chino Hills currently offers health insurance plans to its employees through Kaiser Permanente, Aetna, and Anthem Blue Cross. Its plan year begins and ends annually on or about November 30.

15. Plaintiff Shepherd of the Hills Church is a non-profit Christian church located in Porter Ranch, California. Shepherd of the Hills Church currently offers health insurance plans to its employees through Anthem Blue Cross and Kaiser Permanente. Its plan year begins and ends annually on or about December 1.

16. Defendant Michelle Rouillard is the Director of the California Department of Managed Health Care ("DMHC"), an executive agency of the State of California responsible for enforcing California law and regulations regarding health insurance. In her official

capacity, Rouillard is responsible for the promulgation and enforcement of the August 22, 2014, abortion mandate. Rouillard is sued in her official capacity only.

## FACTS

17. Plaintiffs are all Christian churches that hold and actively profess historic and orthodox Christian teachings on the sanctity of human life.

18. Plaintiffs believe that the Bible teaches that each human life is formed by and bears the image of God. As such, they believe that all human life is sacred from the moment of conception to natural death and that God has condemned the intentional destruction of innocent human life.

19. Plaintiffs believe that human life is worthy of protection and respect at all stages from the time of conception.

20. Because Plaintiffs ascribe intrinsic moral value to every human being from conception (fertilization) to natural death, they believe and teach that abortion ends a human life and is a grave sin.

21. Plaintiffs believe that participation in, facilitation of, or payment for abortion is inconsistent with the dignity conferred by God on creatures made in His image.

22. Consistent with their Christian beliefs and principles, Plaintiffs also promote the physical, emotional, and spiritual well-being of their employees through the provision of generous health insurance as a benefit of employment.

23. Because Plaintiffs believe that abortion kills an innocent human life and thus runs completely counter to their religious beliefs and the goals of health care and medicine, they seek to provide health insurance coverage to their employees in a way that does not also cause them to pay for abortions.

24. To that end, Plaintiffs have consulted with their insurance brokers and/or insurers to avoid paying for abortions in their employee group health plans.

25. To Plaintiffs' great disappointment, however, their insurance brokers and/or insurers have informed them that the Mandate requires their group health insurance plans to cover abortions, including voluntary and elective ones.

26. Defendant promulgated the Mandate without any public notice or comment.

27. Defendant instead issued the Mandate through letters sent to private health insurers in California and by publishing them on the DMHC website. *See* **Exhibits 1 and 2**.

28. Plaintiffs and other interested parties did not have the opportunity to comment or provide the DMHC with their views on the Mandate before it went into effect.

29. The Mandate states that all health insurance plans issued in California must immediately provide coverage for all abortions.

30. The Mandate instructed insurers to amend their policies to remove any limitations on health coverage for abortions, such as excluding coverage for "voluntary" or "elective" abortions or limiting coverage to "therapeutic" or "medically necessary" abortions.

31. In issuing the Mandate, Defendant noted that the Knox-Keene Health Care Service Plan Act ("Knox-Keene Act") of 1975 requires health care service plans to cover all "basic health care services."

32. According to the Mandate, the Knox-Keene Act's "basic health care" requirement includes coverage for elective and voluntary abortions.

33. Defendant ignored the plain meaning and purpose of the Knox-Keene Act in issuing her novel interpretation and implementation of the "basic health care" requirement.

34. The Knox-Keene Act, which charges Defendant with the administration and enforcement of the laws relating to health care service plans, defines "basic health care services" to include physician services; hospital inpatient services and ambulatory care services; diagnostic laboratory and diagnostic and therapeutic radiologic services; home health services; preventive health services; emergency health care services; and hospice care. *See* Cal. Health & Safety Code § 1345(b).

35.    Existing law and regulations further define "basic health care services" to include services "where medically necessary." *See, e.g.*, CAL. CODE REGS. tit. 28, § 1300.67.

