Erik Stanley (Arizona Bar No. 030961)*
Kevin Theriot (Arizona Bar No. 030446)*
Jeremiah Galus (Arizona Bar No. 030469)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
estanley@ADFlegal.org
ktheriot@ADFlegal.org
jgalus@ADFlegal.org

David J. Hacker (California Bar No. 249272)
ALLIANCE DEFENDING FREEDOM
101 Parkshore Drive, Suite 100
Folsom, CA 95630
(916) 923-2850
dhacker@ADFlegal.org

Casey Mattox (Virginia Bar No. 47148)*
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
cmattox@ADFlegal.org

Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678
(916) 960-2211
alex@medinamckelvey.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| FOOTHILL CHURCH, CALVARY CHAPEL CHINO HILLS, and SHEPHERD OF THE HILLS CHURCH, | Case No. 2:15-CV-02165-KJM-EFB |
| Plaintiffs, | |
| vs. | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care. | |
| Defendant. | |

Plaintiffs Foothill Church, Calvary Chapel Chino Hills, and Shepherd of the Hills Church (collectively, "the Churches"), by and through their attorneys, hereby submit their First Amended Complaint for Injunctive and Declaratory Relief and allege as follows:

## INTRODUCTION

1.   The Churches challenge the validity of a mandate issued by Defendant Michelle Rouillard, Director of the California Department of Managed Health Care (the "DMHC"), on August 22, 2014, requiring group health insurance plans to provide coverage for all legal abortions, including voluntary and elective ones.

2.   After decades of approving group health plans that excluded or limited coverage for abortion, Defendant suddenly reversed course in response to growing pressure from abortion advocates who had learned that religious employers were permitted to have plans limiting or excluding abortion coverage consistent with their religious beliefs.

3.   In so doing, Defendant demanded that insurers *immediately* begin covering all abortions in their health plans and remove any restrictions placed on abortion coverage, such as exclusions for "voluntary" or "elective" abortions or limitations on coverage to "therapeutic" or "medically necessary" abortions.

4.   Defendant based her decision on a requirement in California's Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act") that group health plans cover "basic health care services."

5.   Until 2014, however, Defendant and DMHC had not interpreted "basic health care services" to include elective abortions because existing state law plainly defines the term to include services only "where medically necessary," *see* Cal. Code Regs. tit. 28, § 1300.67, and federal law prohibits California from discriminating against health insurance plans based on whether they cover abortion, *see* Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, Division H, Title V, § 507(d), 129 Stat. 2242 (Dec. 18, 2015).

6.     Because Defendant interpreted and applied the Knox-Keene Act to require immediate coverage for abortion, and provided absolutely no advance public notice or opportunity for comment, Defendant caused the Churches' group health plans to include coverage for elective abortions without their knowledge and in violation of their religious beliefs.

7.     Imposing this unprecedented requirement on houses of worship was (and is) unnecessary.

8.     The Knox-Keene Act exempts entire categories of health plans from its requirements and gives Defendant unfettered discretion to grant individualized exemptions from and waivers to the requirements of the Act, including its "basic health care services" requirement.

9.     Defendant, however, has refused to accommodate the Churches' religious objections to providing coverage for abortion, which their religion sincerely teaches is the taking of an innocent human life.

10.     Other religious employers have received better treatment. Since issuing her August 22, 2014, letters, Defendant has exempted at least one group health plan from the Knox-Keene Act's "basic health care services" requirement, allowing that plan to exclude coverage for elective abortion except in the cases of rape and incest.

11.     Defendant granted this exemption to accommodate religious employers with preferred beliefs about when it is morally acceptable to provide employees with health insurance coverage for elective abortions.

12.     But the exempted plan does not meet the needs of the Churches and other employers with religious beliefs that prevent them from paying for or providing insurance coverage for elective abortions under any circumstance.

13.     Despite being asked to provide the Churches and other religious employers with a similar exemption for their plans, Defendant has refused to grant them one.

14.     The Churches now seek declaratory and injunctive relief to remedy this unnecessary infringement of religious belief and impairment of conscience.

15.     Without injunctive and declaratory relief as requested herein, the Churches are suffering and will continue to suffer irreparable harm.

