KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
SUSAN M. CARSON, State Bar No. 135875
Supervising Deputy Attorney General
JOSHUA N. SONDHEIMER, State Bar No. 152000
HADARA R. STANTON, State Bar No. 227040
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5615
  Fax:  (415) 703-5480
  E-mail:  Joshua.Sondheimer@doj.ca.gov
*Attorneys for Michelle Rouillard, in her official
capacity as Director of the California Department of
Managed Health Care*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FOOTHILL CHURCH, CALVARY CHAPEL OF CHINO HILLS and SHEPHERD OF THE HILLS CHURCH,**<br><br>Plaintiffs,<br><br>v.<br><br>**MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care,**<br><br>Defendant. | 2:15-CV-02165-KJM-EFB<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), (6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        October 7, 2016<br>Time:       10:00 a.m.<br>Dept:        3<br>Judge:      The Honorable Kimberly J. Mueller<br><br>Action Filed:  October 16, 2015 |

# TABLE OF CONTENTS

**Page**

Notice of motion and motion to dismiss .............................................................................

Memorandum of points and authorities ........................................................................... 1

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 1

    A.    Employee health plan options and the DMHC's regulatory authority........ 1

    B.    The Director's authority and responsibilities............................................. 2

    C.    California law protects the right to procreative choice .............................. 3

    D.    The Director required seven plans to remove improper limitations
        on abortion coverage ................................................................................ 4

    E.    Dismissal of plaintiffs' initial complaint.................................................. 4

    F.    Plaintiffs' first amended complaint .......................................................... 5

Legal standards............................................................................................................... 6

Argument ........................................................................................................................ 7

  I.    Because the Free Exercise and Equal Protection Clauses do not protect
      plaintiffs from paying more for coverage that comports with their religious
      beliefs, plaintiffs lack prudential, as well as Article III, standing........................... 7

  II.    The amended complaint still fails to state cognizable free exercise and
      equal protection claims ............................................................................ 8

    A.    The amended complaint fails to support any reasonable inference
        that the director has exercised her discretion in considering requests
        by plans for exemption from the Knox-Keene Act to favor certain
        religious employers over others based on their respective beliefs
        about insurance coverage for abortion in cases of rape or incest................ 8

        1.    The amended complaint fails to support any reasonable
            inference that the Director targeted any particular religious
            beliefs concerning abortion in exercising her exemption
            authority ...................................................................................... 10

        2.    The amended complaint fails to support any reasonable
            inference that the Director exercised her exemption
            authority to selectively burden particular religious beliefs .......... 13

        3.    The Director's exercise of her exemption authority meets
            rational basis review because it furthers legitimate
            government purposes of protecting women's rights and
            interests even while seeking to accommodate religious
            objection to coverage of abortion................................................ 14

    B.    Plaintiffs remain unable to state a claim for any equal protection
        violation ................................................................................................ 15

Conclusion .................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................... *passim*

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................... 6, 7

*Braunfield v. Brown*
   366 U.S. 599 (1961) ........................................................................... 8

*Catholic League for Religious & Civil Rights v. City & Cty of S.F.*
   624 F.3d 1043 (9th Cir. 2010) ........................................................... 13

*Cetacean Cmty. v. Bush*
   386 F.3d 1169 (9th Cir. 2004) ........................................................... 6

*Chandler v. State Farm Mut. Auto. Ins. Co.*
   598 F.3d 1115 (9th Cir. 2010) ........................................................... 6

*Chico Feminist Women's Health Cent. v. Butte Glen Med. Soc'y*
   557 F. Supp. 1190 (E.D. Cal. 1983) ................................................... 3

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah (Lukumi)*
   508 U.S. 520 (1993) ........................................................................... 10, 11, 13

*City of Cleburne v. Cleburne Living Center*
   473 U.S. 432 (1985) ........................................................................... 15

*Comm. to Defend Reprod. Rights v. Myers*
   29 Cal. 3d 252 (1981) ......................................................................... 3

*Conservation Force v. Salazar*
   646 F.3d 1240 (9th Cir. 2011) ........................................................... 6

*D.C. v. Greater Washington Bd. of Trade*
   506 U.S. 125 (1992) ........................................................................... 2

*Emp't Div., Dep't of Human Res. of Oregon v. Smith*
   494 U.S. 872 (1990) ........................................................................... 9

*Everson v. Bd. of Ed. of Ewing Twp.*
   330 U.S. 1 (1947) ............................................................................... 13

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*FMC Corp. v. Holliday*
   498 U.S. 52 (1990)................................................................................................2

4

5

*Hartmann v. Cal. Dep't of Corr. & Rehab.*
   707 F.3d 1114 (9th Cir. 2013)..........................................................................10

6

*Hill v. Nat'l Collegiate Athletic Ass'n*
   7 Cal. 4th 1 (1994) .............................................................................................3

7

8

*Kreisner v. City of San Diego*
   1 F.3d 775 (9th Cir. 1993).................................................................................11

9

10

*McMichael v. Napa Cty.*
   709 F.2d 1268 (9th Cir. 1983).........................................................................7, 8

11

*Miller v. Reed*
   176 F.3d 1202 (9th Cir. 1999)............................................................................9

12

13

*Pareto v. F.D.I.C.*
   139 F.3d 696 (9th Cir. 1998)..............................................................................7

14

15

*Rea v. Blue Shield of California*
   226 Cal. App. 4th 1209 (2014).......................................................................2, 3

16

*Savage v. Glendale Union High Sch.*
   343 F.3d 1036 (9th Cir. 2003)............................................................................6

17

18

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001)..............................................................................7

