UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOTHILL CHURCH; CALVARY CHAPEL CHINO HILLS; and SHEPHERD OF THE HILLS CHURCH,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care,<br><br>Defendant. | No. 2:15-cv-02165-KJM-EFB<br><br>ORDER |

This action arises from letters the California Department of Managed Health Care ("DMHC") issued to seven private health insurers, which required them to remove any limitations on or exclusions of abortion services from the health care coverage they offer. First Am. Compl. ("FAC"), Ex. 1, ECF No. 42-1. Plaintiffs Foothill Church, Calvary Chapel Chino Hills and Shepherd of the Hills Church ("plaintiffs" or the "Churches"), three churches who allegedly offer their employees DMHC-regulated health coverage through these insurers, filed this action against defendant Michelle Rouillard ("defendant" or "Director"), Director of the DMHC, alleging the letters violate the Churches' constitutional rights under the First and Fourteenth Amendments. This matter is before the court on defendant's motion to dismiss the FAC. ECF No. 47. Plaintiffs
/////

1

oppose the motion. ECF No. 54. The motion was submitted without argument and, as explained below, the court now GRANTS the motion.

I. STATUTORY FRAMEWORK

In California, the DMHC and the California Department of Insurance ("CDI") oversee regulation of the health care industry. The DMHC regulates "health care service plans" under the Knox–Keene Health Care Service Plan Act of 1975 ("Knox–Keene Act" or "Act"), Cal. Health & Safety Code §§ 1340–1399.864, including by approving or disapproving language submitted in evidence of coverage ("EOC") filings. The Knox–Keene Act defines "health care service plans" as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." *Id.* § 1345(f)(1). Health maintenance organizations ("HMOs") and other structured managed care organizations ("MCOs") are "health care service plans" under this definition. *Rea v. Blue Shield of Cal.*, 226 Cal. App. 4th 1209, 1215 (2014).

The Knox–Keene Act requires health care service plans secure a license from the Director of the DMHC. Cal. Health & Safety Code § 1349. One requirement for licensure is that "[a] health care service plan contract [must] provide to subscribers and enrollees all the basic health care services" specified in the statute. *Id.* § 1367(i). Relevant to this action, the Director has promulgated regulations defining the scope of this requirement to include "a variety of voluntary family planning services." Cal. Code Regs. tit. 28, § 1300.67(f)(2). The letters assert that, in conjunction with "the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion," the Knox–Keene Act requires health care service plans to cover elective abortions. FAC, Ex. 1.

The Knox–Keene Act also provides for a number of categorical and individualized exemptions. For example, the Act offers religious employers exemptions from providing coverage for "FDA-approved contraceptive methods that are contrary to [their] religious tenets,"

2

Cal. Health & Safety Code § 1367.25(c), or coverage for "forms of treatment of infertility in a manner inconsistent with [their] religious and ethical principles," *id.* § 1374.55(e).

II.     FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2016, plaintiffs filed an amended complaint, ECF No. 42, which contains the following allegations that largely parallel the allegations of their original complaint. On August 22, 2014, the Director of the DMHC sent letters to seven private health insurers stating the DMHC had reviewed their contracts and the relevant legal authorities and "concluded that it erroneously approved or did not object to" language in some previous EOC filings that may discriminate against women by limiting or excluding coverage for terminations of pregnancies. FAC ¶¶ 1, 47 & Ex. 1. Some private insurers had previously submitted EOC filings to the DMHC notifying the defendant of benefit plan options that excluded coverage for voluntary and elective abortions, and defendant and the DMHC had not objected. FAC ¶¶ 54–55.

