Erik Stanley (Arizona Bar No. 030961)*
Kevin Theriot (Arizona Bar No. 030446)*
Jeremiah Galus (Arizona Bar No. 030469)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
estanley@ADFlegal.org
ktheriot@ADFlegal.org
jgalus@ADFlegal.org

Casey Mattox (Virginia Bar No. 47148)*
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
cmattox@ADFlegal.org

Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678
(916) 960-2211
alex@medinamckelvey.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| FOOTHILL CHURCH, CALVARY CHAPEL CHINO HILLS, and SHEPHERD OF THE HILLS CHURCH,<br><br>     Plaintiffs,<br><br>vs.<br><br>MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care.<br><br>     Defendant. | Case No. 2:15-CV-02165-KJM-EFB<br><br><br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs Foothill Church, Calvary Chapel Chino Hills, and Shepherd of the Hills Church (collectively, "the Churches"), by and through their attorneys, hereby submit their Second Amended Complaint for Injunctive and Declaratory Relief and allege as follows:

**INTRODUCTION**

1.    This legal action challenges the constitutionality of California's Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act"), as applied to the Churches to require their employee group health plans to provide coverage for elective abortions in violation of the Churches' religious beliefs.

2.    Defendant Michelle Rouillard, director of the California Department of Managed Health Care ("DMHC"), has interpreted the requirement in the Knox-Keene Act that health care service plans provide coverage for medically necessary "basic health care services"—specifically, California Health & Safety Code §§ 1345(b) & 1367(i)—to mandate coverage for elective abortions in the group health plans of the Churches and other religious organizations.

3.    For years, DMHC allowed health plans operating in California to offer group health insurance coverage to churches and other religious organizations that excluded or limited abortion coverage consistent with the employer's religious beliefs. But that respect for religious belief, which is constitutionally required, was discarded after Planned Parenthood and other abortion advocates demanded that the newly appointed director of DMHC, Defendant Rouillard, prevent two Catholic universities in California from restricting abortion coverage consistent with their religious beliefs.

4.    After numerous off-the-record conversations and closed-door meetings with Planned Parenthood and the other abortion advocates, Defendant Rouillard issued letters to health plans on August 22, 2014, directing them to provide coverage for *all* legal abortions—including elective ones—and claiming that such unrestricted abortion coverage was required under the Knox-Keene Act. Defendant Rouillard instructed the health plans to begin providing that coverage immediately and to remove any abortion limitations or exclusions from their plan documents. *See* Exhibit 1.

5.     This new interpretation and application of the Knox-Keene Act was specifically intended to stop religious employers from obtaining coverage consistent with their religious beliefs. As noted, the change in interpretation was prompted by two Catholic universities deciding to remove elective abortion coverage from their group health plans. And DMHC and Defendant Rouillard had no information showing that secular, nonreligious employers had purchased coverage restricting abortion coverage. In fact, the documents and information provided to them by the health plans showed the opposite: DMHC and Defendant Rouillard knew or should have known that the new interpretation and application of the Knox-Keene Act would only affect plans that had been purchased by churches and religious organizations.

6.     This unprecedented requirement is both unconstitutional and unnecessary—a fact that DMHC and Defendant Rouillard realized, but ignored. Indeed, in response to the situations concerning the two Catholic universities, DMHC conducted a legal analysis and concluded that "religious employers," as defined by California Health & Safety Code § 1367.25(c), could legally restrict abortion coverage consistent with their religious beliefs. Yet DMHC and Defendant Rouillard intentionally ignored this legal conclusion and required health plans to amend plan contracts that they knew were offered exclusively to "religious employers."

7.     Moreover, the Knox-Keene Act exempts entire categories of health plans from its requirements, and gives the director of DMHC unfettered discretion to grant exemptions from and waivers to the Act's "basic health care services" requirement. This discretionary exemption authority has since been exercised in a way that prefers some religious beliefs to others. After issuing the August 22, 2014 letters, DMHC and Defendant Rouillard exempted one group health plan from the abortion coverage requirement set forth in those letters, allowing that plan to exclude coverage for abortion except in the cases of rape, incest, and to save the life

of the mother. In contrast, DMHC and Defendant Rouillard have rejected and refused to grant an exemption for plan language that would offer coverage consistent with the Churches' religious beliefs, which forbids elective abortions under any circumstance.

8.      The Churches now seek declaratory and injunctive relief to remedy this unnecessary infringement of religious belief and impairment of conscience. Without injunctive and declaratory relief as requested herein, the Churches are suffering and will continue to suffer irreparable harm.

## JURISDICTION AND VENUE

9.      This action raises questions under the Constitution of the United States, specifically the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988.

10.      This Court has subject matter jurisdiction over the Churches' claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11.      This Court has authority to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and under Federal Rule of Civil Procedure 57.

12.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant resides in this district.

## PARTIES

13.      Plaintiff Foothill Church is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Foothill Church is located in Glendora, California, and offers health insurance coverage to its employees through Kaiser Permanente.

14.      Plaintiff Calvary Chapel Chino Hills is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Calvary Chapel Chino Hills is located in Chino,

California, and offers health insurance coverage to its employees through Kaiser Permanente, Aetna, and Anthem Blue Cross.

15.    Plaintiff Shepherd of the Hills Church is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Shepherd of the Hills Church is located in Porter Ranch, California, and offers health insurance coverage to its employees through Anthem Blue Cross and Kaiser Permanente.

