| | |
|---|---|
| FOOTHILL CHURCH, CALVARY CHAPEL CHINO HILLS, and SHEPHERD OF THE HILLS CHURCH, | No. 2:15-cv-02165-KJM-EFB |
| Plaintiffs, | ORDER |
| v. | |
| MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care, | |
| Defendant. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

This action arises from letters the California Department of Managed Health Care ("DMHC") issued to seven private health insurers, which required them to remove any limitations on or exclusions of abortion services from the health care coverage they offer. Second Am. Compl. ("SAC"), Ex. 1, ECF No. 72-1. Plaintiffs Foothill Church, Calvary Chapel Chino Hills and Shepherd of the Hills Church ("plaintiffs"), three churches who offer their employees DMHC-regulated health coverage through these insurers, filed this action against defendant Michelle Rouillard ("defendant"), Director of the DMHC, alleging the letters violate the plaintiffs' constitutional rights under the First and Fourteenth Amendments. This matter is before the court on defendant's motion to dismiss the Second Amended Complaint. Mot., ECF No. 75. Plaintiffs oppose the motion. Opp'n, ECF No. 77. Defendant has replied. Reply, ECF No. 78.

The motion was submitted without oral argument and, as explained below, the court GRANTS the motion.

I. STATUTORY FRAMEWORK

In California, the DMHC and the California Department of Insurance ("CDI") oversee regulation of the health care industry. The DMHC regulates "health care service plans" under the Knox Keene Health Care Service Plan Act of 1975 ("Knox Keene Act"), Cal. Health & Safety Code §§ 1340 *et seq.* The Knox Keene Act defines "health care service plans" as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." Cal. Health & Safety Code § 1345(f)(1). Health maintenance organizations ("HMOs") and other structured managed care organizations ("MCOs") are "health care service plans" under this definition. *Rea v. Blue Shield of Cal.*, 226 Cal. App. 4th 1209, 1215 (2014).

The Knox Keene Act requires a person to secure a license from the Director of the DMHC before offering a health care service plan. Cal. Health & Safety Code § 1349. One requirement for licensure is that "a health care service plan contract [must] provide to subscribers and enrollees all the basic health care services" specified in the statute. *Id.* § 1367(i). Relevant to this action, the defendant has promulgated regulations defining the scope of this requirement to include "a variety of voluntary family planning services." Cal. Code Regs. tit. 28, § 1300.67(f)(2). The letters assert that, in conjunction with "the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion," the Knox Keene Act requires health care service plans to cover elective abortions. SAC, Ex. 1.

The Knox Keene Act provides for a number of categorical and individualized exemptions. For example, the Act offers religious employers exemptions from providing coverage for "FDA-approved contraceptive methods that are contrary to [their] religious tenets,"
/////

Cal. Health & Safety Code § 1367.25(c), or coverage for "forms of treatment of infertility in a manner inconsistent with [their] religious and ethical principles," *id.* § 1374.55(e).

II.   FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 2017, plaintiffs filed the operative Second Amended Complaint, ECF No. 72, which contains the following allegations largely paralleling the allegations of their original complaint and their First Amended Complaint ("FAC"). On August 22, 2014, the defendant Director of the DMHC sent letters to seven private health insurers stating the DMHC had reviewed their contracts and the relevant legal authorities and "concluded that it erroneously approved or did not object to" language in some previous evidence of coverage (EOC) filings that may discriminate against women by limiting or excluding coverage for terminations of pregnancies. SAC ¶¶ 4, 32 & Ex. 1.

Plaintiffs are three non-profit Christian churches located in Southern California. *Id.* ¶¶ 13–15. Each plaintiff has more than fifty full-time employees and must, therefore, provide health coverage for its employees under the federal Patient Protection and Affordable Care Act of 2010. *Id.* ¶¶ 54–55. The Churches offer health insurance plans to their employees through various insurers, each of which received a letter from the DMHC as described above. *Id.* ¶ 32 & Ex. 1. Plaintiffs all hold what they describe as "historic and orthodox" Christian teachings on the sanctity of human life. *Id.* ¶ 18. They "believe and teach that abortion destroys an innocent human life" and that "participation in, facilitation of, or payment for an abortion that violates their religious beliefs is itself sin." *Id.* ¶¶ 20–21. In furtherance of these beliefs and principles, plaintiffs consulted with their insurance brokers and/or insurers in an effort to provide employee group health plans that do not pay for abortions. *Id.* ¶¶ 28–30. However, plaintiffs' insurance brokers and/or insurers have informed them that the DMHC's letters prevent their group health insurance plans from excluding or limiting coverage for abortions. *Id.* ¶ 31.