36.    The Knox-Keene Act specifically exempts religious employers from being forced to provide coverage for contraceptive methods "that are contrary to [their] religious tenets" and infertility treatments "in a manner inconsistent with [their] religious and ethical principles." CAL. HEALTH & SAFETY CODE §§ 1367.25(c) and 1374.55(e).

37.    Because Defendant simply read the elective abortion requirement into the Knox-Keene Act, the Mandate does not exempt the group health insurance plans of any religious employer.

38.    The Mandate has created an untenable situation where Plaintiffs and other religious employers do not have to provide health insurance coverage for contraceptives and infertility treatments but must provide coverage for voluntary and elective abortions.

39.    The Mandate requires that all health plans cover abortions, regardless of whether religious employers pay for the plans or whether the abortions are medically necessary.

40.    Defendant issued the Mandate with full knowledge that many churches and religious organizations provide health insurance coverage to their employees and hold the same or similar beliefs to Plaintiffs.

41.    Because no exemption exists from the Mandate, Plaintiffs' group health insurance plans were changed to include elective abortion coverage without their authorization and over their objections.

42.    Realizing that Plaintiffs and others have sincerely held religious beliefs against paying for or providing coverage for abortion, Defendant encouraged the insurers to hide these changes by informing them that they may "omit any mention of coverage for abortion services in health plan documents."

43.    The Mandate has prevented Plaintiffs from obtaining a health insurance plan that excludes coverage for abortions.

44.     Were it not for the Mandate, Plaintiffs would and could obtain group health insurance for their employees excluding coverage for abortions.

45.     California insurers have previously offered group health insurance plans to churches and religious employers excluding coverage for abortions and would continue to offer such plans in absence of the Mandate.

46.     In fact, before Defendant issued the Mandate, insurers submitted evidence of coverage filings to the DMHC properly notifying Defendant of benefit plan options that excluded coverage for voluntary and elective abortions.

47.     Defendant and the DMHC did not object to these filings before issuing the Mandate, thereby previously permitting insurers to offer health insurance plans that excluded coverage for abortions.

48.     On information and belief, Defendant issued the Mandate in response to pressure from abortion advocates who had learned that two Catholic universities in California had recently decided to eliminate coverage for elective abortions from their health care plans.

49.     The Knox-Keene Act's "basic health care" requirement, as interpreted and implemented through the Mandate, is not generally applicable because it provides for numerous exemptions.

50.     For instance, the Knox-Keene Act (and by extension the Mandate), does not apply to certain specified health care service plans, including plans (among others) "directly operated by a bona fide public or private institution of higher learning" and the California Small Group Reinsurance Fund. CAL. HEALTH & SAFETY CODE §§ 1343(e)

51.     Furthermore, the Knox-Keene Act creates a system of individualized exemptions, giving the Director of DMHC—in this case, Defendant—the authority to exempt any class of persons or plan contracts from the requirements of the Act and giving her the power to waive any requirement of any rule, including the Mandate. *See* CAL. HEALTH & SAFETY CODE §§ 1343(b) and 1344(a).

52. The Mandate does not apply to health benefit plans offered by the California Public Employees' Retirement System (CalPERS) to active and retired state and local government employees.

53. CalPERS continued to offer health benefit plans excluding coverage for elective abortions after Defendant issued the Mandate.

54. The Mandate also does not apply to certain multi-state plans sold on California's individual and small business exchanges, which were established as part of the Patient Protection and Affordable Care Act ("ACA").

55. Given the number of their full-time employees, Plaintiffs are not eligible to purchase health plans on California's small business exchange.

56. Even if they could, California's small business exchange prohibits Plaintiffs from limiting their employees' choices to a specific multi-state plan excluding coverage for abortion.

57. The Mandate makes it impossible for Plaintiffs to purchase a group health insurance plan that does not include coverage for abortions to which they object on religious grounds.

58. Furthermore, Plaintiffs are unable to avoid the harmful effects of the Mandate because federal law compels them to offer their employees affordable health insurance.