**JURISDICTION AND VENUE**

16.     This action raises questions under the Constitution of the United States, specifically the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988.

17.     This Court has subject matter jurisdiction over the Churches' claims pursuant to 28 U.S.C. §§ 1331 and 1343.

18.     This Court has authority to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and under Federal Rule of Civil Procedure 57.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant resides in this district.

**PARTIES**

20.     Plaintiff Foothill Church is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Foothill Church is located in Glendora, California, and offers health insurance coverage to its employees through Kaiser Permanente and Blue Shield.

21.     Plaintiff Calvary Chapel Chino Hills is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Calvary Chapel Chino Hills is located in Chino, California, and offers health insurance coverage to its employees through Kaiser Permanente, Aetna, and Anthem Blue Cross.

22.     Plaintiff Shepherd of the Hills Church is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Shepherd of the Hills Church is located in Porter Ranch, California, and offers health insurance plans to its employees through Anthem Blue Cross and Kaiser Permanente.

23.     Defendant Michelle Rouillard is the Director of the California Department of Managed Health Care ("DMHC"), an executive agency of the State of California responsible for enforcing California law and regulations regarding health insurance. In her official capacity, Rouillard is responsible for interpreting the Knox-Keene Act's "basic health care services" requirement to include all legal abortions and for issuing the August 22, 2014, letters requiring the Churches' group health plans to cover abortion.

## FACTS

### The Churches' religious beliefs prohibit abortion coverage.

24.     The Churches believe that the Bible is the inspired Word of God and the authoritative guide for all Christian life, practice, and doctrine.

25.     The Churches hold and actively profess historic and orthodox Christian teachings on the sanctity of human life, including the belief that each human life is formed by and bears the image of God.

26.     The Churches believe and teach that all human life is sacred from the moment of conception to natural death and that God has condemned the intentional destruction of innocent human life.

27.     The Churches believe and teach that abortion destroys an innocent human life and therefore is inconsistent with biblical teachings about the sanctity of human life.

28.     The Churches believe and teach that participation in, facilitation of, or payment for an elective abortion is a grave sin.

29.     Accordingly, the Churches' religious beliefs prohibit them from purchasing or providing health insurance coverage for abortion.

30.     Consistent with their religious beliefs, the Churches seek to recognize and preserve the sanctity of human life through their outreach and ministries.

31.     For example, Foothill Church supports a local pregnancy resource center that provides life-affirming support to women and families needing pregnancy-related services, including after-abortion care.

32.     Calvary Chapel Chino Hills likewise supports local medical centers and clinics that provide free, life-affirming counseling and medical services to women facing unexpected pregnancies.

33.     And Shepherd of the Hills Church hosts a post-abortion Bible study and ministry for women who have had abortions and who are seeking healing and forgiveness in Jesus Christ.

34.     The Churches' religious beliefs also compel them to promote the physical, emotional, mental, and spiritual well-being of their employees, and they exercise those beliefs, in part, by providing health insurance coverage as a benefit of employment.

35.     In deciding to offer health insurance to their employees, the Churches evaluated various options and determined that purchasing a group health insurance plan was the only affordable way for them to provide health care coverage consistent with their religious duty to care for their employees and their legal obligations under the Patient Protection and Affordable Care Act ("ACA").

36.     Because of their religious beliefs, however, the Churches seek to offer health insurance coverage to their employees in a way that does not also cause them to pay for abortions.

37.     To that end, the Churches consulted with their insurance brokers and/or insurers to avoid paying for abortions in their employee group health plans.

38.     The Churches' insurance brokers and/or insurers informed them that Defendant and DMHC, relying on a new interpretation of the Knox-Keene Act, no longer allow group health insurance plans to exclude or limit coverage for abortion.

### Defendant reinterprets the Knox-Keene Act.

39.     The Knox-Keene Act is a decades-old law that requires group health insurance plans to include coverage for, among other things, "basic health care services." Cal. Health & Safety Code § 1367(i).

40.     The Knox-Keene Act defines "basic health care services" to include physician services; hospital inpatient services and ambulatory care services; diagnostic laboratory and diagnostic and therapeutic radiologic services; home health services; preventive health services; emergency health care services; and hospice care. *See* Cal. Health & Safety Code § 1345(b).