19

*Stormans v. Wiesman*
   794 F.3d 1064 (9th Cir. 2015)..........................................................9, 11, 12, 14

20

21

*Thornton v. City of St. Helens*
   425 F.3d 1158 (9th Cir. 2005).......................................................................15, 16

22

23

*Welch v. Brown*
   No. 15-16598, --- F.3d ---, 2016 WL 4437617 (9th Cir. 2016) ................................13

24

UNITED STATES CONSTITUTION

25

Article III.........................................................................................................6, 7

26

Equal Protection Clause ............................................................................. *passim*

27

First Amendment................................................................................................5

28

## TABLE OF AUTHORITIES
**(continued)**

**Page**

Fourteenth Amendment..................................................................................................5, 15

Free Exercise Clause ......................................................................................... *passim*

**FEDERAL STATUTES**

United States Code, Title 29
    § 1003(a) .........................................................................................................2
    § 1003(b)(2) ....................................................................................................2

**OTHER FEDERAL AUTHORITIES**

Federal Patient Protection and Affordable Care Act (ACA) ....................................5, 8, 13

Consolidated Appropriations Act,
    Pub. L. 114-113, 129 Stat. 2649 (2015)....................................................12

Employee Retirement Income Security Act (ERISA) .............................................2, 7

Exec. Order No. 13,535, 75 Fed. Reg. 15599 (March 24, 2010)...............................13

**COURT RULES**

Federal Rules of Civil Procedure
    12(b)(1) ...........................................................................................................6
    12(b)(6) ...........................................................................................................6, 7

**CALIFORNIA CONSTITUTION**

Article 1, § 1 .........................................................................................................3

**CALIFORNIA STATUTES**

California Health & Safety Code
    §§ 1340-1399.864 .........................................................................................1
    § 1341(a) .........................................................................................................2
    § 1342 .............................................................................................................2
    § 1343(a)(1) ....................................................................................................2
    § 1345 .............................................................................................................2
    § 1345(b)(1)-(7) .............................................................................................3
    § 1345(f).........................................................................................................1
    § 1367(i) .........................................................................................................2, 3
    § 1349.............................................................................................................2
    § 123462(b) ....................................................................................................4
    § 123466.........................................................................................................4

NOTICE OF MOT. AND MPA ISO MOT. TO DISMISS 1ST AMENDED COMPLAINT (2:15-CV-02165-KJM)

1

## **<u>TABLE OF AUTHORITIES</u>**
### (continued)

2
**<u>Page</u>**

3
Insurance Code
4
    §§ 740-742.1 ................................................................................................................2
    § 740(g) ......................................................................................................................2
5
    § 742(b) ......................................................................................................................2

6
OTHER CALIFORNIA AUTHORITIES

7
Knox-Keene Act................................................................................................... *passim*

8
Reproductive Privacy Act of 2002 ............................................................................3, 4

9
CALIFORNIA REGULATIONS

10
California Code of Regulations, Title 28
11
    § 1300.67(a) ...............................................................................................................3
    § 1300.67(f) ...............................................................................................................3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. AND MPA ISO MOT. TO DISMISS 1ST AMENDED COMPLAINT (2:15-CV-02165-KJM)

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on Friday, October 7, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Kimberly J. Mueller in the United States District Court for the Eastern District of California, Courtroom Three, located at 501 I Street, Sacramento, California, Defendant Michelle Rouillard, in her official capacity as Director of the California Department of Managed Health Care, will and hereby does move the Court to dismiss the action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Pursuant to the Court's Standing Order, counsel for the parties met and conferred on Monday, August 22, 2016. Defendant's counsel advised counsel for Plaintiffs of the intended bases for this motion, and the parties agreed that given the nature of the parties' claims and defenses, extensive substantive discussion was unlikely to narrow the issues and exhausted their meet and confer efforts.

This motion is made on the grounds that the Court lacks jurisdiction over the subject matter of the action against Defendant, Director Rouillard, and that the complaint, including the claims for relief asserted therein, fails to state a cause of action upon which relief may be granted because (1) Plaintiffs lack standing; and (2) Plaintiffs have failed to state a claim upon which relief may be granted. The motion will be and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any matters of which judicial notice may be taken, the pleadings and papers filed herein, and the argument of counsel.

Dated:  August 31, 2016            Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
SUSAN M. CARSON
Supervising Deputy Attorney General

*/s/ Joshua N. Sondheimer*
JOSHUA N. SONDHEIMER
HADARA R. STANTON
Deputy Attorneys General
*Attorneys for Defendant Michelle Rouillard, in her official capacity as Director of the California Department of Managed Health Care*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs fail in their First Amended Complaint to cure the defects that required dismissal of their challenge to letters issued by the Director of the Department of Department of Managed Health Care (DMHC) enforcing state law that requires health care service plans to provide coverage of abortion.  Plaintiffs' only new material allegations contend that the DMHC, in considering requests to accommodate religious objection to coverage of abortion, deliberately sought to favor religious employers who could accept, as a matter of religious doctrine, a health coverage plan for their employees that excludes coverage of abortion except where the pregnancy has resulted from rape or incest, over those religious employers like Plaintiffs who would not accept a plan covering abortions for employees who are victims of rape or incest.  Plaintiffs' allegations fail to raise any plausible inference that the Director sought to give preference to any particular religious views regarding insurance coverage of abortion sufficient to support claims for violations of their rights to free exercise of religion and equal protection.  Plaintiffs' Amended Complaint, accordingly, should be dismissed.

### BACKGROUND

**A.    Employee Health Plan Options and the DMHC's Regulatory Authority**

California employers have a number of options regarding the provision of health coverage for their employees, only some of which are subject to regulation by DMHC, or any state entity.