Plaintiffs are three non-profit Christian churches located in Southern California. *Id.* ¶¶ 20–22. Each plaintiff has more than fifty full-time employees and must, therefore, provide health coverage for its employees under the federal Patient Protection and Affordable Care Act of 2010. *Id.* ¶¶ 77–78. The Churches offer health insurance plans to their employees through various insurers, each of which received a letter from the DMHC as described above. *Id.* ¶¶ 20–22; FAC, Ex. 1. Plaintiffs all hold what they describe as "historic and orthodox" Christian teachings on the sanctity of human life. FAC ¶ 25. They "believe and teach that abortion destroys an innocent human life" and that "participation in, facilitation of, or payment for an elective abortion is a grave sin." *Id.* ¶¶ 27–28. In furtherance of these beliefs and principles, plaintiffs consulted with their insurance brokers and/or insurers in an effort to provide employee group health plans that do not pay for abortions. *Id.* ¶¶ 36–37. However, plaintiffs' insurance brokers and/or insurers have informed them that the DMHC's letters prevent their group health insurance plans from excluding or limiting coverage for abortions. *Id.* ¶ 38.

This action followed. The original complaint alleged that the DMHC's letters violate plaintiffs' rights under the Free Exercise, Establishment, Free Speech and Equal Protection clauses of the U.S. Constitution. *See* Compl. ¶¶ 104, 114, 119, 126, ECF No. 1. The

court previously dismissed the Establishment and Free Speech claims with prejudice, but allowed the plaintiffs to file an amended complaint to cure defects in their Free Exercise and Equal Protection claims. Order 22. In support of their Free Exercise claim, plaintiffs allege "[t]he Knox–Keene Act, as interpreted and applied by Defendant, is neither neutral nor generally applicable." FAC ¶ 117. Specifically, plaintiffs allege the Director has used her discretion to provide exemptions to some religious employers, but refuses to give an exemption to them. *Id.* ¶ 121. Thus, they allege, "Defendant has interpreted and selectively applied the Knox–Keene Act and its 'basic health care services' requirement against the Churches to suppress specific religious beliefs about when it is morally permissible to provide health insurance coverage for elective abortions." *Id.* ¶ 130. Plaintiff's Equal Protection claim is similarly based on alleged disparate treatment of different religious employers. *See id.* ¶¶ 135–37.

III. <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). When a party moves to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Boardman v. Shulman*, No. 2:12-cv-00639-MCE-GGH, 2012 WL 6088309, at *2 (E.D. Cal. Dec. 6, 2012), *aff'd sub nom. Boardman v. Comm'r*, 597 F. App'x 413 (9th Cir. 2015). If a plaintiff lacks standing, the court lacks subject matter jurisdiction under Article III of the U.S. Constitution. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a

4

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule, however, does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001), or material attached to or incorporated by reference into the complaint, *see id.* A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). *But cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

IV. ANALYSIS

    A. Standing

The court previously found that plaintiffs had sufficiently alleged standing to challenge the letters. Order 12. Nevertheless, defendant again moves to dismiss on the basis that plaintiffs lack standing, merely "incorporat[ing] as if set forth herein" her earlier arguments. Def.'s Mot. to Dismiss 7–8. Defendant has not demonstrated the court's prior ruling was

incorrect, and therefore the court once again finds that plaintiffs have sufficiently pleaded standing to challenge the letters.

B. Free Exercise of Religion

The Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," U.S. Const. amend. I. However, the right to freely exercise one's religion "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in the judgment)).[1] A valid and neutral law of general applicability must be upheld if it is rationally related to a legitimate governmental purpose. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76, 1084 (9th Cir. 2015). In contrast, laws that are not neutral or are not generally applicable are subject to strict scrutiny. *Id.* at 1076. Under strict scrutiny, laws "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993).

"The tests for '[n]eutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied.'" *Stormans*, 794 F.3d at 1076 (alterations in original) (quoting *Lukumi*, 508 U.S. at 531).

1. Neutrality

A law is not neutral if its object is to infringe upon or restrict practices because of their religious motivation. *Stormans*, 794 F.3d at 1076 (citing *Lukumi*, 508 U.S. at 533). In determining whether a law is neutral, courts consider both the text and the operation of the law.

---

[1] Although *Smith* was superseded by the Religious Freedom Restoration Act of 1993 ("RFRA"), the Supreme Court later held that RFRA applies only to the federal government and not to the states. *See Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 n.4 (9th Cir. 2015).

6

"A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533. The letters at issue here and the underlying laws they purportedly enforce do not refer to any religious practice, conduct, belief or motivation on their face; they are facially neutral.