16.    Defendant Michelle Rouillard is the director of DMHC, an executive agency of the State of California responsible for enforcing the Knox-Keene Act. Rouillard assumed her position as director on December 1, 2013. In her official capacity, Rouillard is responsible for interpreting the Knox-Keene Act to require coverage for all legal abortions and issuing the August 22, 2014 letters requiring the Churches' group health plans to cover elective abortion.

## FACTS

### The Churches' religious beliefs

17.    The Churches believe that the Bible is the inspired Word of God and the authoritative guide for all Christian life, practice, and doctrine.

18.    The Churches hold and actively profess historic and orthodox Christian teachings on the sanctity of human life, including the belief that each human life is formed by and bears the image of God.

19.    The Churches believe and teach that all human life is sacred from the moment of conception to natural death and that God has condemned the intentional destruction of innocent human life.

20.    The Churches believe and teach that abortion destroys an innocent human life and therefore violates biblical teachings about the sanctity of human life.

21.   The Churches believe and teach that knowing participation in, facilitation of, or payment for an abortion that violates their religious beliefs is itself sin.

22.   Accordingly, the Churches' religious beliefs prohibit them from purchasing or offering health insurance coverage to their employees that provides coverage for abortions that violate the Churches' religious beliefs and teachings about the sanctity of human life.

23.   Because of these religious beliefs, and their desire to honor God in both word and deed, the Churches seek to recognize and preserve the sanctity of human life through their outreach and ministries.

24.   For example, Foothill Church supports local schools, organizations, and ministries through various outreach events throughout the year. Among other things, Foothill Church:

    a.   Partners with a faith-based organization dedicated to providing housing and services to victims of sex-trafficking in the San Gabriel Valley;

    b.   Partners with an organization that exists to bring freedom and justice to victims and survivors of sexual exploitation and trafficking by raising awareness and providing financial support to frontline organizations working to end these forms of modern day slavery;

    c.   Supports an organization that seeks to establish and sustain neighborhood-based learning centers that serve at-risk children and their families, equipping them to thrive academically, socially, and spiritually;

    d.   Partners with a local elementary school through a yearly backpack drive and "Affordable Christmas" event each December; and

    e.   Supports a local pregnancy resource center that provides a safe place where individuals and families are empowered to make healthy life

choices and that offers pregnancy tests, ultrasound, material assistance, counseling, and post-abortion help to those in need.

25.   Calvary Chapel Chino Hills likewise engages in outreach and ministry that reflects its commitment to honoring and preserving the sanctity of all human life. Among other things, Calvary Chapel Chino Hills:

   a.   Helps provide clothing, haircuts, and hot meals to the homeless;

   b.   Has a prison ministry designed to reach those in prison with the Gospel, encouragement, and the love of Jesus Christ;

   c.   Has a special needs ministry for children ages 2–17, which includes Bible study, worship, crafts, motor skill activities, and sensory play;

   d.   Provides and assembles care packages to send to members of the military who are currently deployed overseas; and

   e.   Supports local medical centers and clinics that provide free, life-affirming counseling and medical services to women facing unexpected pregnancies.

26.   Shepherd of the Hills Church also strives to respect and honor the sanctity of all human life through its various outreaches and ministries: Among other things, Shepherd of the Hills Church:

   a.   Serves local schools and various community organizations through clean up, painting, and landscaping projects;

   b.   Provides a support and recovery program for men and women who have been affected by alcohol, drug, or sexual addictions, as well as the families who have also been affected;

   c.   Participates in a prison ministry that equips prisoners, ex-prisoners, and their families to live a Christ-centered life after they are released back into society by offering biblically-based life-skills seminars and workshops;

   d.   Offers a six-week support class for hurting moms and dads who have

lost a baby through miscarriage; and

     e.    Hosts a confidential 12-week ministry designed to assist women who have had abortions and who are seeking healing and forgiveness in Jesus Christ.

27.    The Churches' religious beliefs also compel them to promote the physical, emotional, mental, and spiritual well-being of their employees, and they exercise those beliefs, in part, by providing health insurance coverage as a benefit of employment.

28.    In deciding to offer health insurance to their employees, the Churches determined that purchasing a group health plan was the only viable option for providing health care coverage consistent with their religious duty to care for their employees and their legal obligations under the Patient Protection and Affordable Care Act.

29.    The Churches seek to offer health insurance coverage to their employees in a way that does not also cause them to pay for and facilitate abortions in violation of their religious beliefs.

30.    To that end, the Churches consulted with their insurance brokers and/or health plans to avoid offering abortion coverage in a way that conflicts with their religious beliefs.

31.    The Churches subsequently learned, however, that DMHC's and Defendant Rouillard's new interpretation and application of the Knox-Keene Act, as set forth in the August 22, 2014 letters, prohibits them from excluding or limiting abortion coverage in their group health plans.

**The new interpretation of the Knox-Keene Act (the 8/22/14 letters)**

32.    On August 22, 2014, Defendant Rouillard sent letters to seven health plans informing them that the Knox-Keene Act—specifically its requirement that health care service plans cover medically necessary "basic health care services"— required the plans to provide coverage for all legal abortion. *See* Exhibit 1

33.    Although Defendant Rouillard addressed the letters to health plans, this new interpretation and application of the Knox-Keene Act directly and immediately affected the Churches and other religious employers that had purchased or desire to purchase group health plans that limit or exclude abortion coverage consistent with their religious beliefs.