This action followed. The original complaint alleged that the DMHC's letters violated plaintiffs' rights under the Free Exercise, Establishment, Free Speech and Equal Protection clauses of the U.S. Constitution. *See* Compl. ¶¶ 104, 114, 119, 126, ECF No. 1. The court previously dismissed the Establishment and Free Speech claims with prejudice, but allowed

3

the plaintiffs to file an amended complaint to cure defects in their Free Exercise and Equal Protection claims. First Order at 22, ECF No. 39. The plaintiffs then filed their First Amended Complaint, which the court again dismissed in resolving defendant's motion to dismiss, once again granting plaintiffs leave to amend their Free Exercise and Equal Protection claims. *See* FAC; Second Order, ECF No. 68. In support of their Free Exercise claim, plaintiffs now allege "[t]he Knox–Keene Act, as interpreted and applied by Defendant, is neither neutral nor generally applicable." SAC ¶ 167. Specifically, plaintiffs allege the Director has used her "broad, unfettered discretion" to provide exemptions "in a way that prefers some religious beliefs to others." *Id.* ¶¶ 170–72. Thus, they allege, "Defendant Rouillard has interpreted and selectively applied the Knox–Keene Act and its 'basic health care services' requirement against the Churches to suppress specific religious beliefs about when it is morally permissible to provide health insurance coverage for elective abortions." *Id.* ¶ 175. Plaintiff's Equal Protection claim is similarly based on alleged disparate treatment of different religious employers. *See id.* ¶¶ 191–93.

III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). When a party moves to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Boardman v. Shulman*, No. 2:12-cv-00639-MCE-GGH, 2012 WL 6088309, at *2 (E.D. Cal. Dec. 6, 2012), *aff'd sub nom. Boardman v. Comm'r*, 597 F. App'x 413 (9th Cir. 2015). If a plaintiff lacks standing, the court lacks subject matter jurisdiction under Article III of the U.S. Constitution. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001), or material attached to or incorporated by reference into the complaint, *see id.* A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

IV.     ANALYSIS

     A.     Standing

In its previous two orders granting dismissal, the court found plaintiffs had sufficiently alleged standing to challenge defendant's letters. First Order at 12; Second Order at

5–6. Defendant again moves to dismiss on the basis that plaintiffs lack standing, Mot. at 6–8[1], and its arguments with respect to the Second Amended Complaint are the same as before. Defendant has not demonstrated the court's prior rulings were incorrect, and the pleadings have not changed in a manner that alters the standing analysis. The court once again finds plaintiffs have sufficiently pled standing to challenge the letters.

B. <u>Free Exercise of Religion</u>

The Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," U.S. Const. amend. I. However, the right to freely exercise one's religion "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., *concurring* in the judgment)).[2] A valid and neutral law of general applicability must be upheld if it is rationally related to a legitimate governmental purpose. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76, 1084 (9th Cir. 2015). In contrast, laws that are not neutral or are not generally applicable are subject to strict scrutiny. *Id.* at 1076. Under strict scrutiny, laws "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993).

"The tests for '[n]eutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied.'" *Stormans*, 794 F.3d at 1076 (alterations in original) (quoting *Lukumi*, 508 U.S. at 531).

---

[1] All page references in briefs are to the page number assigned by the filing party, rather than the number assigned by the court's ECF system.

[2] Although *Smith* was superseded by the Religious Freedom Restoration Act of 1993 ("RFRA"), the Supreme Court has clarified that RFRA applies only to the federal government and not to the states. *See Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 n.4 (9th Cir. 2015).

6

### 1. Neutrality

A law is not neutral if its object is to infringe upon or restrict practices because of their religious motivation. *Stormans*, 794 F.3d at 1076 (citing *Lukumi*, 508 U.S. at 533). In determining whether a law is neutral, courts consider both the text and the operation of the law. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533. The letters at issue here and the underlying laws they purportedly enforce do not refer to any religious practice, conduct, belief or motivation on their face; they are facially neutral. *See* SAC, Ex. 1 (citing authority relied on as Cal. Const. art. 1, § 1, Cal. Health & Safety Code § 1340 *et seq.*, Cal. Health & Safety Code § 123460 *et seq.*, and the regulations implementing the cited statutes).

Even if a law or enforcement action based on the law is facially neutral, it is not in fact neutral if it operates as a "covert suppression of particular religious beliefs." *Lukumi,* 508 U.S. at 534 (quoting *Bowen v. Roy*, 476 U.S. 693, 703 (1986)). In determining whether a law covertly suppresses beliefs, a court may consider "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history." *Id.* at 543.