59. Under the ACA, employers with more than fifty full-time employees must provide a certain level of health insurance to their employees.

60. Plaintiffs each have more than fifty full-time employees and must comply with ACA's mandate to provide health insurance to their employees.

61. The Mandate thus forces Plaintiffs to choose between violating federal law and violating their deeply held religious beliefs by paying for abortion coverage.

62. Defendant designed the Mandate to make it impossible for Plaintiffs to comply with their religious beliefs.

63.    The Mandate makes no allowance for the religious freedom of religious employers and churches, including Plaintiffs, who object to paying for or providing insurance coverage for abortions.

64.    Plaintiffs cannot freely avoid the Mandate by simply refusing to provide health insurance to its employees, because the ACA imposes crippling monetary penalties on employers that do not provide health insurance.

65.    Refusing to offer health insurance to their employees simply to avoid the Mandate would also be inconsistent with Plaintiffs' Christian beliefs and principles promoting the physical, emotional, and spiritual well-being of their employees.

66.    Moreover, Plaintiffs rely on tithes and donations from members to fulfill their Christian mission.

67.    On information and belief, members who give to Plaintiffs do so with an understanding of Plaintiffs' Christian mission and with the assurance that Plaintiffs will continue to adhere to and transmit authentic Christian teachings on morality and the sanctity of human life.

68.    Plaintiffs cannot use donated funds for purposes known to be morally repugnant to their members and in ways that violate the implicit trust of the purpose of their tithes and donations.

69.    The Mandate imposes a burden on Plaintiffs' ability to recruit and retain employees by creating uncertainty as to whether they will be able to offer group health insurance in the future, placing Plaintiffs in a competitive disadvantage.

70.    Plaintiffs have already had to devote significant institutional resources, including both staff time and funds, to determining how to respond to the Mandate.

71.    Among other things, Plaintiffs filed an administrative complaint with the U.S. Department of Health and Human Services Office of Civil Rights in October 2014, asking it to enforce the Hyde-Weldon Amendment and vindicate Plaintiffs' constitutional rights. *See* **Exhibit 3**.

72. Plaintiffs' administrative complaint explained that the Mandate constitutes unlawful discrimination against a health care entity under section 507 of the Consolidated Appropriations Act, Pub. L. No. 113-76, 128 Stat. 5 (Jan. 17, 2014) (the Hyde-Weldon Amendment).

73. The Hyde-Weldon Amendment prohibits states that receive funding under the federal Labor, Health and Human Services, and Education Appropriations Act, from discriminating against health care plans based on whether they cover abortion.

74. Under the Hyde-Weldon Amendment, none of the funds received for programs under the Labor, Health and Human Services, and Education Appropriations Act may be available to a State that "subjects any individual or institutional health care entity to discrimination on the basis that the health care entity does not provide for, pay for, provide coverage of, or refer for abortions."

75. The Hyde-Weldon Amendment defines "health care entity" to include "a health insurance plan."

76. On information and belief, California receives approximately $70 billion in federal funds for programs under the Labor, Health and Human Services, and Education Appropriations Act.

77. California accepted these federal funds with full knowledge of the requirements of the Hyde-Weldon Amendment.

78. Defendant chose to ignore the Hyde-Weldon Amendment when issuing the Mandate.

79. Plaintiffs have sent several follow up letters to the U.S. Department of Health and Human Services Office of Civil Rights, asking it to act quickly given the ongoing violation of Plaintiffs' constitutional rights. *See* **Exhibits 4, 5, and 6.**

80. To date, the U.S. Department of Health and Human Services Office of Civil Rights has not indicated whether it intends to enforce the Hyde-Weldon Amendment, leading Plaintiffs to file this lawsuit.

81.     Without injunctive and declaratory relief as requested herein, Plaintiffs are suffering and will continue to suffer irreparable harm.