41.     The implementing regulations adopted by DMHC clarify that "basic health care services" include only "medically necessary" services. *See* Cal. Code Regs. tit. 28, § 1300.67.

42.     Until recently, Defendant and DMHC did not interpret "basic health care services" to include elective abortions.

43.     As a result, the Churches and other religious employers were free to purchase group health insurance plans that excluded or limited abortion coverage consistent with their religious beliefs.

44.     But that freedom was stripped away shortly after abortion-rights groups learned that two Catholic universities in California had decided to remove elective abortion coverage from their employee health care plans.

45.     These abortion-rights groups—led by Planned Parenthood Affiliates of California, the American Civil Liberties Union of California, and NARAL Pro-Choice California—lobbied Defendant and DMHC to stop allowing religious

employers to purchase group health plans that exclude or limit abortion coverage consistent with their religious beliefs.

46.  In response to this growing pressure from abortion advocates, Defendant and DMHC reversed their previous practice and reinterpreted the Knox-Keene Act.

47.  On August 22, 2014, Defendant sent letters to seven private health insurers, informing them that they must immediately begin covering all legal abortions and that their insurance contracts could no longer limit or exclude coverage for abortion in any way. *See* Exhibit 1.

48.  According to the letters, Defendant and DMHC surveyed evidence of coverage filings (EOC) and determined that language limiting or excluding coverage for abortion was present in EOC filings for products "covering a very small fraction of California health plan enrollees." *Id.*

49.  Defendant demanded that the insurers amend those plans and remove any limitations on coverage for abortions, such as excluding coverage for "voluntary" or "elective" abortions or limiting coverage to "therapeutic" or "medically necessary" abortions. *Id.*

50.  Defendant asserted that any limitations placed on abortion coverage violated the requirement in the Knox-Keene Act that group health plans include coverage for "basic health care services." *Id.*

51.  Defendant also cited as authority the California Constitution, the California Reproductive Privacy Act, and "multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or have a legal abortion." *Id.*

52.  Notwithstanding Defendant's letters, nothing in the Knox-Keene Act, California Constitution, California Reproductive Privacy Act, or California case

law requires churches or other religious employers to pay for or otherwise facilitate access to abortions through their employee health plans.

53.   Indeed, before August 22, 2014, Defendant and DMHC specifically allowed insurers to sell group health plans that excluded coverage for elective abortions and placed other limitations on abortion coverage.

54.   Insurers previously submitted EOC filings to DMHC properly notifying Defendant of benefit plan options excluding or limiting coverage for abortions.

55.   Defendant and DMHC affirmatively approved those EOC filings and allowed insurers to offer health insurance plans that excluded or limited coverage for abortions.

56.   In addition to being inconsistent with past practice, Defendant's new interpretation and application of the Knox-Keene Act to plans purchased by the Churches and other similarly situated religious employers is fundamentally at odds with how the Knox-Keene Act treats religious employers.

57.   Indeed, the Knox-Keene Act specifically exempts religious employers from being forced to provide coverage for contraceptive methods "that are contrary to [their] religious tenets" and infertility treatments "in a manner inconsistent with [their] religious and ethical principles." Cal. Health & Safety Code §§ 1367.25(c) and 1374.55(e).

58.   Defendant's new interpretation and application of the Knox-Keene Act has created an untenable situation where the Churches and other religious employers do not have to provide health insurance coverage for contraceptives and infertility treatments but must provide coverage for elective abortions.

59.   Moreover, Defendant's interpretation and application of the Knox-Keene Act constitutes unlawful discrimination against a health insurance plan under the federal Weldon Amendment, which prohibits states that receive funding under the federal Labor, Health and Human Services, and Education Appropriations Act, from discriminating against health insurance plans based on whether they

1  cover abortion. *See* Consolidated Appropriations Act of 2016, Pub. L. No. 114-113,

2  Division H, Title V, § 507(d), 129 Stat. 2242 (Dec. 18, 2015).

3      60.    Under the Weldon Amendment, none of the funds received for programs

4  under the Labor, Health and Human Services, and Education Appropriations Act

5  may be available to a State that "subjects any individual or institutional health