In California, two state entities, the DMHC and the California Department of Insurance (CDI), oversee the health coverage market.  The DMHC regulates "health care service plans" under the Knox-Keene Act, California Health & Safety Code §§ 1340-1399.864.  Cal. Health & Safety Code § 1341.[1] The Knox-Keene Act defines a "health care service plan" (Plan) as a person or entity that arranges for health care services for subscribers or enrollees for a periodic charge. § 1345(f).  Pursuant to this definition, the DMHC regulates and oversees Plans, including those that offer health maintenance organizations, as well as many "preferred provider" or "exclusive

---

[1] Unless otherwise noted, all statutory references are to the California Health & Safety Code.

1   provider" arrangements.  *See Rea v. Blue Shield of California*, 226 Cal. App. 4th 1209, 1215

2   (2014).

3       Traditional insurance companies, on the other hand, "are subject to regulation by [CDI]"

4   under the provisions of the Insurance Code.  *Rea*, 226 Cal. App. 4th at 1215; Cal. Ins. Code

5   §§ 740-742.1.  The Knox-Keene Act does not apply to entities regulated by CDI.  Cal. Ins. Code

6   §§ 740(g), 742(b); Cal. Health & Safety Code §§ 1343(a)(1), 1349.

7       Further, "self-funded" or "self-insured" employer health plans—the choice of increasing

8   numbers of large employers—are not regulated by the State at all, but instead, in most cases, are

9   regulated by the United States Department of Labor under the Employee Retirement Income

10   Security Act of 1974 (ERISA).  *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990); 29 U.S.C.

11   § 1003(a).  Because ERISA preempts most state health coverage regulation, self-funded health

12   plans subject to ERISA need not comply with most state health coverage requirements, including

13   provisions, such as those at issue here, that mandate coverage for particular health care services.

14   *See D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 (1992) (District of Columbia

15   law requiring equivalent benefits to injured workers preempted).  A self-funded plan sponsored

16   by a church could also be exempt from regulation under ERISA.  29 U.S.C. § 1003(b)(2)

17   ("church plan" exemption).

18       **B.**    **The Director's Authority and Responsibilities**

19       The DMHC is charged with executing the Knox-Keene Act "to ensure that health care

20   service plans provide enrollees with access to quality health care services and protect and

21   promote the interests of enrollees." § 1341(a).  The Legislature intended that the Knox–Keene

22   Act "promote the delivery and the quality of health and medical care to the people of the State of

23   California who enroll in, or subscribe for the services rendered by, a health care service plan or

24   specialized health care service plan." § 1342.

25       The Knox-Keene Act requires that Plans "provide to subscribers and enrollees *all of the*

26   *basic health care services included in subdivision (b) of Section 1345.*"  § 1367(i) (emphasis

27   added).  Section 1345 delineates seven broad categories of services that Plans must offer,

28   including:

2

1    (1) Physician Services, including consultation and referral.

2    (2) Hospital inpatient services and ambulatory care services.

3    (3) Diagnostic laboratory and diagnostic and therapeutic radiologic services.

4    (4) Home health services.

5    (5) Preventive health services.

6    (6) Emergency health care services . . . .

7    (7) Hospice care pursuant to Section 1368.2.

8  § 1345(b)(1)-(7).

9       The Act authorizes the Director of the DMHC to define the scope of required basic health

10  care services. § 1367(i); *Rea*, 226 Cal. App. 4th at 1215. The DMHC has promulgated

11  regulations pursuant to this authority, and among other things, has defined "physician services" to

12  include services provided by physicians licensed in medicine or osteopathy, and "preventive

13  health services" to include "a variety of voluntary family planning services." Cal. Code Regs.

14  tit. 28, § 1300.67(a), (f).

15       **C.    California Law Protects the Right to Procreative Choice**

16       In 1972, California voters amended the state Constitution to include a right of privacy

17  among the inalienable rights protected by article I, section 1. *Chico Feminist Women's Health*

18  *Cent. v. Butte Glen Med. Soc'y*, 557 F. Supp. 1190, 1201-1202 (E.D. Cal. 1983) (citing *White v.*

19  *Davis*, 13 Cal. 3d 757 (1975)). Under article 1, section 1, "all women in this state rich and poor

20  alike possess a fundamental constitutional right to choose whether or not to bear a child." *Comm.*

21  *to Defend Reprod. Rights v. Myers*, 29 Cal. 3d 252, 262 (1981).

22       Under state law, private parties cannot interfere with the right to procreative choice under

23  article 1, section 1. *Chico*, 557 Supp. at 1202-03; *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.

24  4th 1, 20 (1994). In addition, the constitutional right of a woman to decide whether to bear a

25  child or terminate a pregnancy, guaranteed under article 1, section 1, is protected from state

26  interference. *Chico*, 557 F. Supp. at 1202; *Myers*, 29 Cal. 3d at 284.

27       Echoing these constitutional protections, the Reproductive Privacy Act of 2002 declares as

28  state public policy that "[e]very woman has the fundamental right to choose to bear a child or to

                                                     3

1   choose and to obtain an abortion." § 123462(b).  The Reproductive Privacy Act expressly

2   provides that:  "The state may not deny or interfere with a woman's right to choose or obtain an

3   abortion . . . ."  § 123466.

4         **D.**    **The Director Required Seven Plans to Remove Improper Limitations on**
                 **Abortion Coverage**

5

6       In 2014, the DMHC learned that seven of the Plans it regulates had published enrollee

7   disclosure documents that limited coverage for termination of pregnancies.  FAC, Exh. 1 at 1.