However, even if a law or enforcement action based on the law is facially neutral, it is not neutral if it operates as a "covert suppression of particular religious beliefs." *Id.* at 534 (quoting *Bowen v. Roy*, 476 U.S. 693, 703 (1986)). In determining operational neutrality, a court may consider "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history." *Id.* at 543.

The court previously found that plaintiffs' original complaint failed to allege sufficient facts to state a claim that the letters were not neutral in operation. Order 16. In addition to the arguments plaintiffs made in opposition to defendant's first motion to dismiss, plaintiffs now argue that "the Director has suppressed the specific religious beliefs of the Churches through her selective application of the law." Pls.' Opp'n to Mot. to Dismiss 14. They also contend their new allegation that the letters affected only a "very small fraction" of employers "plausibly suggest[s] that . . . the Director's new abortion coverage requirement fell only on the plans of religious employers." *Id.* at 15. These new allegations, however, do not change the analysis.

First, that the letters affected only a "very small fraction" of employers does not make it any more plausible that the "object" of the letters was to "infringe upon or restrict practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. That the amount of employers affected was small does not, without more, make it plausible that the object was to target religious employers. Second, as explained more fully below, plaintiffs have not alleged sufficient facts to make it plausible that the Director has selectively applied the law to target the plaintiffs' religious beliefs. Plaintiffs allege that the Director granted an exemption to at least one health care service plan, allowing it to exclude coverage for abortion except in the case of rape or
/////

7

incest. FAC ¶ 93. The Director previously admitted to having granted the exception in her first motion to dismiss, Def.'s Mot. to Dismiss 5 n.2, ECF No. 21, and as the court noted in its prior order, this exemption evinces, if anything, the Director's "intent to accommodate, rather than impose burdens on, religious belief," Order 17.

Accordingly, plaintiffs have not alleged sufficient facts to call the letters' facial neutrality into question.

### 2. General Applicability

A law is not generally applicable if it "impose[s] burdens only on conduct motivated by religious belief" in a "selective manner." *Lukumi*, 508 U.S. at 543. Plaintiffs argue that the letters are not generally applicable because "the Director can and has exempted plans from the abortion coverage requirement on an individualized basis" and she "has exercised her discretionary exemption authority in a selective and discriminatory way." Pls.' Opp'n to Mot. to Dismiss 12. Plaintiffs allege plans operated or administered by educational institutions, employers with five or fewer subscribers and the California Small Group Reinsurance Fund are exempt from the abortion coverage requirements. FAC ¶¶ 102–05. As explained in the court's prior order, "the exemptions and discretion discussed by plaintiffs are provided for by the Knox–Keene Act itself, whose constitutionality plaintiffs do not challenge." Order 17. Plaintiffs have alleged no new facts that change the court's prior conclusion.

### 3. Individualized Assessment Exception

Finally, plaintiffs allege that the Director's discretion to exempt plans from the abortion coverage requirement triggers strict scrutiny because "she has . . . exercised this discretion to prefer the religious beliefs of some employers to others." Pls.' Opp'n to Mot. to Dismiss 6. An exception to the general rule that neutral and generally applicable laws are subject to rational basis review prescribes that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Am. Friends Serv. Comm. Corp. v. Thornburgh*, 951 F.2d 957, 961 (9th Cir. 1991) (quoting *Smith*, 494 U.S. at 884). For example, the Supreme Court in *Lukumi* applied strict scrutiny because the ordinance at issue required the city to determine when killing an animal was

8

necessary, and the city's "application of the ordinance's test of necessity devalue[d] religious reasons for killing by judging them to be of lesser import than nonreligious reasons." 508 U.S. at 537. Plaintiffs argue this exception applies here as provisions of the Knox–Keene Act "create[] a system of 'individualized assessments' because they allow for 'unfettered discretion that could lead to religious discrimination.'" Pls.' Opp'n to Mot. to Dismiss 9 (emphasis removed) (quoting *Stormans*, 794 F.3d at 1081–82).