34.    In issuing the letters, Defendant Rouillard claimed that DMHC surveyed evidence of coverage (EOC) filings and determined that language limiting or excluding coverage for abortion was present in the health plans' EOC filings for products "covering a very small fraction of California health plan enrollees." *Id.*

35.    Defendant Rouillard directed the health plans to immediately begin providing coverage for all legal abortions in those plan contracts that did not already provide unrestricted abortion coverage. *Id.*

36.    Defendant Rouillard also instructed the health plans to amend their plan documents and remove any limitations on coverage for abortions, such as excluding coverage for "voluntary" or "elective" abortions or limiting coverage to "therapeutic" or "medically necessary" abortions. *Id.*

37.    Defendant Rouillard asserted that any limitations placed on abortion coverage violated the requirement in the Knox-Keene Act that group health plans include coverage for "basic health care services." *Id.*

38.    Defendant Rouillard did not allow for the possibility of any religious exemption in the August 22, 2014 letters.

39.    Facing the possibility of fines and penalties for noncompliance, the health plans made the changes requested by Defendant Rouillard.

### The way things used to be: abortion coverage before 8/22/14

40.    The Knox-Keene Act is a decades-old law that, among other things, requires health care service plans to provide coverage for "basic health care services." Cal. Health & Safety Code § 1367(i).

41.    The Knox-Keene Act defines "basic health care services" to include physician services; hospital inpatient services and ambulatory care services; diagnostic laboratory and diagnostic and therapeutic radiologic services; home health services; preventive health services; emergency health care services; and hospice care. Cal. Health & Safety Code § 1345(b).

42.    The implementing regulations adopted by DMHC clarify that "basic health care services" include only "medically necessary" services. *See* Cal. Code Regs. tit. 28, § 1300.67.

43.    Before August 22, 2014, for purposes of abortion coverage, DMHC interpreted the Knox-Keene Act and its related regulations as only requiring coverage for "medically necessary" abortions.

44.    Health plans nevertheless provided coverage for both "medically necessary" and "elective" abortions in plan contracts that were offered to secular, nonreligious employers.

45.    For religious organizations, however, the health plans sought (and received) DMHC approval for optional contract language that would allow religious organizations to exclude or limit abortion coverage consistent with their religious beliefs.

46.    The optional language that was offered to religious organizations varied by plan and thus excluded or limited abortion coverage in different ways.

47.    As just a few examples, DMHC previously approved or did not object to health plan filings that:

   a.    Allowed religious employers to exclude coverage for "elective abortion";

   b.    Allowed religious organizations to exclude coverage for "voluntary termination of pregnancy"; and

   c.    Only required religious organizations to provide coverage for "medically necessary abortion," which was defined as an abortion

1    performed to save the life of the mother.

2    48.   As a result, the Churches and other religious organizations could

3    purchase group health plans that cared for the medical needs of their employees

4    and families while at the same time excluding or limiting abortion coverage

5    consistent with their religious beliefs.

6    **The new interpretation's effect on the Churches**

7    49.   The new interpretation and application of the Knox-Keene Act set forth

8    in the August 22, 2014 letters caused coverage for all elective abortions to be

9    injected into the group health plans of religious organizations without their

10   knowledge or approval and in violation of their religious beliefs.

11   50.   It also has prevented the Churches and other religious organizations

12   from obtaining a group health plan that limits or excludes abortion coverage

13   consistent with their religious beliefs.

14   51.   Were it not for this new interpretation and application of the Knox-Keene

15   Act, the Churches would and could obtain group health insurance for their

16   employees that limits or excludes coverage for abortion consistent with their

17   religious beliefs.

18   52.   As noted, health plans operating in California previously offered group

19   health insurance coverage to churches and other religious organizations that

20   limited or excluded abortion coverage consistent with the employer's religious

21   beliefs and would continue to offer such coverage were it not for this

22   unconstitutional interpretation and application of the Knox-Keene Act.

23   53.   The Churches cannot avoid the harmful effects of the new interpretation

24   and application of the Knox-Keene Act because federal law requires them to offer

25   their employees affordable health insurance.

26   54.   Under the Patient Protection and Affordable Care Act ("ACA"), employers

27   with more than fifty "full-time equivalent" employees must provide a certain level

28   of health insurance to their employees.

55.   The Churches each have more than fifty full-time equivalent employees and must comply with the ACA's mandate to provide health insurance to their employees.

56.   The new interpretation and application of the Knox-Keene Act thus forces the Churches to choose between violating federal law and violating their deeply held religious beliefs by offering coverage for elective abortions.

57.   Dropping health insurance coverage for their employees would subject the Churches to crippling monetary penalties under the ACA.

58.   In any event, being forced to stop providing employee health insurance coverage would interfere with the Churches' religious beliefs about promoting the physical, emotional, mental, and spiritual well-being of their employees.

59.   The new interpretation and application of the Knox-Keene Act also imposes a burden on the Churches' ability to recruit and retain employees because it creates uncertainty as to whether the Churches will be able to offer group health insurance in the future, placing them in a competitive disadvantage.

60.   Moreover, the Churches rely on tithes and donations from members to fulfill their Christian mission.

61.   On information and belief, members who give to the Churches do so with an understanding of the Churches' Christian mission and with the assurance that they will continue to adhere to and transmit authentic Christian teachings on morality and the sanctity of human life.

62.   Because of this new interpretation and application of the Knox-Keene Act, the Churches have been forced to use donated funds for purposes known to be morally repugnant to their members and in ways that violate the implicit trust of the purpose of their tithes and donations.

**The new interpretation targets religious organizations**

***The road to an unconstitutional interpretation: Catholic universities, Planned Parenthood, and a new director***

63.     The new interpretation and application of the Knox-Keene Act was a direct response to religious organizations purchasing group health insurance coverage consistent with their religious beliefs.

64.     In October 2013, news articles reported that two Catholic universities in California—Loyola Marymount University ("LMU") and Santa Clara University ("SCU")—had recently decided to remove elective abortion coverage from their employee health care plans.