In granting defendant's prior motions to dismiss, the court found that plaintiffs' original complaint and First Amended Complaint failed to allege sufficient facts to state a claim that the letters were not neutral in operation. First Order at 16; Second Order at 7–8. In addition to the arguments plaintiffs made in opposition to defendant's first and second motions to dismiss, plaintiffs now argue defendant knew that only religious organizations would be affected, not just that she knew her actions would generally affect religious entities; their argument tracks their amended pleading. Opp'n at 14 (citing *inter alia* SAC § 91). Plaintiffs also attach new documents to the current complaint, which they allege provide essential background to the issuance of the letters, including details about communications and at least one meeting between and among defendant, other DMHC staff and Planned Parenthood. *See* SAC ¶¶ 71, 75, 77, 78, 81 & Exs. 2–5. These new allegations and evidence, however, do not alter the court's analysis or conclusion as explained below.

First, for purposes of this motion, accepting as true plaintiffs' allegation that defendant knew only religious organizations would be affected does not, without more, make it plausible that her object was to target religious employers. Rather, plaintiffs must demonstrate more than "awareness of consequences." *Lukumi*, 508 U.S. at 540. Plaintiffs must plausibly plead that defendant acted "because of, not merely in spite of" the impact of her actions on religious entities, *id.*, and they have not done so here, *see* SAC ¶¶ 89-94. Plaintiffs' allegations attributing motivations to "abortion advocates" who sought and obtained meetings with defendant or her staff, *id.* ¶¶ 65, 70, 73-75, does not alter this conclusion. Second, the new exhibits provided by plaintiffs provide details in support of the same allegations they pled in their previous two complaints: that defendant issued the letters after abortion rights groups communicated with her or her staff, having learned of the actions of two Catholic universities, and that defendant knew or should have known her letters would only affect health plans purchased by religious organizations. *See* SAC ¶¶ 89-94; *cf.* Compl. ¶¶ 40-48 and FAC ¶¶ 44-56. The exhibits do not, as plaintiffs contend, cure the deficiencies in their pleadings as addressed by the court's prior orders dismissing plaintiffs' earlier complaints.

Plaintiffs have not alleged sufficient facts to call the letters' facial neutrality into question.

2. General Applicability

A law or state action based on a law is not generally applicable if it "impose[s] burdens only on conduct motivated by religious belief" in a "selective manner." *Lukumi*, 508 U.S. at 543. Plaintiffs argue the defendant's letters are not generally applicable because defendant has "unbridled discretion" to exempt plans from the abortion coverage requirement and in fact has exercised her discretionary exemption authority in a discriminatory way. Opp'n at 15–16 (referencing SAC ¶¶ 117-46). Plaintiffs contend their Second Amended Complaint states an "as-applied" challenge to the Knox-Keene Act, distinguishing this complaint from the two prior attempts the court previously dismissed. *See id.* at 16 n.5. However, as defendant points out in the reply, "statutory exclusions undermine the general applicability of a statute only in a facial challenge to the statute," Reply at 5 (citing *Lukumi*, 508 U.S. at 543–45; *Stormans*, 586 F.3d at

8

1079–81), and plaintiffs have not raised a facial challenge to the Knox Keene Act here.[3] As defendant argues, plaintiffs still have "not allege[d] that any Plans . . . previously offered products that excluded or limited abortion coverage for religious reasons." Mot. at 15.

Accordingly, plaintiffs have not alleged sufficient facts to call the letters' general applicability into question.

### 3. Individualized Assessment Exception

Finally, plaintiffs allege that the law bestowing discretion on defendant on to exempt plans from the abortion coverage requirement triggers strict scrutiny because "the law on which that coverage requirement is based involves 'a system of individual exemptions.'" Opp'n at 9 (quoting *Smith*, 494 U.S. at 884). An exception to the general rule that neutral and generally applicable laws are subject to rational basis review does provide that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Am. Friends Serv. Comm. Corp. v. Thornburgh*, 951 F.2d 957, 961 (9th Cir. 1991) (*Thornburgh*) (quoting *Smith*, 494 U.S. at 884). For example, the Supreme Court in *Lukumi* applied strict scrutiny because the ordinance at issue required the city to determine when ritual slaughter of an animal was necessary, and the city's "application of the ordinance's test of necessity devalue[d] religious reasons for killing by judging them to be of lesser import than nonreligious reasons." 508 U.S. at 537. Plaintiffs argue the exception articulated in *Thornburgh* applies here, because provisions of the Knox Keene Act give defendant
/////