### FIRST CAUSE OF ACTION
**Violation of the Free Exercise Clause of the**
**First Amendment to the United States Constitution**

82.     Plaintiffs reallege all matters set forth in paragraphs 1-81 and incorporate them herein.

83.     Plaintiffs' sincerely held religious beliefs prohibit them from providing health insurance coverage for abortion.

84.     When Plaintiffs comply with their sincerely held religious beliefs on the sanctity of human life, they exercise religion within the meaning of the Free Exercise Clause.

85.     The Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to change or violate their religious beliefs. Defendant substantially burdens Plaintiffs' religious exercise when she forces Plaintiffs to choose between following their religious commitments and suffering debilitating penalties under federal law or violating their consciences in order to avoid those penalties.

86.     The Mandate coerces Plaintiffs to provide coverage for abortions in violation of their religious beliefs.

87.     Plaintiffs have a sincere religious objection to providing coverage for abortions because they believe that abortion ends an innocent human life.

88.     The Mandate is neither neutral nor generally applicable.

89.     The Knox-Keene Act creates categorical and individualized exemptions to its requirements and, by extension, the Mandate.

90.     The Mandate was not applied to certain health benefit plans provided through CalPERS that excluded coverage for elective abortions.

91.     The Mandate also does not apply to multi-state plans sold and purchased pursuant to the ACA.

92.     The Mandate furthers no compelling governmental interest.

93.     California already exempts religious employers like Plaintiffs from being forced to provide health insurance coverage for contraceptives and infertility treatments.

94.     Guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a significant social problem.

95.     Compelling Plaintiffs and other churches and religious employers to pay for abortions is hardly the least restrictive means of advancing any interest that the government might have.

96.     The Mandate constitutes government-imposed coercion on Plaintiffs to change or violate their sincerely held religious beliefs.

97.     The Mandate chills Plaintiffs' religious exercise.

98.     The Mandate exposes Plaintiffs to substantial monetary penalties and/or financial burdens for their religious exercise.

99.     The Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about their health insurance benefits caused by the Mandate.

100.    The Mandate imposes a burden on Plaintiffs' employee recruitment efforts by creating uncertainty as to whether or on what terms they will be able to offer health insurance or will suffer penalties therefrom.

101.    If Plaintiffs drop health insurance to avoid application of the Mandate, they will be in violation of federal law and will experience a competitive disadvantage in their efforts to recruit and retain employees.

102.    Defendant designed the Mandate to make it impossible for Plaintiffs to comply with their religious beliefs.

103.    Defendant issued the Mandate to suppress the religious exercise of Plaintiffs and other similarly situated churches and religious employers.

104.    The Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

**SECOND CAUSE OF ACTION**
**Violation of the Establishment Clause of the**
**First Amendment to the United States Constitution**

105.     Plaintiffs reallege all matters set forth in paragraphs 1-81 and incorporate them herein.

106.     The Establishment Clause of the First Amendment prohibits the establishment of any religion and/or excessive government entanglement with religion.

107.     The Establishment Clause of the First Amendment also prohibits the government from disapproving of or showing hostility toward a particular religion or religion in general.

108.     The Mandate discriminates between religions and denominations and exhibits hostility towards certain religious beliefs.

109.     The Mandate adopts a particular theological view of what is acceptable moral complicity in provision of abortion and imposes it upon all churches and religious employers who must either conform their consciences or suffer penalty.

110.     Defendant issued the Mandate with full knowledge that some religions and denominations object to participating in, paying for, facilitating, or otherwise supporting abortion, while others do not.

111.     Defendant designed the Mandate to make it impossible for Plaintiffs to comply with their religious beliefs.

112.     Defendant issued the Mandate to suppress the religious exercise of Plaintiffs and other similarly situated churches and religious employers.

113.     The Mandate unconstitutionally prefers those religions and denominations that do not have religious objections to abortion and exhibits hostility towards those that do by forcing them to pay for abortions in violation of their sincerely held religious beliefs.

114.     The Mandate violates Plaintiffs' rights secured to it by the Establishment Clause of the First Amendment to the United States Constitution.