6  care entity to discrimination on the basis that the health care entity does not

7  provide for, pay for, provide coverage of, or refer for abortions." *Id.*

8      61.    The Weldon Amendment defines "health care entity" to include "a

9  health insurance plan." *Id.*

10      62.    On information and belief, California receives approximately $70 billion

11  in federal funds for programs under the Labor, Health and Human Services, and

12  Education Appropriations Act.

13      **Defendant forces the Churches' to violate their religious beliefs.**

14      63.    Although Defendant addressed her August 22, 2014, letters to insurers,

15  her erroneous interpretation and application of the Knox-Keene Act directly

16  affects the Churches and other employers that had purchased or desire to

17  purchase group health plans excluding or limiting abortion coverage.

18      64.    Indeed, Defendant's interpretation and application of the Knox-Keene

19  Act's "basic health care services" requirement caused elective abortion to be

20  injected into the group health plans of religious employers without their

21  knowledge and in violation of their religious beliefs.

22      65.    Defendant demanded that insurers immediately begin covering all legal

23  abortions—regardless of existing policy language—and therefore unilaterally

24  altered the terms of health insurance contracts negotiated and paid for by the

25  Churches and other religious employers.

26      66.    Defendant intentionally did not notify the Churches or other religious

27  employers about these changes.

28

67.   In fact, she intentionally *discouraged* the insurers from notifying employers about the changes made to their plans, instructing the insurers that—even though they were *adding* abortion coverage into the existing plans of employers that had specifically contracted not to have such coverage—they could "omit any mention of coverage for abortion services in health plan documents." *See* Exhibit 1.

68.   As a result, many religious employers, including the Churches, were unaware that Defendant and DMHC had reinterpreted the Knox-Keene Act to mandate coverage for all abortions in their employee health care plans.

69.   Although Defendant eventually posted the August 22, 2014, letters on a section of DMHC's website, she did not do so until *after* the plans were manipulated to include abortion coverage, and she took no additional steps to ensure that affected employers knew their insurance contracts had been changed.

70.   The Churches and other interested parties did not have the opportunity to raise any issues or concerns before their insurance policies were changed.

71.   Defendant's novel interpretation and application of the Knox-Keene Act has prevented the Churches from obtaining a group health plan that limits or excludes abortion coverage consistent with their religious beliefs.

72.   Were it not for Defendant's mistaken interpretation and application of the Knox-Keene Act, the Churches would and could obtain group health insurance for their employees limiting or excluding coverage for abortions consistent with their religious beliefs.

73.   As noted, before August 22, 2014, the Churches and other religious employers across California could purchase a group health plan that limited or excluded abortion coverage consistent with their religious beliefs.

74.   California insurers previously offered group health insurance plans to churches and religious employers limiting or excluding coverage for abortions and

would continue to offer such plans were it not for Defendant's unlawful interpretation and application of the Knox-Keene Act.

75.     Defendant's new interpretation and application of the Knox-Keene Act makes it impossible for the Churches to purchase a group health insurance plan that does not include coverage for abortions to which they object on religious grounds.

76.     Furthermore, the Churches are unable to avoid the harmful effects of Defendant's interpretation and application of the Knox-Keene Act because federal law compels them to offer their employees affordable health insurance.

77.     Under the ACA, employers with more than fifty full-time employees must provide a certain level of health insurance to their employees.

78.     The Churches each have more than fifty full-time employees and must comply with ACA's mandate to provide health insurance to their employees.

79.     Defendant's new interpretation and application of the Knox-Keene Act therefore forces the Churches to choose between violating federal law and violating their deeply held religious beliefs by paying for abortion coverage.

80.     The Churches cannot avoid this dilemma by dropping its employee health plans because the ACA imposes crippling monetary penalties on employers that do not provide health insurance.

81.     In any event, refusing to offer health insurance to their employees would also interfere with the Churches' religious beliefs about promoting the physical, emotional, mental, and spiritual well-being of their employees.

82.     Defendant's new interpretation and application of the Knox-Keene Act also imposes a burden on the Churches' ability to recruit and retain employees because it creates uncertainty as to whether the Churches will be able to offer group health insurance in the future, placing them in a competitive disadvantage.