8   After reviewing relevant law and these Plan documents, the Director concluded that the DMHC

9   had erroneously not objected to these restrictions.  *Id.*  Accordingly, the Director, on August 22,

10   2014, sent letters to the seven Plans that had such restrictions "to remind plans that the [Knox-

11   Keene Act] requires the provision of basic health care services and the California Constitution

12   prohibits health plans from discriminating against women who choose to terminate a pregnancy.

13   Thus, all health plans must treat maternity services and legal abortion neutrally."  *Id.*

14       The letters also advised that exclusions and limitations on pregnancy termination services

15   are incompatible with reproductive privacy and choice rights established under the Reproductive

16   Privacy Act and the California Constitution.  FAC, Exh. 1 at 1.  The Plans receiving the letters

17   had previously provided coverage for some abortions, but their Plan documents contained

18   abortion coverage "limitations or exclusions" that were discriminatory and incompatible with

19   protections under state law for reproductive rights.  *Id.* at 2.  The Director noted that limitations

20   such as "any exclusion of coverage for 'voluntary' or 'elective' abortions and/or any limitation of

21   coverage to 'therapeutic' or 'medically necessary' abortions" are "inconsistent with the Knox-

22   Keene Act and the California Constitution."  *Id.*  Accordingly, the letters called on each Plan to

23   review and amend current health plan documents to ensure that they complied with the Knox

24   Keene Act.  *Id.*

25         **E.**    **Dismissal of Plaintiffs' Initial Complaint**

26       In their original Complaint, Plaintiffs—three churches located in California—set out four

27   claims alleging that the Director's letters established an abortion coverage "mandate" in violation

28   of their rights under: (1) the Free Exercise Clause of the First Amendment; (2) the Establishment

1    Clause of the First Amendment; (3) the Free Speech Clause of the First Amendment; and (4) the

2    Equal Protection Clause of the Fourteenth Amendment.  The Director moved to dismiss the

3    Complaint on grounds that Plaintiffs lacked standing, and on grounds that the Complaint and each

4    cause of action failed to state a claim upon which relief may be granted.  ECF No. 21.  Following

5    a May 16, 2016 hearing, the Court in an order dated July 11, 2016, dismissed the Complaint in its

6    entirety.  ECF No. 39 (Order).  The Court held that Plaintiffs had sufficiently alleged standing,

7    but that each of Plaintiffs' causes of action failed to state a claim on which relief could granted.

8    *Id.*  The Court granted Plaintiffs leave to amend their Free Exercise and Equal Protection claims.

9    *Id.*

10           **F.     Plaintiffs' First Amended Complaint**

11           Plaintiffs filed their Amended Complaint on August 1, 2016.  ECF No. 42.  The Amended

12   Complaint reasserts, with minor variation in some instances, the foundational allegations of their

13   previously dismissed challenge to the Director's letters, including: that they believe that

14   "participation in, facilitation of, or payment for an elective abortion" is contrary to their religious

15   beliefs (FAC ¶ 28); that Plaintiffs each have more than fifty full-time employees, and that they

16   must, therefore, provide health coverage for their employees under the federal Patient Protection

17   and Affordable Care Act (ACA) (¶¶ 76-78); that Plaintiffs feel compelled by their religious

18   beliefs to promote their employees' well-being, and do so, in part, by providing health insurance

19   coverage to their employees (¶ 34); that because of their religious beliefs, they seek to provide

20   such coverage in a way that "does not also cause them to pay for abortions" (¶ 36); and that the

21   Director's letters to the seven Plans with improper restrictions on abortion coverage has caused

22   coverage of "elective" abortions to be "injected" into the health coverage plans they provide to

23   their employees, and prevented Plaintiffs from obtaining a health plan "that limits or excludes

24   abortion coverage consistent with their religious beliefs" (¶¶ 64-71).

25           The Amended Complaint acknowledges that after the Director issued her letters, she has

26   provided accommodation for religious objection to abortion by allowing one Plan to offer to

27   "religious employers" health coverage plans that exclude coverage of "elective" abortion except

28   in cases of rape and incest.  FAC ¶¶ 10, 93-94.  Plaintiffs allege that the Director also refused to

5

1   grant a "similar" exemption—apparently one that excludes coverage of abortion where the

2   employee's pregnancy results from rape or incest—to "Plaintiffs and other employers with

3   religious beliefs like [Plaintiffs]," who allegedly object on religious grounds to providing abortion

4   coverage to employees who have been raped or are the victims of incest.  FAC ¶¶ 97-98.

5   Plaintiffs allege that the Director has exercised her discretion with respect to considering

6   exemptions from the abortion coverage requirements "based on" the beliefs of religious

7   employers about abortion, and suggest that she intended to favor "acceptable" or "preferred"

8   religious beliefs on abortion of such employers.  FAC ¶¶ 11, 94, 121, 139.

9        Plaintiffs allege the Director's actions violate their rights under the Free Exercise and Equal

10   Protection Clauses.  FAC ¶¶ 106-143.

11                                **LEGAL STANDARDS**

12        A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if a

13   complaint fails to allege facts sufficient to establish subject matter jurisdiction.  *See Savage v.*

14   *Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  If the plaintiff lacks

15   standing, the court lacks subject matter jurisdiction under Article III of the United States

16   Constitution, and the case must be dismissed.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th

17   Cir. 2004).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule

18   12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction.  *See*

19   *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

20        A complaint is subject to dismissal for failure to state a claim upon which relief may be

21   granted under Federal Rule of Civil Procedure 12(b)(6) if "there is a 'lack of a cognizable legal

22   theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Conservation*

23   *Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citations omitted).  To survive a motion to

24   dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to

25   relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

26   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

27   the reasonable inference" that the defendant may be liable.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

28   (2009) (citing *Twombly*, 550 U.S. at 556).  The ultimate determination of "whether a complaint

6

1   states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

2   court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

3       In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material

4   allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto*

5   *v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most

6   favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

7   Cir. 2001). However, the Court is not "required to accept as true allegations that are merely

8   conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* The Court need not

9   accept as true a legal conclusion "couched as a factual allegation," (*Twombly*, 550 U.S. at 555

10  (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), or "allegations that contradict matters

11  properly subject to judicial notice" (*Sprewell*, 266 F.3d at 988-89).