Plaintiffs, however, misconstrue the individualized assessment exception. It is not enough to allege facts that show "[t]he mere possibility of the Director playing favorites and granting exemptions to some but not to others" in order to trigger strict scrutiny as Plaintiffs claim. *Id.* at 9. All of the cases cited by plaintiffs show that they must also allege that the Director in fact exercised her discretion in a discriminatory manner. In *Lukumi*, the plaintiffs showed that the determination of which killings were considered "necessary" demonstrated that the city "forb[a]d[e] few killings but those occasioned by religious sacrifice." 508 U.S. at 534. Similarly, in *Cottonwood Christian Center v. Cypress Redevelopment Agency*, the court found the individualized assessment exception applied because the land-use decisions at issue invited discretion and the city denied the plaintiff permits to build a church. 218 F. Supp. 2d 1203, 1222–24 (C.D. Cal. 2002).

Plaintiffs also allege the Director has granted an exception to accommodate religious employers who oppose abortion except in the case of rape or incest, but has not granted an exception that would accommodate plaintiffs' beliefs that abortion is always immoral. They claim these allegations show she "has exercised her discretion in a way that prefers some religious beliefs to others." Pls.' Opp'n to Mot. to Dismiss 10. However, plaintiffs have made only the bald allegation that the Director "refuses to grant an exemption that would accommodate the religious beliefs of the Churches." *Id.* at 10. Plaintiffs have not alleged that any plan that would be acceptable to them has been submitted to the Director for approval, nor that she rejected

any such plan. Thus their allegation that "she has repeatedly refused to grant them one," FAC ¶ 98, is conclusory and insufficient to survive a motion to dismiss.[2]

### C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the law," U.S. Const. amend. XIV, which essentially "direct[s] that all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiffs' First Amended Complaint alleges that the Churches were treated differently than other similarly situated religious employers because "Defendant has exercised her discretion to exempt the health plan of some religious employers based on their religious beliefs about abortion but has refused to do the same for the Churches." FAC ¶ 137. As explained in the court's order addressing defendants' original motion to dismiss, the challenged letters "apply to Plans, not plan purchasers, and do not make any classification with respect to purchasers." Order 21. As described above, plaintiffs have not now alleged that any plan has been rejected based on religion. Thus, plaintiffs have not adequately pleaded a claim under the Equal Protection Clause.

## V. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to amend pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.

---

[2] Plaintiffs also claim that the Director "admitt[ed] that she will not exercise her discretionary exemption authority to accommodate the Churches," Pls.' Opp'n to Mot. to Dismiss 10, but they misconstrue her motion to dismiss. The Director merely argues that "even if" plaintiffs properly pleaded that she refused to approve a plan acceptable to plaintiffs, such a decision would survive strict scrutiny. Def.'s Mot. to Dismiss 12. Because the court finds that plaintiffs' First Amended Complaint fails to allege sufficient facts to merit the application of strict scrutiny, it does not address that argument. The court only notes here that the Director has not admitted she would not approve a plan that meets plaintiffs' asserted needs.

1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  However, "the liberality in granting leave to amend is subject to several limitations." *Ascon Props.*, 866 F.2d at 1160.  "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.*  In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (quoting *Leighton*, 833 F.2d at 186 n.3).

Though plaintiffs have already been given an opportunity to amend their complaint, defendant has not shown it would be futile to permit plaintiff to amend their claims an additional time.  Plaintiffs' claims fail because they rest on conclusory allegations, making it possible that plaintiffs are able to allege additional facts that would state Free Exercise or Equal Protection claims.  In light of the Federal Rules' policy of favoring amendments, and the Ninth Circuit's construction of those Rules, the court GRANTS plaintiffs leave to amend if they can do so consonant with Rule 11.

VI. <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS defendant's motion to dismiss for failure to state a claim.  The court DISMISSES plaintiffs' claims with leave to amend.  Plaintiffs shall file an amended complaint, if any, within twenty-one (21) days of the date this order is filed.

This order resolves ECF No. 47.

IT IS SO ORDERED.

DATED: August 31, 2017.

UNITED STATES DISTRICT JUDGE

11