65.     After learning about this, abortion advocates—namely, Planned Parenthood Affiliates of California ("Planned Parenthood"), the American Civil Liberties Union of California ("ACLU"), and the National Health Law Program ("NHeLP")—began lobbying DMHC to stop LMU, SCU, and other religious organizations from being able to limit or exclude abortion coverage consistent with their religious beliefs.

66.     On or about November 22, 2013, representatives of DMHC, including Defendant Rouillard, held an in-person meeting with representatives of Planned Parenthood, the ACLU, and NHeLP.

67.     The purpose of that meeting was to discuss the decisions of LMU and SCU to eliminate elective abortion coverage from their group health plans, as well DMHC's prior approvals of health plan filings that permitted religious organizations to purchase coverage consistent with their religious beliefs.

68.     Shortly after the November 2013 meeting, and after Defendant Rouillard officially assumed her role as director on December 1, 2013, DMHC issued a "data call" to health plans requesting information related to their abortion coverage.

69.     Specifically, DMHC asked the health plans to provide the language they were using for abortion or termination of pregnancy coverage and to define the

relevant terms used in their plan documents (e.g., "medically necessary abortion," "therapeutic abortion," "elective abortion," "voluntary termination of pregnancy").

70.   While DMHC was reviewing the requested information, Planned Parenthood, the ACLU, and NHeLP continued to advocate for DMHC and Defendant Rouillard to interpret the Knox-Keene Act in such a way as to prohibit religious organizations like LMU and SCU from restricting abortion coverage consistent with their religious beliefs.

71.   On February 3, 2014, Planned Parenthood once again requested a meeting with DMHC and Defendant Rouillard to discuss "plans that are excluding abortion from their coverage," as well as the ongoing situations at LMU and SCU. Exhibit 2.

72.   On or about February 19, 2014, representatives of DMHC, including Defendant Rouillard, held another in-person meeting with representatives of Planned Parenthood, the ACLU, and NHeLP to discuss the abortion coverage issue.

73.   The following day, on February 20, 2014, Planned Parenthood provided Defendant Rouillard with written arguments for how DMHC could interpret the Knox-Keene Act to require all group health plans, including those offered exclusively to religious organizations, to cover elective abortions.

74.   Around the same time, Planned Parenthood began lobbying the California Governor's Office and California Health and Human Services ("CHHS") to require religious organizations to cover elective abortions in their group health plans.

75.   On March 11, 2014, Planned Parenthood contacted the Governor's Office to set up a meeting to discuss Planned Parenthood's priority legislation for the year, explaining that, because "a couple of Catholic Universities [ ] are excluding certain types of services from their health plans," Planned Parenthood was promoting legislation that would prevent employers from excluding abortion from their employee health plans. Exhibit 3.

76.     Two days later, on March 13, 2014, representatives of CHHS—the executive agency that oversees DMHC—held an in-person meeting with representatives of Planned Parenthood and the ACLU to discuss the abortion coverage issue concerning religious organizations.

77.     The next day, on March 14, 2014, Planned Parenthood again contacted the Governor's Office to set up a time to discuss legislation that would "address the issue that DMHC has approved, and Catholic Universities have been purchasing, large group employee health plans that exclude certain types of abortions." Exhibit 3.

78.     On March 17, 2014, Planned Parenthood thanked CHHS for the meeting on March 13, 2014, but nevertheless cautioned that, while it "would prefer to see this resolved without legislation, [it was] concerned with DMHC's ability to find a solution." Exhibit 4.

79.     Planned Parenthood then provided an ultimatum, stating that it "would feel positive" about an administrative solution, and would not pursue legislation, if DMHC and the Administration agreed to the following three things:

   a.     DMHC would not approve any further plans that exclude coverage for abortion or other reproductive health care service;

   b.     DMHC would rescind their approval of any plans that include an abortion exclusion so that health plans cannot offer plans to employers in the future that exclude abortion; and

   c.     DMHC would find a solution to fix the already approved plans being offered to employees of LMU and SCU.

   *Id.*

80.     On or about April 14, 2014, representatives of CHHS had a second in-person meeting with representatives of Planned Parenthood, the ACLU, and NHeLP to further discuss an administrative "solution" to the abortion coverage issue concerning religious organizations.

81. Shortly thereafter, on April 29, 2014, CHHS told Planned Parenthood that it was "working with DMHC on the legal and practical issues relating to the 'updated' interpretation" and that a "6-8 week estimate is still good." Exhibit 5.

82. On or about May 14, 2014, representatives of CHHS and DMHC, including Secretary of CHHS Diana Dooley and Defendant Rouillard, met to discuss an administrative "solution" to the abortion coverage issue concerning religious organizations.

83. Approximately two days later, on May 16, 2014, CHHS informed Planned Parenthood that "DMHC would like to request Planned Parenthood's assistance on some additional information" and thus asked Planned Parenthood to contact DMHC's deputy director for plan and provider relations. *Id.*

84. After receiving additional "assistance" from Planned Parenthood, DMHC issued another "data call" to the health plans—this time requesting general information about the types of employer groups that had purchased plans excluding or limiting abortion coverage.

85. Specifically, DMHC asked the health plans to: (1) identify the number of employer groups that purchased coverage limiting or excluding coverage for abortion; and (2) indicate the number of those employer groups that qualified as a "religious employer" under California Health & Safety Code § 1367.25(c) (i.e., California's contraceptive mandate).