---

[3] Challenging purported "unbridled discretion" granted by a statute or regulation is most appropriate in the context of a facial challenge. *Cf. Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (finding that outside of licensing context, a facial challenge must "fall[] within [a] narrow class of . . . allegedly unconstrained grants of regulatory authority"); *see also Citizens for Free Speech, LLC v. Cty. of Alameda*, 114 F. Supp. 3d 952, 958 (N.D. Cal. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990)) ("Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad."). Akin to challenging a statute as overbroad on its face, an "unbridled discretion" challenge examines whether a statute provides articulable standards that place limits on an administrator's exercise of discretion. *See Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992) (finding ordinance facially unconstitutional where it vested "unbridled discretion" in county administrator).

9

broad discretion to grant exemptions, and thereby "creates a system of 'individualized assessments.'" Opp'n at 10 (citing *Stormans*, 794 F.3d at 1081–82).

Plaintiffs argue the allegations of the Second Amended Complaint differ from the previous complaints because they now "establish that the Director and DMHC were aware of previously-approved and 'open' plan filings that provided coverage consistent with the Churches' religious beliefs yet required the health plans to withdraw those filings or amend them so that they covered all legal abortions." Opp'n at 11 (citing SAC ¶¶ 45–47, 147–55). Defendant argues correctly the "allegations do not support a reasonable inference that the Director deliberately sought to give preference to one set of religious beliefs regarding abortion over others" because "reasonable alternate non-discriminatory explanations exist for the Director's actions." Reply at 8; *see In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Plaintiffs still have not sufficiently alleged that any plan that would be acceptable to them has been submitted to defendant for approval, nor that she has rejected any such plan. *Cf*. Second Order at 9-10.

C. <u>Equal Protection</u>

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the law," U.S. Const. amend. XIV, which essentially "direct[s] that all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiffs' Second Amended Complaint alleges defendant has not applied the Knox Keene Act equally to all similarly situated employers, who are the purchasers of insurance coverage as relevant here. SAC ¶¶ 185-99; Opp'n at 20. As defendant contends, the Second Amended Complaint "alleges no new facts that could create any reasonable inference the Director is treating Plaintiffs 'differently than similarly situated persons and businesses.'" Mot. at 18. As explained in the court's previous two orders, "the challenged letters apply to Plans, not purchasers, and do not make any classification with respect to purchasers." Second Order at 10.

Moreover, a viable Equal Protection claim must "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a

10

protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239-40 (1976)). Determining discriminatory intent "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Still, "[d]iscriminatory purpose . . . implies more than intent as violation or intent as awareness of consequences . . . . It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation and quotations omitted).

Here, plaintiffs fail to plead how defendant acted "at least in part because of, not merely in spite of" an awareness that her decision may have an adverse effect on plaintiffs' religious beliefs. *Id.* Plaintiffs claim they were subject to disparate treatment when defendant refused to approve plans consistent with their beliefs, "but later granted an exemption for religious beliefs that differ from those of [plaintiffs]." Opp'n at 20 (citing SAC ¶¶ 134-55). But plaintiffs do not plead how, or in what manner, any exercise of exemption authority by defendant amounts to discriminatory intent. As defendant notes, "An equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than the plaintiff." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citing *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986)).

For these reasons plaintiffs still have not adequately pleaded a claim under the Equal Protection Clause.

V. <u>LEAVE TO AMEND</u>

Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to amend pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.

11

1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several limitations." *Ascon Props.*, 866 F.2d at 1160. "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (quoting *Leighton*, 833 F.2d at 186 n.3).

Plaintiffs have had three opportunities to state a claim upon which relief may be granted, yet remain unable to sufficiently plead their Free Exercise and Equal Protection claims. Allowing plaintiffs another chance to plead these claims would be futile, and the court therefore DENIES plaintiffs leave to amend. *Williams v. California*, 764 F.3d 1002, 1027 (9th Cir. 2014) (affirming dismissal without leave to amend where plaintiffs failed in two chances to sufficiently plead their claims, including an Establishment Clause claim).

VI. CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion to dismiss for failure to state a claim. The court DISMISSES plaintiffs' claims without leave to amend. The Clerk of Court is directed to enter judgment in favor of defendant and CLOSE this case.

This order resolves ECF No. 75.

IT IS SO ORDERED.

DATED: March 6, 2019.

UNITED STATES DISTRICT JUDGE

12