## THIRD CAUSE OF ACTION
### Violation of the Free Speech Clause of the
### First Amendment to the United States Constitution

115. Plaintiffs reallege all matters set forth in paragraphs 1-81 and incorporate them herein.

116. The Mandate requires Plaintiffs to purchase group health plans that provide coverage for abortions, forcing them to convey a message or speak in a manner contrary to their religious beliefs.

117. By requiring Plaintiffs to cover abortions in their employee health plans, the Mandate forces Plaintiffs to fund government-dictated speech that is directly at odds with the religious message that they wish to convey to their employees, parishioners, and broader culture.

118. Defendant has no narrowly tailored compelling interest to justify this compelled speech.

119. The Mandate violates Plaintiffs' rights secured to them by the Free Speech Clause of the First Amendment of the United States Constitution.

## FOURTH CAUSE OF ACTION
### Violation of the Equal Protection Clause of the
### Fourteenth Amendment to the United States Constitution

120. Plaintiffs reallege all matters set forth in paragraphs 1-81 and incorporate them herein.

121. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs equal protection of the laws, which prohibits Defendant from treating Plaintiffs differently than similarly situated persons and businesses.

122. The government may not treat some employers disparately as compared to similarly situated employers.

123. The Mandate treats Plaintiffs differently than similarly situated persons and businesses in that there are categorical and individualized exemptions to the Knox-Keene Act and the Mandate's requirements.

124. Defendant lacks a rational or compelling state interest for such disparate treatment of Plaintiffs because guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a significant social problem.

125. Defendant's disparate treatment of Plaintiffs is not narrowly tailored because compelling Plaintiffs and other churches and religious employers to pay for abortions is hardly the least restrictive means of advancing any interest that the government might have.

126. The Mandate, as applied to Plaintiffs, violates their right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter a judgment declaring the Mandate and its application to Plaintiffs and others not before the Court to be a violation of the First and Fourteenth Amendments to the United States Constitution.

b. Enter a permanent injunction prohibiting Defendant from enforcing the Mandate against Plaintiffs and others not before the Court in a way that substantially burdens the religious belief of any person in violation of the United States Constitution, and prohibiting Defendant from illegally discriminating against Plaintiffs and others not before the Court by preventing them from purchasing a group health insurance plan that excludes coverage for abortion;

c. Award Plaintiffs court costs and reasonable attorney's fees; and

d. Award such other and further relief as to which Plaintiffs may be entitled.

Respectfully submitted this the 16th day of October, 2015.

1

2

3    /s/ David J. Hacker
      David J. Hacker (California Bar No. 249272)
4     ALLIANCE DEFENDING FREEDOM
5     101 Parkshore Drive, Suite 100
      Folsom, CA 95630
6     (916) 923-2850
      dhacker@ADFlegal.org
7

8     Kevin Theriot (Arizona Bar No. 030446)*
      Erik Stanley (Arizona Bar No. 030961)*
9     Jeremiah Galus (Arizona Bar No. 030469)*
      ALLIANCE DEFENDING FREEDOM
10    15100 N. 90th Street
      Scottsdale, AZ 85260
11    (480) 444-0020
      ktheriot@ADFlegal.org
12    estanley@ADFlegal.org
      jgalus@ADFlegal.org
13

14    Casey Mattox (Virginia Bar No. 47148)*
      ALLIANCE DEFENDING FREEDOM
15    440 First Street, NW, Suite 600
      Washington, DC 20001
16    (202) 393-8690
      cmattox@ADFlegal.org
17

18    Alexander M. Medina (California Bar No. 222015)
      MEDINA McKELVEY LLP
19    983 Reserve Drive
      Roseville, CA 95678
20    (916) 960-2211
      alex@medinamckelvey.com
21

22    *Pro hac vice application forthcoming

23    ATTORNEYS FOR PLAINTIFFS

24

25

26

27

28