83.     Moreover, the Churches rely on tithes and donations from members to fulfill their Christian mission.

84.     On information and belief, members who give to the Churches do so with an understanding of the Churches' Christian mission and with the assurance that they will continue to adhere to and transmit authentic Christian teachings on morality and the sanctity of human life.

85.     Because of Defendant's new interpretation and application of the Knox-Keene Act, the Churches have been forced to use donated funds for purposes known to be morally repugnant to their members and in ways that violate the implicit trust of the purpose of their tithes and donations.

**Defendant has unfettered discretion to grant exemptions.**

86.     Defendant has deliberately required the Churches' group health plans to cover abortions even though the very law she claims to be enforcing, the Knox-Keene Act, gives her virtually unlimited power to exempt anyone (and any plan) from its requirements.

87.     Under the Knox-Keene Act, the Director of DMHC—in this case, Defendant—has unfettered discretion to grant individualized exemptions from and waivers to the requirements of the Knox-Keene Act, including its "basic health care services" requirement.

88.     For example, the Knox-Keene Act states that "the director may, for good cause, by rule or order exempt a plan contract or any class of plan contracts from [the basic health care services] requirement." Cal. Health & Safety Code § 1367(i).

89.     The Knox-Keene Act further provides that the Director may "waive any requirement of any rule or form in situations where in the director's discretion that requirement is not necessary in the public interest …." *Id.* § 1344(a).

90.     Similarly, the Director may "unconditionally" exempt from the Knox-Keene Act "any class of persons or plan contracts if the director finds the action to be in the public interest …." *Id.* § 1343(b).

**Not all religious beliefs are equal: Defendant exercises her discretion**

91.    Defendant has exercised her discretionary individualized exemption authority in a selective way, exempting some plans from the "basic health care services" requirement while refusing to exempt others.

92.    In particular, Defendant has exercised her discretionary exemption authority to allow some (but not all) religious employers to purchase a health plan limiting or excluding abortion coverage consistent with their religious beliefs.

93.    On information and belief, since issuing her August 22, 2014, letters, Defendant has approved at least one group health plan that excludes elective abortion coverage except in cases of rape and incest.

94.    Defendant specifically granted the exemption to accommodate religious employers with acceptable religious beliefs about abortion.

95.    Indeed, some churches and religious groups have religious beliefs prohibiting elective abortions generally but make exceptions in the cases of rape and incest.

96.    As just one example, the Church of Jesus Christ of Latter-Day Saints teaches that "[e]lective abortion for personal or social convenience is contrary to the will and the commandments of God," but has nevertheless concluded that elective abortion may be justified "when pregnancy is the result of incest or rape."[1]

97.    Although the exempted plan is available for purchase by religious employers, it does not meet the needs of the Churches and other employers that have religious objections to paying for or providing insurance coverage for elective abortions under any circumstance.

---

[1] The Church of Jesus Christ of Latter-Day Saints, Abortion, https://www.lds.org/topics/abortion?lang=eng (last visited Aug. 1, 2016).

98.   Even though Defendant has been notified that the Churches and other employers with religious beliefs like the Churches desire a similar exemption for their plans, she has repeatedly refused to grant them one.

99.   In other words, Defendant has applied its interpretation of the Knox-Keene Act's "basic health care services" requirement to health plans purchased by the Churches and religious employers with similar beliefs about abortion, but has exempted at least one plan from that very same requirement to accommodate employers with different (and government approved) religious beliefs about when it is morally acceptable to provide insurance coverage for elective abortions.

100.   Furthermore, unlike with the Churches' group health plans, Defendant did not apply her new interpretation of the Knox-Keene Act to health benefit plans offered by the California Public Employees' Retirement System (CalPERS).

101.   CalPERS, which offers health plans to active and retired state and local government employees, did not receive a letter from Defendant and continued to offer health plans limiting or excluding coverage for elective abortions after August 22, 2014.

**Not all (secular) plans need comply: California exercises its discretion**

102.   In addition to authorizing discretionary individualized exemptions, the Knox-Keene Act exempts entire categories of health plans from its requirements, including the "basic health care services" requirement.