**ARGUMENT**

**I.    BECAUSE THE FREE EXERCISE AND EQUAL PROTECTION CLAUSES DO NOT PROTECT PLAINTIFFS FROM PAYING MORE FOR COVERAGE THAT COMPORTS WITH THEIR RELIGIOUS BELIEFS, PLAINTIFFS LACK PRUDENTIAL, AS WELL AS ARTICLE III, STANDING**

16      As the Court recognized in its prior Order, self-funded health plans subject to ERISA "need

17  not comply with most state health coverage requirements." Order at 2. Indeed, Plaintiffs concede

18  that other options exist for providing health coverage that would be consistent with their religious

19  beliefs, but suggest only that those options are more costly. The Free Exercise and Equal

20  Protection Clauses, however, were not designed to protect religious entities from the economic

21  consequences that may follow from adherence to the dictates of their faith in seeking to comply

22  with statutory or regulatory requirements. Thus, Plaintiffs cannot demonstrate the prudential

23  component of standing. The Amended Complaint also fails to establish Article III standing for

24  the reasons addressed by the Director in support of her motion to dismiss Plaintiffs' initial

25  Complaint, which arguments the Director does not restate, but incorporates as if set forth herein.

26  See Mot. to Dismiss (ECF No. 21) at 7-10; Reply (ECF No. 30) at 1-5.

27      The "threshold" question of standing "involves both constitutional and prudential

28  limitations." *McMichael v. Napa Cty.*, 709 F.2d 1268, 1269 (9th Cir. 1983). Courts may

7

1   examine prudential standing first in seeking to avoid deciding constitutional questions.  *Id.* at

2   1271.  To support prudential standing, a plaintiff must allege injury that is "within the zone of

3   interests to be protected or regulated by the statute or constitutional guarantee in question."  *Id.*

4           Plaintiffs acknowledge that options for providing employee health coverage that accords

5   with their religious beliefs are available, but contend that such coverage would be "more

6   expensive."  FAC ¶ 35; Opp. to Mot. to Dismiss (ECF No. 26) at 7.[2]  However, the economic

7   injury resulting from a religious institution's decision to utilize a health plan that comports with

8   their religious beliefs does not fall within the zone of interests intended to be protected by the

9   Free Exercise or Equal Protection Clauses.  As the Supreme Court has noted, "it cannot be

10  expected, much less required, that legislators enact no law regulating conduct that may in some

11  way result in an economic disadvantage to some religious sects and not to others because of the

12  special practices of the various religions."  *Braunfield v. Brown*, 366 U.S. 599, 606 (1961).

13          Plaintiffs' Amended Complaint fails to sufficiently allege standing necessary to support this

14  Court's exercise of jurisdiction.

15  **II.     THE AMENDED COMPLAINT STILL FAILS TO STATE COGNIZABLE**
16  **FREE EXERCISE AND EQUAL PROTECTION CLAIMS**

17          Even assuming, arguendo, that Plaintiffs had standing to pursue their claims, the Amended

18  Complaint nevertheless still fails to state cognizable Free Exercise and Equal Protection claims.

19          **A.      The Amended Complaint Fails to Support Any Reasonable Inference that**
20                  **the Director Has Exercised Her Discretion in Considering Requests by**
                   **Plans for Exemption from the Knox-Keene Act to Favor Certain Religious**
21                  **Employers over Others Based on Their Respective Beliefs About Insurance**
                   **Coverage for Abortion in Cases of Rape or Incest**

22          Plaintiffs' Amended Complaint adds little to support their Free Exercise claim, previously

23  dismissed by the Court.  Plaintiffs continue to allege chiefly that the Director's letters have

24  _____

25          [2] Plaintiffs allege that "in deciding to offer health insurance to their employees," they
    evaluated at some unspecified time in the past various employee health coverage options that
26  would be consistent with their religious beliefs and their obligations under the ACA.  FAC ¶ 35.
    Plaintiffs allege they determined at that time that a "group health insurance plan" (apparently, one
27  subject to the Knox-Keene Act) was the only "affordable" option.  FAC ¶ 35.  The Amended
    Complaint does not, however, contain any factual allegations addressing the present cost or
28  affordability of such alternatives.

NOTICE OF MOT. AND MPA ISO MOT. TO DISMISS 1ST AMENDED COMPLAINT (2:15-CV-02165-KJM)

1   caused the health coverage plans they offer to their employees to include coverage of abortion,

2   and that they must now elect to continue to provide coverage to which they object on religious

3   grounds or else incur penalties under federal law for failing to offer their employees health

4   coverage.  FAC ¶¶ 64, 111-113.  Plaintiffs now seek to bolster their claim with conclusory

5   allegations that the Director has exercised her authority to grant individual exemptions from the

6   Knox-Keene Act to favor religious employers with "preferred beliefs about when it is morally

7   acceptable to provide employees with health insurance coverage" in cases of rape or incest.  FAC

8   ¶ 11; see also ¶¶ 91-99.  Plaintiffs' new allegations fail to establish any reasonable inference that

9   the Director's actions violate their free exercise rights.