86. To meet the definition of "religious employer" under California Health & Safety Code § 1367.25(c), an employer must meet each of the following criteria:

   a. The inculcation of religious values is the purpose of the entity;

   b. The entity primarily employs persons who share the religious tenets of the entity;

   c. The entity serves primarily persons who share the religious tenets of the entity; and

   d. The entity is a nonprofit organization as described in Section

6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

87.   Under that narrow definition, non-profit religious organizations like LMU and SCU with sincerely held religious beliefs against abortion were misleadingly classified as "nonreligious" employers.

88.   By requiring health plans to use that narrow definition of "religious employer," DMHC and Defendant Rouillard intentionally ignored that the employers purchasing coverage limiting or excluding coverage for abortion did so for religious reasons.

### *Religious organizations uniquely affected by new interpretation*

89.   DMHC and Defendant Rouillard issued this new interpretation and application of the Knox-Keene Act even though they knew or should have known that only plans purchased by religious organizations would be affected.

90.   As noted above, the new interpretation and application of the Knox-Keene Act was crafted in direct response to two Catholic universities—LMU and SCU—deciding to remove elective abortion coverage from their group health plans in light of their religious beliefs.

91.   Additionally, both before and after issuing the August 22, 2014 letters, DMHC received information from health plans indicating that only "religious employers," as defined by California Health & Safety Code § 1367.25(c), and "religiously-affiliated employers" had purchased coverage limiting or excluding coverage for abortion.

92.   At least one health plan informed DMHC that all of the employer groups that chose to limit or exclude abortion coverage qualified as "religious employers" under even the narrow definition used in California Health & Safety Code § 1367.25(c).

93.   And at least one health plan informed DMHC that it provided coverage for both "medically necessary" and "elective" abortions in all of its plan contracts,

and that only some religious groups had opted to purchase alternative abortion coverage.

94.     In contrast, DMHC and Defendant Rouillard received no information from the health plans—and had no independent knowledge—demonstrating that secular, nonreligious employers had purchased plan contracts limiting or excluding abortion coverage.

### *Disregarding existing law and DMHC's own legal analysis*

95.     Furthermore, by applying the new interpretation of the Knox-Keene Act to plan contracts offered exclusively to "religious employers," as defined in California Health & Safety Code § 1367.25(c), DMHC and Defendant Rouillard intentionally ignored their own legal analysis.

96.     Indeed, in 2013, after news articles reported on the situations at LMU and SCU (but before DMHC and Defendant Rouillard met with the abortion advocates), SCU sought clarification from DMHC about whether it could restrict abortion coverage consistent with its religious beliefs.

97.     DMHC subsequently researched the issue and concluded that "religious employers"—as narrowly defined in California Health & Safety Code § 1367.25(c)—could limit or exclude abortion coverage in their employee health plans.

98.     Despite concluding that "religious employers," as defined in California Health & Safety Code § 1367.25(c), could restrict abortion coverage consistent with their religious beliefs, Defendant Rouillard intentionally applied the abortion coverage requirement to all group health plans, including those offered exclusively to "religious employers."

99.     The new interpretation and application of the Knox-Keene Act conflicts with existing state and federal law and how the Knox-Keene generally treats religious organizations.

100.    Indeed, the Knox-Keene Act specifically exempts "religious employers" from being forced to provide coverage for contraceptive methods "that are contrary

to [their] religious tenets" and requires they be provided with a plan contract excluding contraceptive coverage if so requested. Cal. Health & Safety Code § 1367.25(c).

101.   The Knox-Keene Act also exempts religious organizations from being required to offer coverage for infertility treatments "in a manner inconsistent with [their] religious and ethical principles." Cal. Health & Safety Code § 1374.55(e).

102.   The new interpretation and application of the Knox-Keene Act has thus created an untenable situation where the Churches and other religious organizations do not have to provide health insurance coverage for contraceptives and infertility treatments but must provide coverage for elective abortions.

103.   The new interpretation and application of the Knox-Keene Act also constitutes unlawful discrimination against a health insurance plan under the federal Weldon Amendment, which prohibits states receiving funding under the federal Labor, Health and Human Services, and Education Appropriations Act, from discriminating against health insurance plans based on whether they cover abortion. *See* Consolidated Appropriations Act of 2017, Pub. L. No. 115-31, Division H, Title V, § 507(d) (May 5, 2017).

104.   Under the Weldon Amendment, none of the funds received for programs under the Labor, Health and Human Services, and Education Appropriations Act may be available to a State that "subjects any individual or institutional health care entity to discrimination on the basis that the health care entity does not provide for, pay for, provide coverage of, or refer for abortions." *Id.*

105.   The Weldon Amendment defines "health care entity" to include "a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan." *Id.*

106.   On information and belief, California receives approximately $70 billion in federal funds for programs under the Labor, Health and Human Services, and Education Appropriations Act.

*Intentionally keeping religious employers in the dark*

107.   DMHC and Defendant Rouillard did nothing to specifically notify the Churches or other religious organizations about the new interpretation and application of the Knox-Keene Act.

108.   Defendant Rouillard instead told the health plans that they no longer had to mention abortion coverage in their plan documents. *See* Ex. 1.

109.   By instructing health plans that they could omit references to abortion coverage entirely, Defendant Rouillard discouraged them from notifying the Churches and other religious organizations about this significant change to their group health insurance.

110.   In direct response to this guidance, some health plans opted to remove any reference to abortion coverage in their health plan documents, making it difficult for religious organizations to know whether and to what extent their group health plan provides coverage for abortion.

111.   As a result, many religious organizations, including the Churches, did not learn until much later that the Knox-Keene Act had been reinterpreted to mandate coverage for elective abortions.