103.   For example, health plans "directly operated by a bona fide public or private institution of higher learning" are exempt from the Knox-Keene Act and its "basic health care services" requirement. *See* Cal. Health & Safety Code § 1343(e).

104.   So too are plans directly operated by the California Small Group Reinsurance Fund, *see id.*, and "small plans" administered solely by an employer that "does not have more than five subscribers," *see* Cal. Code Regs. tit. 28, § 1300.43.

105.   In exempting entire categories of plans, including those identified above, the State of California found persuasive certain secular reasons for not requiring group health plans to cover "basic health care services" and, by extension, all abortions.

## FIRST CAUSE OF ACTION

### Violation of the Free Exercise Clause of the
### First Amendment to the United States Constitution

106.   The Churches reallege all matters set forth in paragraphs 1–105 and incorporate them herein.

107.   The Churches' sincerely held religious beliefs prohibit them from purchasing or providing health insurance coverage for abortion in their employee group health plans.

108.   The Churches also have a sincere religious belief to care for the physical, emotional, mental, and spiritual well-being of their employees, which they do, in part, by providing health insurance coverage as a benefit of employment.

109.   The Churches have a sincere religious objection to providing insurance coverage for abortion because they believe that abortion ends an innocent human life.

110.   When the Churches comply with their sincerely held religious beliefs on the sanctity of human life, they exercise religion within the meaning of the Free Exercise Clause.

111.   Defendant's interpretation and application of the Knox-Keene Act imposes a substantial burden on the Churches' religious exercise and coerces them to change or violate their religious beliefs.

112.   Defendant substantially burdens the Churches' religious exercise when she forces the Churches to choose between following their religious beliefs and

suffering debilitating penalties under federal law or violating their consciences in order to avoid those penalties.

113. Defendant's interpretation and application of the Knox-Keene Act exposes the Churches to substantial monetary penalties and/or financial burdens for their religious exercise.

114. Defendant's interpretation and application of the Knox-Keene Act exposes the Churches to substantial competitive disadvantages because it has created uncertainties about their health insurance benefits.

115. Defendant's interpretation and application of the Knox-Keene Act imposes a burden on the Churches' employee recruitment efforts by creating uncertainty as to whether or on what terms they will be able to offer health insurance or will suffer penalties therefrom.

116. If the Churches drop health insurance to avoid application of Defendant's interpretation of the Knox-Keene Act, they will be in violation of federal law and will experience a competitive disadvantage in their efforts to recruit and retain employees.

117. The Knox-Keene Act, as interpreted and applied by Defendant, is neither neutral nor generally applicable.

118. The Knox-Keene Act creates categorical and individualized exemptions to its requirements, including the "basic health care services" requirement.

119. The Knox-Keene Act exempts entire categories of health plans from its requirements for secular reasons.

120. The Knox-Keene Act gives Defendant broad, unfettered discretion to grant individualized exemptions from and waivers to the Act's requirements, including its "basic health care services" requirement.

121. Defendant has exercised her discretion to exempt the health plan of some religious employers based on their religious beliefs about abortion, but she

has refused to do the same for the Churches and other religious employers, which results in discrimination among religions.

122.   Defendant also did not require immediate changes to health benefit plans offered by CalPERS to active and retired state and local government employees.

123.   Defendant's interpretation and application of the Knox-Keene Act, which forces churches and religious employers to violate their religious beliefs, furthers no compelling governmental interest.

124.   California already exempts religious employers from being forced to provide health insurance coverage for contraceptives and infertility treatments in their group health plans.

125.   Guaranteeing unfettered access to elective and voluntary abortions through the employee health insurance plans of churches and religious employers is not a significant social problem in California.

126.   Compelling the Churches and other religious employers to pay for abortions is hardly the least restrictive means of advancing any interest that the government might have.

127.   Defendant's interpretation and application of the Knox-Keene Act constitutes government-imposed coercion on the Churches to change or violate their sincerely held religious beliefs.

128.   Defendant's interpretation and application of the Knox-Keene Act chills the Churches' religious exercise.

129.   Defendant has interpreted and applied the Knox-Keene Act in such a way as to make it impossible for the Churches to comply with their religious beliefs, while at the same time exempting at least one health plan from the Knox-Keene Act's "basic health care services" requirement so that religious employers with preferred beliefs about abortion may be accommodated.