10        As the Court previously recognized, an individual's religious beliefs do not "excuse him

11   from compliance with an otherwise valid law prohibiting conduct that the State is free to

12   regulate."  *Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-79 (1990); see

13   Order at 12-13 ("the right to freely exercise one's religion 'does not relieve an individual of the

14   obligation to comply with a valid and neutral law of general applicability on the ground that the

15   law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)'" (quoting

16   *Smith*, 494 U.S. at 879)).  Under these principles, even if a law incidentally burdens a particular

17   religious belief or practice, its enforcement must be upheld against a claim that it violates free

18   exercise rights if it is a "valid and neutral law of general applicability" and is rationally related to

19   a legitimate government interest.  *Stormans v. Wiesman*, 794 F.3d 1064, 1075-76 (9th Cir. 2015)

20   (internal quotations and citations omitted); see *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir.

21   1999) (upholding DMV enforcement of law requiring applicant to divulge social security number

22   in conflict with plaintiff's religious beliefs).  Although Plaintiffs do not challenge the laws

23   enforced by the Director in her letters, but rather the Director's alleged interpretation and

24   enforcement of them through her letters and her exercise of authority to grant exemptions from

25   the requirements of the Knox-Keene Act, application of the same principles compels dismissal of

26   Plaintiffs' Amended Complaint.

27   ///

28   ///

9

This Court previously concluded that Plaintiffs' initial Complaint did not allege facts supporting a plausible inference that the Director's letters were not neutral or generally applicable, and that the letters were rationally related to legitimate government purposes.  Order at 12-18.  The Court, therefore, held that the Complaint failed to state a claim that the letters violated Plaintiffs' rights under the Free Exercise Clause.  Order at 18.  The Amended Complaint does not add materially to the allegations in the initial Complaint pertinent to Plaintiffs' challenge to the Director's letters alleging a violation of their rights under the Free Exercise Clause.  The Director, therefore, does not restate her arguments on that issue, but rather incorporates them by reference as if stated herein (Mot. to Dismiss (ECF 21) at 10-16; Reply (ECF 30) at 5-11), and addresses here the new contentions in the Amended Complaint relating to her exercise of exemption authority.

### 1.  The Amended Complaint Fails to Support any Reasonable Inference that the Director Targeted any Particular Religious Beliefs Concerning Abortion in Exercising Her Exemption Authority

Plaintiffs' conclusory allegations in their Amended Complaint that the Director "selectively applied" the Knox-Keene Act "to suppress specific religious beliefs about when it is morally permissible to provide health insurance coverage for elective abortions" are misplaced and unsupported by any factual allegations supporting a plausible inference that the Director intended to suppress Plaintiffs' rights to exercise their religious beliefs.  FAC ¶ 130.  These allegations, therefore, fail to support a Free Exercise claim.  See *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotations and citation omitted); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (plaintiffs failed to support religious discrimination claim "with facts plausibly showing" that prison administration acted with discriminatory intent in denying requests for a Wiccan chaplain).

In determining whether a law or official action is "neutral" as to religion, courts examine both the text and operation of the law.  *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah (Lukumi)*, 508 U.S. 520, 533-34 (1993).  "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."  *Id.* at 533.  A law

10

1    operates neutrally so long as it does not target a religious tenet or practice despite being neutral on

2    its face. *Id.* at 534. In evaluating the sufficiency of Plaintiffs' allegations of discriminatory

3    intent, the Court must be "'reluctant to attribute unconstitutional motives' to government actors in

4    the face of a plausible secular purpose." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir.

5    1993) (citing *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983)).

6          The Amended Complaint does not allege that the Director, in exercising her exemption

7    authority, expressly referred to any "religious practice, conduct, belief, or motivation." *Stormans*,

8    794 F.3d at 1076. Her actions, therefore, as alleged, were neutral on their face. The Amended

9    Complaint also fails to support any reasonable inference that the Director's exercise of her

10   exemption authority targeted religious employers' beliefs regarding the acceptability of coverage

11   of rape an incest abortions for employees, and that her actions therefore did not operate neutrally.

12         Plaintiffs allege that the Director granted an exemption to at least one Plan that excludes

13   "elective abortion except in cases of rape or incest," but that such an exemption "does not meet

14   the needs" of Plaintiffs, who object on religious grounds to "paying for or providing insurance

15   coverage for" abortions of any employees impregnated as a result of rape or incest. FAC ¶¶ 93,

16   97. Plaintiffs suggest that the Director has exercised her exemption authority in a discriminatory

17   manner because she allegedly also has been "notified" that Plaintiffs and other employers with

18   beliefs like Plaintiffs regarding coverage for their employees of abortion in cases of rape or incest

19   desire an exemption "similar" to the one she has granted (but one that apparently that also

20   excludes coverage of abortion in case of rape and incest), and that she allegedly has "refused to

21   grant them" such an exemption. FAC ¶ 98.

22         Plaintiffs' allegations regarding the Director's alleged refusals to grant exemptions,

23   however, are misplaced. The Director has authority to grant exemptions from the Knox-Keene

24   Act's requirements only to *Plans* subject to the Act, and lacks any authority to grant an exemption

25   from the scope of required coverage to Plaintiffs "and other employers" who merely purchase or

26   contract for employee health coverage offered *by* the Plans. The Director would have no choice

27   but to decline a request by a religious employer for an exemption, as she has no authority to grant

28   one to an employer. Plaintiffs do not allege that any *Plan* has requested or been refused an

1    exemption from the Knox-Keene Act to offer coverage that would accommodate Plaintiffs'

2    specific religious objections to abortion coverage.  Plaintiffs' allegations, therefore, fail to support

3    a claim that the Director has even considered a request by a proper party to grant an exemption

4    that would allow religious employers to obtain health coverage that Plaintiffs might find

5    acceptable.