112.   On information and belief, other churches and religious organizations in California remain unaware that their group health plans are now required to provide coverage for elective abortions in violation of their religious beliefs.

**Exemptions abound, but not for the Churches**

*Enumerated exemptions*

113.   The Knox-Keene Act exempts entire categories of health plans from its requirements, including the "basic health care services" requirement.

114.   For example, health plans "directly operated by a bona fide public or private institution of higher learning" are exempt from the Knox-Keene Act and its "basic health care services" requirement. *See* Cal. Health & Safety Code § 1343(e).

115.    So too are plans directly operated by the California Small Group Reinsurance Fund, *see id.*, and "small plans" administered solely by an employer that "does not have more than five subscribers," *see* Cal. Code Regs. tit. 28, § 1300.43.

116.    In exempting entire categories of plans, including those identified above, the State of California found persuasive certain secular reasons for not requiring group health plans to cover "basic health care services," and, by extension, all legal abortions.

### *Individualized exemption authority*

117.    Defendant Rouillard has required the Churches' and other religious organizations' group health plans to cover all legal abortions even though the very law she is applying, the Knox-Keene Act, gives her virtually unlimited power to exempt anyone (and any plan) from its requirements.

118.    Under the Knox-Keene Act, the director of DMHC—in this case, Defendant Rouillard—has unfettered discretion to grant individualized exemptions from and waivers to the requirements of the Knox-Keene Act, including its "basic health care services" requirement.

119.    For example, the Knox-Keene Act states that "the director may, for good cause, by rule or order exempt a plan contract or any class of plan contracts from [the basic health care services] requirement." Cal. Health & Safety Code § 1367(i).

120.    The Knox-Keene Act further provides that the Director may "waive any requirement of any rule or form in situations where in the director's discretion that requirement is not necessary in the public interest ...." *Id.* § 1344(a).

121.    Similarly, the Director may "unconditionally" exempt from the Knox-Keene Act "any class of persons or plan contracts if the director finds the action to be in the public interest ...." *Id.* § 1343(b).

122.   Defendant Rouillard has delegated this statutory exemption authority to DMHC's Office of Plan Licensing and has authorized licensing staff to approve or deny exemptions on her behalf, with or without consulting with her.

123.   But there are no written rules, policies, or procedures governing the exercise of this individualized exemption authority.

124.   The Office of Plan Licensing is the division of DMHC that receives filings from licensed health plans and thus is the primary source of communication with the health plans.

125.   Licensing staff is responsible for reviewing the health plan's filings and ensuring that they comply with the Knox-Keene Act, including the "basic health care services" requirement.

126.   DMHC generally assigns one staff member within the Office of Plan Licensing to be responsible for communications with a specific health plan.

127.   Although the deputy director of the Office of Plan Licensing has the authority to approve or disapprove a plan filing, not every filing is provided to the deputy director for approval.

128.   Specifically, an amendment filed by a health plan does not need to be presented to the deputy director for approval and may be approved or not objected to by the individual licensing staff member assigned to that specific health plan.

129.   There is no deadline by which DMHC licensing staff must resolve an amendment filing.

130.   Accordingly, it can (and does) take months or years for licensing staff to issue a final decision as to whether an amendment filing is approved or denied.

131.   A change in a health plan's abortion coverage, and a request for an exemption from the abortion coverage requirement, would be submitted as an amendment to DMHC's Office of Plan Licensing.

132.   Numerous individuals within the Office of Plan Licensing thus may exercise the director's statutory individualized-exemption authority and decide

whether to grant or deny exemptions to the abortion coverage requirement set out in the August 22, 2014 letters.

133.   There are not, however, any written rules, policies, or procedures governing when a health plan may or may not be granted an exemption from the abortion coverage requirement.

### *The post hoc exemption*

134.   Since issuing the August 22, 2014 letters, the director's individualized exemption authority has been improperly exercised in a way that prefers some religious beliefs to others.

135.   In September and October 2014, religious entities and individuals affected by the new interpretation and application of the Knox-Keene Act filed administrative complaints with the U.S. Department of Health & Human Services, alleging that the actions of DMHC and Defendant Rouillard violated the federal Weldon Amendment.

136.   To better defend against these federal administrative complaints, DMHC decided that it would grant an exemption allowing a health plan to offer coverage to "religious employers," as defined by California law, so long as the relevant abortion language was consistent with the Weldon Amendment (i.e., still providing coverage for abortion in the cases of rape, incest, and to save the life of the mother).

137.   Officials within DMHC's Office of Plan Licensing had off-the-record communications with a few (but not all) of the health plans operating in California, informing them of DMHC's willingness to exempt plan filings with language that allowed "religious employers," as defined by California law, to restrict coverage for abortion to the cases of rape, incest, and to save the life of the mother.

138.   The only abortion language that DMHC officials suggested to the health plans as being acceptable continued to cover abortion in the cases of rape, incest, and to save the life of the mother.

139.   DMHC has not notified all health plans operating in California about the possibility of obtaining even this limited exemption.

140.   Nor has DMHC taken any steps to notify the general public or interested religious employers about the possibility of this limited exemption.

141.   One of the health plans that had off-the-record communications with DMHC's Office of Plan Licensing later sought an exemption for plan language that would be offered exclusively to "religious employers," as defined by California law, and restrict abortion coverage to the cases of rape, incest, and to save the life of the mother.

142.   DMHC eventually approved that language and granted an exemption to the abortion coverage requirement in October 2015—the same month the Churches filed the initial complaint in this case.