130.   Defendant has interpreted and selectively applied the Knox-Keene Act and its "basic health care services" requirement against the Churches to suppress specific religious beliefs about when it is morally permissible to provide health insurance coverage for elective abortions.

131.   Defendant's interpretation and selective application of the Knox-Keene Act and its "basic health care services" requirement violates the Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the Churches.

## SECOND CAUSE OF ACTION
### Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

132.   The Churches reallege all matters set forth in paragraphs 1–105 and incorporate them herein.

133.   The Fourteenth Amendment to the United States Constitution guarantees the Churches equal protection of the laws, which prohibits Defendant from treating the Churches differently than similarly situated persons and businesses.

134.   The government may not treat some employers disparately as compared to similarly situated employers.

135.   Defendant's interpretation and application of the Knox-Keene Act treats the Churches differently than similarly situated persons and businesses in that there are categorical and individualized exemptions to the Knox-Keene Act and its "basic health care services" requirement.

136.   The Knox-Keene Act gives Defendant broad, unfettered discretion to granted individualized exemptions and waivers to the Act's requirements, including its "basic health care services" requirement.

137.   Defendant has exercised her discretion to exempt the health plan of some religious employers based on their religious beliefs about abortion but has refused to do the same for the Churches and other religious employers, which results in discrimination among religions.

138.   Defendant lacks a legitimate or compelling state interest for requiring the employee health care plans of the Churches to cover all abortions.

139.   Nor is Defendant's disparate treatment of the Churches narrowly tailored because compelling coverage for all elective abortions in the health plans of the Churches—while at the same time exempting the plans of employers with preferred religious beliefs—is hardly the least restrictive means of advancing any interest that the government might have.

140.   Defendant's interpretation and application of the Knox-Keene Act to the Churches does not satisfy rational basis review.

141.   Other religious employers that are similarly situated to the Churches have been given an exemption.

142.   Defendant has no rational basis in accommodating the religious beliefs of some religious employers, but not the Churches.

143.   Defendant's interpretation and selective application of the Knox-Keene Act and its "basic health care services" requirement violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as applied to the Churches.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.   Enter a judgment declaring that Defendant's interpretation and application of the Knox-Keene Act, requiring the Churches and other religious employers to cover abortions in their employee health care plans, to be a violation of the First and Fourteenth Amendments to the United States Constitution.

1  b.  Enter a permanent injunction prohibiting Defendant from enforcing its

2  interpretation of the Knox-Keene Act's "basic health care services" requirement

3  against the Churches and other religious employers in a way that substantially

4  burdens the religious belief of any person in violation of the United States

5  Constitution, and prohibiting Defendant from illegally discriminating against the

6  Churches and other religious employers not before the Court by preventing them

7  from purchasing a group health insurance plan that limits or excludes coverage

8  for abortion consistent with their religious beliefs;

9  c.  Award the Churches court costs and reasonable attorney's fees; and

10  award such other and further relief as to which the Churches may be entitled.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Respectfully submitted this 1st day of August 2016.

2

3  /s/ Jeremiah Galus
Erik Stanley (Arizona Bar No. 030961)*
Kevin Theriot (Arizona Bar No. 030446)*
4  Jeremiah Galus (Arizona Bar No. 030469)*
5  ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
6  Scottsdale, AZ 85260
(480) 444-0020
7  estanley@ADFlegal.org
ktheriot@ADFlegal.org
8  jgalus@ADFlegal.org

9
David J. Hacker (California Bar No. 249272)
10  ALLIANCE DEFENDING FREEDOM
101 Parkshore Drive, Suite 100
11  Folsom, CA 95630
(916) 923-2850
12  dhacker@ADFlegal.org

13  Casey Mattox (Virginia Bar No. 47148)*
14  ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
15  Washington, DC 20001
(202) 393-8690
16  cmattox@ADFlegal.org

17  Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
18  983 Reserve Drive
Roseville, CA 95678
19  (916) 960-2211
20  alex@medinamckelvey.com

21  *Admitted *pro hac vice*

22
ATTORNEYS FOR PLAINTIFFS
23

24

25

26

27

28