6         In addition, even if a religious entity may be burdened disproportionately by a facially

7    neutral law or official action, that "does not undermine" the neutrality of such action.  *Stormans*,

8    794 F.3d at 1077.  "The Free Exercise Clause is not violated even if a particular group, motivated

9    by religion, may be more likely to engage in the proscribed conduct."  *Id.* (citing *Reynolds v.*

10   *United States*, 98 U.S. 145, 166–67 (1878) (upholding ban on polygamy though polygamy

11   practiced primarily by members of the Mormon Church)).  Rather, Plaintiffs' allegations, to state

12   a cognizable claim, must support a reasonable inference that the Director granted certain

13   exemptions, or refused others, "because of, not merely in spite of," the impact of her action on a

14   particular religion or religious belief or practice.  *Iqbal*, 556 U.S. at 676-77, 681 (citations and

15   internal quotation marks omitted).  Plaintiffs' allegations fail to clear this hurdle.

16        And, even if the Amended Complaint alleged the Director had refused to grant Plans an

17   exemption to offer a product to religious employers that excludes coverage of abortion even in

18   cases of rape or incest (which she did not), there would be obvious, and legitimate, non-

19   discriminatory reasons why the Director could have done so, while still allowing an exemption

20   for coverage that excludes abortion *except* in those circumstances.  Exceptions to an exclusion of

21   abortion coverage in cases of rape or incest give effect to women's interests in privacy, and

22   bodily autonomy and integrity, if not also their physical, emotional, mental, and spiritual well

23   being, in circumstances where these interests are particularly acute.  Excepting rape and incest

24   abortions also furthers the purposes of the Knox-Keene Act and other state law protecting

25   women's rights to abortion coverage in these unfortunate circumstances.  Indeed, such exceptions

26   to abortion exclusions are routine in provisions of federal laws and orders designed to *protect*

27   religious objection to health coverage for, or public funding of, abortion.  *See, e.g.*, Consolidated

28   Appropriations Act, Pub. L. 114-113, 129 Stat. 2649, §§ 507(a), 614, 810 (2015) ("Hyde

1   Amendment" provisions barring expenditure of federal funds under Act except where the life of

2   the mother would be endangered if the fetus were carried to term or in cases of rape or incest);

3   Exec. Order No. 13,535, 75 Fed. Reg. 15599 (March 24, 2010) (establishing policies and

4   procedures to implement Hyde Amendment restrictions in connection with the ACA).

5          Plaintiffs' allegations thus fail to establish any reasonable inference that the Director, in

6   exercising its exemption authority, acted "because of, rather than in spite of" Plaintiffs' objection

7   to coverage of abortion in cases of rape and incest, or other circumstances.  *Iqbal*, 556 U.S. at

8   676-77, 681.[3]  The Amended Complaint, like Plaintiffs' initial Complaint, "alleges no facts

9   establishing that the exemptions have been applied selectively based on religion."  Order at 21.

10          **2.     The Amended Complaint Fails to Support Any Reasonable Inference
                   that the Director Exercised Her Exemption Authority to Selectively
11                 Burden Particular Religious Beliefs**

12          The second step in analysis of a Free Exercise claim, whether a law is "generally

13   applicable," turns on whether the law "in a selective manner impose[s] burdens only on conduct

14   motivated by religious belief."  *Lukumi*, 508 U.S. at 543.  The inquiry is "interrelated" with the

15   analysis of a law's neutrality, above, and "failure to satisfy one requirement is a likely indication

16   that the other has not been satisfied."  *Id.* at 531.

17          As the Court previously recognized, the Director's allowance of an exemption allowing

18   one or more Plans to offer contracts limiting abortion coverage to "religious employers"

19   demonstrates "her intent to accommodate, rather than impose burdens on, religious belief."  Order

20   _____

21          [3] Plaintiffs' claims of selective preference for particular religious views on abortion would
     typically be considered primarily in the context of an Establishment Clause claim.  See *Everson v.*
22   *Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947) (under Establishment Clause, government may
     not "pass laws which aid one religion, aid all religions, or prefer one religion over another").
23   Although Plaintiffs' Establishment Clause claim has been dismissed with prejudice (Order at 18-
     19), analysis of Plaintiffs' allegations under the framework of an Establishment Clause challenge
24   illuminates the deficiencies of their Free Exercise claim.  See *Welch v. Brown*, No. 15-16598, ---
     F.3d ---, 2016 WL 4437617 at *4 (9th Cir. 2016) (dismissing Free Exercise challenge to law
25   prohibiting sexual orientation change therapy for minors "for substantially the same reasons" as
     dismissal of Establishment Clause claim).  An "objective observer" could not reasonably infer
26   that the Director's approval or refusal of exemption requests as alleged in the Amended
     Complaint had a "predominantly religious purpose," the "principal or primary effect" of
27   advancing any inhibiting any particular religious view, or fostered an "excessive entanglement"
     with religion.  *Catholic League for Religious & Civil Rights v. City & Cty of S.F.*, 624 F.3d 1043,
28   1060 (9th Cir. 2010) (en banc) (Silverman, J. concurring); see also *Id.* at 1055.

NOTICE OF MOT. AND MPA ISO MOT. TO DISMISS 1ST AMENDED COMPLAINT (2:15-CV-02165-KJM)

1   at 17.  Thus, Plaintiffs' allegations fail to support any inference that the Director's exercise of

2   exemption authority was not generally applicable.