143.   By exercising the director's discretionary exemption authority in this way, DMHC and Defendant Rouillard have effectively permitted some (but not all) "religious employers" to obtain a health plan limiting or excluding abortion coverage consistent with their religious beliefs.

144.   Indeed, some "religious employers" have religious beliefs prohibiting elective abortions generally but make exceptions in the cases of rape and incest.

145.   As just one example, the Church of Jesus Christ of Latter-Day Saints teaches that "[e]lective abortion for personal or social convenience is contrary to the will and the commandments of God," but has nevertheless concluded that elective abortion may be justified "when pregnancy is the result of incest or rape."[1]

146.   Although the exempted plan language is available for purchase by "religious employers," as defined by California law, it does not meet the needs of the Churches and other religious employers that object to paying for or providing insurance coverage for elective abortions under any circumstance.

---

[1] The Church of Jesus Christ of Latter-Day Saints, Abortion, https://www.lds.org/topics/abortion?lang=eng (last visited Oct. 27, 2017).

*Refusing exemptions for plans that meet the Churches' religious beliefs*

147.   As non-profit, Christian churches that primarily employ and serve members of its own faith, the Churches qualify as "religious employers" under the narrow definition set forth in California Health & Safety Code § 1367.25(c).

148.   When Defendant Rouillard issued the August 22, 2014 letters, health plans were already offering DMHC-approved plan contracts that limited or excluded abortion coverage consistent with the Churches' religious beliefs.

149.   But Defendant Rouillard required the health plans to immediately provide coverage for all legal abortions in those plan contracts, even those that were offered exclusively to "religious employers" as defined by California law.

150.   Similarly, at the time the letters were issued, health plans had "open" filings with DMHC that, if approved, would have permitted only "religious employers" like the Churches to offer coverage consistent with their religious beliefs about abortion.

151.   Defendant Rouillard rejected those "open" filings and required the health plans to amend them so that they provided coverage for all legal abortions, including elective abortions.

152.   When asked, DMHC and Defendant Rouillard refused to change the interpretation and application of the Knox-Keene Act that resulted in the Churches being unable to obtain group coverage consistent with their religious beliefs.

153.   Indeed, on the same day Defendant Rouillard issued the August 22, 2014 letters, DMHC and Defendant Rouillard received a request to reconsider the new interpretation and application of the Knox-Keene Act articulated in those letters.

154.   Defendant Rouillard responded by stating that DMHC "will not reverse its position on the scope of required abortion coverage." Exhibit 6.

155.   A complaint made by a Commissioner for the U.S. Commission on Civil Rights was met with a similar response: Defendant Rouillard stated that DMHC

"carefully considered both state and federal law before reaching [the] position" set forth in the August 22, 2014 letters. Exhibit 7.

## FIRST CAUSE OF ACTION
### Violation of the Free Exercise Clause of the First Amendment to the United States Constitution

156.   The Churches reallege all matters set forth in paragraphs 1–155 and incorporate them herein.

157.   The Churches' sincerely held religious beliefs prohibit them from purchasing or offering health insurance coverage for elective abortion in their employee group health plans.

158.   The Churches also have a sincere religious belief to care for the physical, emotional, mental, and spiritual well-being of their employees, which they do, in part, by providing health insurance coverage as a benefit of employment.

159.   The Churches have a sincere religious objection to providing insurance coverage for elective abortion because they believe that abortion ends an innocent human life.

160.   When the Churches comply with their sincerely held religious beliefs on the sanctity of human life, they exercise religion within the meaning of the Free Exercise Clause.

161.   The new interpretation and application of the Knox-Keene Act imposes a substantial burden on the Churches' religious exercise and coerces them to change or violate their religious beliefs.

162.   The new interpretation and application of the Knox-Keene Act substantially burdens the Churches' religious exercise by forcing them to choose between following their religious beliefs and suffering debilitating penalties under federal law or violating their consciences in order to avoid those penalties.

163.   The new interpretation and application of the Knox-Keene Act exposes the Churches to substantial monetary penalties and/or financial burdens for their religious exercise.

164.   The new interpretation and application of the Knox-Keene Act exposes the Churches to substantial competitive disadvantages because it has created uncertainties about their health insurance benefits.

165.   The new interpretation and application of the Knox-Keene Act imposes a burden on the Churches' employee recruitment efforts by creating uncertainty as to whether or on what terms they will be able to offer health insurance in the future or will suffer penalties therefrom.

166.   The new interpretation and application of the Knox-Keene Act interferes with the internal affairs of the Churches.

167.   The Knox-Keene Act, as interpreted and applied by Defendant Rouillard, is neither neutral nor generally applicable.

168.   The Knox-Keene Act creates categorical and individualized exemptions to its requirements, including the "basic health care services" requirement on which the abortion coverage requirement is based.

169.   The Knox-Keene Act exempts entire categories of health plans from its requirements for secular reasons.

170.   The Knox-Keene Act gives Defendant Rouillard broad, unfettered discretion to granted individualized exemptions from and waivers to the Act's requirements, including its "basic health care services" requirement.

171.   There are no rules, policies, or procedures governing the exercise of this individualized exemption authority.

172.   Defendant Rouillard has allowed DMHC's Office of Plan Licensing to exercise her discretionary exemption authority in a way that prefers some religious beliefs to others.

173.   Defendant Rouillard has allowed a categorical exemption to be granted to religious employer plans that do not provide coverage for abortion except in the cases of rape, incest, and to save the life of the mother.

174.   Defendant Rouillard has interpreted and applied the Knox-Keene Act in such a way as to make it impossible for the Churches to comply with their religious beliefs, while at the same time exempting at least one health plan from the Knox-Keene Act's "basic health care services" requirement so that religious employers with preferred beliefs about abortion may be accommodated.