3        The "general applicability" inquiry does not logically apply to claims of deliberate

4   preference for one set of religious views over another.  However, as discussed above in connect

5   with the neutrality of the Director's alleged actions, Plaintiffs' allegations do not support a

6   plausible inference that the Director's grant or refusal of exemption requests relating to abortion

7   coverage by religious employers selectively imposes burdens only on allegedly disfavored

8   religious beliefs regarding coverage of abortion "because of, rather than in spite of" those beliefs.

9   *Iqbal*, 556 U.S. at 676-77, 681.

10        For these reasons, the Amended Complaint fails to support a reasonable inference that the

11   Director's exercise of her exemption authority was not "generally applicable."

12        **3.**    **The Director's Exercise of Her Exemption Authority Meets Rational Basis Review Because it Furthers Legitimate Government Purposes of Protecting Women's Rights and Interests Even While Seeking to Accommodate Religious Objection to Coverage of Abortion**

13

14

15        A neutral and generally applicable rule or government action must be upheld against a Free

16   Exercise challenge if it is "rationally related to a legitimate governmental purpose."  *Stormans*,

17   794 F.3d at 1084.  The Court in its prior Order recognized that the Director's letters "are

18   rationally related to the government's legitimate purposes of ensuring employers provide basic

19   health care services as defined by the Director and protecting a woman's fundamental right under

20   California law to obtain an abortion."  Order at 17-18.  The Director's exercise of her exemption

21   authority furthers these purposes, as well as furthering other legitimate government purposes in

22   giving effect to women's interests in privacy, and bodily autonomy and integrity, while at the

23   same time furthering the government's legitimate purposes of seeking to make reasonable

24   accommodation for religious belief in the implementation of government policy and regulation.

25        For all the reasons above, the Amended Complaint fails to state a claim that the Director's

26   letters or her exercise of her exemption authority violated Plaintiffs' rights under the Free

27   Exercise Clause.

28   ///

1

### B. Plaintiffs Remain Unable to State a Claim for Any Equal Protection Violation

2

3    Plaintiffs' Amended Complaint fails to allege any basis for an Equal Protection claim.

4    "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny

5    to any person within its jurisdiction the equal protection of the laws, which is essentially a

6    direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

7    *Living Center*, 473 U.S. 432, 439 (1985) (internal citations omitted).  As the Court previously

8    recognized, the Director's letters "apply to Plans, not plan purchasers, and do not make any

9    classification with respect to purchasers."  Order at 21.  The Amended Complaint alleges no new

10   facts that could create any reasonable inference the Director is treating Plaintiffs "differently than

11   similarly situated persons and businesses," nor any facts that the Director acted with any intent or

12   purpose to discriminate against Plaintiffs.  FAC ¶ 133.

13   To prove an equal protection violation, Plaintiffs must show that the Director acted with an

14   intent or purpose to discriminate against Plaintiffs based upon their membership in a protected

15   class.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005).  Plaintiffs,

16   however, fail to allege any facts sufficient to raise a "plausible" claim that the Director acted with

17   such intent to discriminate against Plaintiffs.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

18   556).  Plaintiffs repeat the conclusory allegation from their initial Complaint alleging that they

19   were treated differently than similarly situated persons and business because the Knox-Keene Act

20   contains certain "categorical and individualized" exemptions from its requirements.  FAC ¶ 135.

21   However, as the Court previously concluded, these "conclusory allegations fail to state a plausible

22   claim under the Equal Protection Clause."  Order at 21.  As the Court noted, the Director's letters

23   "apply to Plans, not to plan purchasers, and do not make any classification with respect to

24   purchasers."  *Id.*

25   Plaintiffs' new allegations that the Director has exercised her discretionary authority to

26   grant individualized exemptions in a manner that "results in discrimination among religions" fail

27   for similar reasons.  FAC ¶ 137.  As discussed above in connection with Plaintiffs' Free Exercise

28   claim, Plaintiffs' allegations fail to raise any reasonable inference that the Director has granted or

15

1   refused exemptions based on the religious views of the *purchasers* of health plans regarding

2   abortion in cases of rape or incest.  Plaintiffs do not and could not allege that the Director

3   identified any particular group of religious employers based on such beliefs in granting the

4   exemptions, and so cannot establish that she expressly or implicitly made any allegedly improper

5   classification between religious employers based on their views on this narrow issue in

6   considering exemption requests.  And, while certain religious employers may be differently

7   affected by the exercise of her exemption authority than others, "[a]n equal protection claim will

8   not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than

9   the plaintiff." *Thornton*, 425 F.3d at 1167 (citing *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir.

10   1986)).

11       For these reasons, Plaintiffs' Equal Protection claim should be dismissed.

## CONCLUSION

13       For all the foregoing reasons, the Court should dismiss Plaintiffs' First Amended

14   Complaint.  Having now had two opportunities to plead their case, and having failed to state facts

15   sufficient to constitute a claim, Plaintiffs' lawsuit should be dismissed with prejudice.

16

17   Dated:  August 31, 2016                    Respectfully Submitted,

18                                              KAMALA D. HARRIS
                                                Attorney General of California
19                                              SUSAN M. CARSON
                                                Supervising Deputy Attorney General
20

21

22                                              */s/ Joshua N. Sondheimer*
                                                JOSHUA N. SONDHEIMER
23                                              HADARA R. STANTON
                                                Deputy Attorneys General
24                                              *Attorneys for Defendant Michelle*
                                                *Rouillard, in her official capacity as*
25                                              *Director of the California Department of*
                                                *Managed Health Care*
26

27   SF2015403026
     41588514.doc
28

                                    16