175.   Defendant Rouillard has interpreted and selectively applied the Knox-Keene Act and its "basic health care services" requirement against the Churches to suppress specific religious beliefs about when it is morally permissible to provide health insurance coverage for elective abortions.

176.   The new interpretation and application of the Knox-Keene Act, which forces churches and religious organizations to violate their religious beliefs, furthers no compelling governmental interest.

177.   The Knox-Keene Act already exempts entire categories of health plans from its "basic health care services" requirement.

178.   The Knox-Keene Act also exempts religious employers and organizations from being forced to provide health insurance coverage for contraceptives and infertility treatments in their group health plans.

179.   And Director Rouillard has exercised her discretionary exemption authority in such a way so as to categorically exempt religious employer plans that do not provide coverage for abortion except in the cases of rape, incest, and to save the life of the mother.

180.   Guaranteeing unfettered access to elective abortions through the employee health insurance plans of churches and religious organizations is not a significant problem in California.

181.   Compelling the Churches and other religious organizations to pay for abortions is hardly the least restrictive means of advancing any interest that the government might have.

182.   The new interpretation and application of the Knox-Keene Act constitutes government-imposed coercion on the Churches to change or violate their sincerely held religious beliefs.

183.   The new interpretation and application of the Knox-Keene Act chills the Churches' religious exercise.

184.   The new interpretation and selective application of the Knox-Keene Act and its "basic health care services" requirement violates the Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the Churches.

## SECOND CAUSE OF ACTION
**Violation of the Equal Protection Clause of the**
**Fourteenth Amendment to the United States Constitution**

185.   The Churches reallege all matters set forth in paragraphs 1–184 and incorporate them herein.

186.   The Fourteenth Amendment to the United States Constitution guarantees the Churches equal protection of the laws, which prohibits Defendant Rouillard from treating the Churches differently than similarly situated persons and businesses.

187.   The government may not treat some employers disparately as compared to similarly situated employers.

188.   The new interpretation and application of the Knox-Keene Act treats the Churches differently than similarly situated persons and businesses in that there are categorical and individualized exemptions to the Knox-Keene Act and its "basic health care services" requirement.

189.   The Knox-Keene Act gives Defendant Rouillard broad, unfettered discretion to granted individualized exemptions and waivers to the Act's requirements, including its "basic health care services" requirement.

190.   There are no rules, policies, or procedures governing the exercise of this individualized exemption authority.

191.   Defendant Rouillard has allowed DMHC's Office of Plan Licensing to exercise her discretionary exemption authority in a way that prefers some religious beliefs to others.

192.   Defendant Rouillard has interpreted and applied the Knox-Keene Act in such a way as to make it impossible for the Churches to comply with their religious beliefs, while at the same time exempting at least one health plan from the Knox-Keene Act's "basic health care services" requirement so that religious employers with preferred beliefs about abortion may be accommodated.

193.   Defendant Rouillard has interpreted and selectively applied the Knox-Keene Act and its "basic health care services" requirement against the Churches to target and suppress specific religious beliefs about when it is morally permissible to provide health insurance coverage for elective abortions.

194.   Defendant Rouillard lacks a legitimate or compelling state interest for requiring the employee health care plans of the Churches to cover elective abortions.

195.   Nor is Defendant Rouillard's disparate treatment of the Churches narrowly tailored because compelling coverage for all elective abortions in the health plans of the Churches—while at the same time exempting another plan from that requirement—is hardly the least restrictive means of advancing any interest that the government might have.

196.   Defendant Rouillard's interpretation and application of the Knox-Keene Act to the Churches does not satisfy rational basis review.

197.   Other religious employers that are similarly situated to the Churches are able to purchase coverage consistent with their religious beliefs because Defendant Rouillard has selectively exercised her exemption authority.

198.   There is no rational basis for accommodating the religious beliefs of some religious employers, but not the religious beliefs of the Churches.

199.   The new interpretation and selective application of the Knox-Keene Act and its "basic health care services" requirement violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as applied to the Churches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.   Enter a judgment declaring that Defendant Rouillard's interpretation and application of the Knox-Keene Act—specifically, California Health & Safety Code §§ 1345(b) & 1367(i)—requiring the Churches and other religious organizations to cover elective abortions in their employee health care plans, to be a violation of the First and Fourteenth Amendments to the United States Constitution.

b.   Enter a permanent injunction prohibiting Defendant Rouillard from enforcing the new interpretation of the Knox-Keene Act's "basic health care services" requirement (i.e., California Health & Safety Code §§ 1345(b) & 1367(i)) against the Churches and other religious organizations in a way that substantially burdens the religious belief of any person in violation of the United States Constitution, and prohibiting Defendant Rouillard from illegally discriminating against the Churches and other religious organizations not before the Court by preventing them from obtaining a group health plan that limits or excludes coverage for abortion consistent with their religious beliefs;

c.   Award the Churches court costs and reasonable attorney's fees; and

d.      Award such other and further relief as to which the Churches may be entitled.

Respectfully submitted this 23rd day of October 2017.

/s/ Jeremiah Galus
Erik Stanley (Arizona Bar No. 030961)*
Kevin Theriot (Arizona Bar No. 030446)*
Jeremiah Galus (Arizona Bar No. 030469)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
estanley@ADFlegal.org
ktheriot@ADFlegal.org
jgalus@ADFlegal.org

Casey Mattox (Virginia Bar No. 47148)*
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
cmattox@ADFlegal.org

Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678
(916) 960-2211
alex@medinamckelvey.com

*Admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFFS