1   Rob Bonta, State Bar No. 202668
    Attorney General of California
2   Karli Eisenberg, State Bar No. 281923
    Supervising Deputy Attorney General
3   Melissa Riess, State Bar No. 295959
    Hayley Penan, State Bar No. 313693
4   Deputy Attorneys General
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone:  (916) 210-7785
      Fax:  (916) 324-5567
7     E-mail:  Melissa.Riess@doj.ca.gov
    *Attorneys for Defendant Mary Watanabe, in her*
8   *official capacity as Director of the Department of*
    *Managed Health Care*

9                    IN THE UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14   **FOOTHILL CHURCH, CALVARY**           2:15-CV-02165-KJM-EFB
     **CHAPEL OF CHINO HILLS and**
15   **SHEPHERD OF THE HILLS CHURCH,**

16                          Plaintiffs,    **DEFENDANT'S NOTICE OF MOTION**
                                           **AND MOTION FOR SUMMARY**
17        v.                               **JUDGMENT, OR IN THE**
                                           **ALTERNATIVE, FOR SUMMARY**
18                                         **ADJUDICATION OF CLAIMS**
     **MARY WATANABE, in her official**
19   **capacity as Director of the California**   Date:          June 17, 2022
     **Department of Managed Health Care,**        Dept:          Courtroom 3
20                                                 Judge:         Chief Judge
                            Defendant.                            Kimberly J. Mueller
21                                                 Action Filed:  Oct. 23, 2017

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 17, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard before Chief Judge Kimberly J. Mueller in the United States District Court for the Eastern District of California, Courtroom Three, located at 501 I Street, Sacramento, California, Defendant Mary Watanabe, in her official capacity as Director of the California Department of Managed Health Care, will and hereby does move the court for summary judgment, or in the alternative for summary adjudication of claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Pursuant to the Court's Standing Order, counsel for the parties met and conferred on March 15, 2022.  Defendant's counsel advised counsel for Plaintiffs of the intended bases for this motion, and the parties agreed that given the nature of the parties' claims and defenses, extensive substantive discussion was unlikely to narrow the issues.  Thus, the parties exhausted their meet and confer efforts.

This motion is made on the grounds that the Plaintiffs have failed to establish that the Defendant, Director Watanabe, has prevented their free exercise of religion under the First Amendment, or that the Defendant has violated Plaintiffs' Equal Protection under the Fourteenth Amendment.  The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Melissa Riess and accompanying exhibits, the Declaration of Jenny Phillips, the pleadings and papers filed in this matter, and the argument of counsel at the time of the hearing.

1 | Dated:  April 1, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
KARLI EISENBERG
Supervising Deputy Attorney General

*/s/ Melissa Riess_____*
MELISSA RIESS
HAYLEY PENAN
Deputy Attorneys General
*Attorneys for Defendant Mary Watanabe, in her official capacity as Director of the Department of Managed Health Care*

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  KARLI EISENBERG, State Bar No. 281923
   Supervising Deputy Attorney General
3  MELISSA RIESS, State Bar No. 295959
   HAYLEY PENAN, State Bar No. 313693
4  Deputy Attorneys General
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7785
     Fax: (916) 324-5567
7    E-mail: Melissa.Riess@doj.ca.gov
   *Attorneys for Defendant Mary Watanabe, in her*
8  *official capacity as Director of the Department of*
   *Managed Health Care*

9
                 IN THE UNITED STATES DISTRICT COURT
10
                FOR THE EASTERN DISTRICT OF CALIFORNIA
11

12

13

14  **FOOTHILL CHURCH, CALVARY**          2:15-CV-02165-KJM-EFB
    **CHAPEL OF CHINO HILLS and**
15  **SHEPHERD OF THE HILLS CHURCH,**

16                            Plaintiffs,   **DEFENDANT'S MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN**
17        v.                                **SUPPORT OF DEFENDANT'S MOTION**
                                            **FOR SUMMARY JUDGMENT, OR IN**
18                                          **THE ALTERNATIVE, FOR SUMMARY**
    **MARY WATANABE, in her official**      **ADJUDICATION OF CLAIMS**
19  **capacity as Director of the California**
    **Department of Managed Health Care,**  Date:          June 17, 2022
20                                          Dept:          Courtroom 3
                             Defendant.     Judge:         Chief Judge
21                                                         Kimberly J. Mueller
                                            Action Filed:  Oct. 23, 2017
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW ................................................................................. 2

LEGAL BACKGROUND ................................................................................... 2

FACTUAL BACKGROUND ............................................................................. 4

    I.    As a Result of Media Inquiries Regarding Employers Restricting Access to Abortion Coverage in Employee Health Plans, DMHC Conducted a Legal Analysis to Determine What is Required under California Law ........................... 4

    II.    DMHC Issued the August 22, 2014 Letters to Seven Health Plans, Reflecting What is Required by Law ..................................................................... 5

    III.    DMHC Granted a Request for a Religious Exemption ........................................... 6

    IV.    No Plan Has Requested an Exemption That Would Satisfy Plaintiffs' Religious Beliefs ................................................................................................ 7

ARGUMENT ...................................................................................................... 7

    I.    The Director's Actions Do Not Violate The Free Exercise Clause ....................... 7

        A.  DMHC's Director Has a Compelling Interest in Only Considering Exemption Requests from Entities that She Regulates .................................... 8

            1.    Allowing Exemption Requests from Unregulated Entities is Unworkable ................................................................................. 9

            2.    DMHC's Director Has a Compelling Government Interest in Preventing Third Party Harms to Enrollees ............................ 11

            3.    DMHC's Director Has a Compelling Government Interest in Not Expanding DMHC's Statutory Authority ........................ 13

        B.  Limiting Exemption Requests to Licensed Health Plans Is Narrowly Tailored to, and Is the Least Restrictive Means of, Achieving the Director's Compelling Government Interests ................................................ 15

    II.    The Director's Actions Do Not Violate the Equal Protection Clause.................. 16

CONCLUSION ................................................................................................... 20

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Alvarez v. IBP, Inc.*
339 F.3d 894 (9th Cir. 2003).................................................................. 15

*Burwell v. Hobby Lobby Stores, Inc.*
573 U.S. 682 (2014)................................................................. 9, 12, 15, 16

*Child's Healthcare Is a Legal Duty, Inc. v. Min De Parle*
212 F.3d 1084 (8th Cir. 2000)................................................................. 9

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*
508 U.S. 520 (1993)................................................................. 8, 15

*City of Bangor v. Citizens Commc'ns Co.*
532 F.3d 70 (1st Cir. 2008)................................................................. 15

*City of Cleburne v. Cleburne Living Ctr.*
473 U.S. 432 (1985)................................................................. 17, 19

*Dr. A v. Hochul*
142 S. Ct. 552 (2021)................................................................. 9

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*
494 U.S. 872 (1990)................................................................. 7

*Estate of Thornton v. Caldor Inc.*
472 U.S. 703 (1985)................................................................. 12

*Fisher v. Univ. of Tex.*
570 U.S. 297 (2013)................................................................. 9

*Fulton v. City of Phila.*
141 S. Ct. 1868 (2021)................................................................. 8

*Gallinger v. Becerra*
898 F.3d 1012 (9th Cir. 2018)................................................................. 17, 19

*Haines v. N.H. Dep't of Health & Hum. Servs.*
No. 08-CV-505-SM, 2009 WL 1307203 (D.N.H. Apr. 28, 2009)................ 10

*Hernandez v. Comm'r*
490 U.S. 680 (1989)................................................................. 11

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Kaemmerling v. Lappin*
 553 F.3d 669 (D.C. Cir. 2008) ............................................................. 16

*Lyng v. Nw. Indian Cemetery Protective Ass'n*
 485 U.S. 439 (1988)............................................................................ 10

*Matsushita Elec. Indus. v. Zenith Radio Corp.*
 475 U.S. 574 (1986) .............................................................................. 2

*McCullen v. Coakley*
 573 U.S. 464 (2014)............................................................................ 15

*Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard*
 38 Cal. App. 5th 421 (2019)....................................................... 3, 6, 20

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*
 210 F.3d 1099 (9th Cir. 2000)............................................................... 2

*Nordlinger v. Hahn*
 505 U.S. 1 (1992)............................................................................... 17

*People ex rel. Dep't of Alcoholic Beverage Control v. Miller Brewing Co.*
 104 Cal. App. 4th 1189 (2002)............................................................ 13

*Priests for Life v. U.S. Dep't of Health & Hum. Servs.*
 808 F.3d 1 (D.C. Cir. 2015) ................................................................ 11

*Progressive Democrats For Social Justice, et al., v. Rob Bonta*
 No. 21-CV-03875-HSG, 2022 WL 612806 (N.D. Cal. Mar. 1, 2022) .................. 18

*Rea v. Blue Shield of Cal.*
 226 Cal. App. 4th 1209 (2014)............................................................ 14

*Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*
 867 F.3d 338 (3rd Cir. 2017) .............................................................. 10

*Religious Sisters of Mercy v. Azar*
 513 F. Supp. 3d 1113 (D.N.D. 2021) ..................................................... 9

*Robinson v. Child.'s Hosp. of Bos.,*
 No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016)........................ 10

*Sharon S. v. Super. Ct.*
 31 Cal. 4th 417 (2003) ....................................................................... 15

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Sherbert v. Verner*
374 U.S. 398 (1968) ............................................................................................ 16

*Silvers v. Sony Pictures Entm't, Inc.*
402 F.3d 881 (9th Cir. 2005) ............................................................................. 14

*Skyline Wesleyan Church v. Cal. Dep't Managed Health Care*
968 F.3d 738 (9th Cir. 2020) ................................................................... 4, 13, 19

*States v. Christie*
825 F.3d 1048 (9th Cir. 2016) ........................................................................... 11

*Tex. Monthly, Inc. v. Bullock*
489 U.S. 1 (1989) ............................................................................................... 12

*Tex. v. U.S.*
809 F.3d 134 (5th Cir. 2015) ............................................................................. 13

*Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*
450 U.S. 707 (1981) ........................................................................................... 15

*Thornton v. City of St. Helens*
425 F.3d 1158 (9th Cir. 2005) ........................................................................... 18

*United States v. Lee*
455 U.S. 252 (1982) ........................................................................................... 12

*We The Patriots USA, Inc. v. Hochul*
17 F.4th 266 (2d Cir. 2021) ................................................................................. 9

*Williams-Yulee v. Fla. Bar*
575 U.S. 433 (2015) ......................................................................................... 9, 10

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ............................................................ 7

United States Constitution, Fourteenth Amendment .............................................. 17

**STATUTES**

42 United States Code
§ 201 et seq. ..................................................................................................... 2, 3

Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, or in the
Alternative, for Summary Adjudication of Claims (2:15-CV-02165-KJM-EFB)

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

California Health and Safety Code
  § 1340 ................................................................................................................ 2

4

  §§ 1340-1399.874 ......................................................................................... 13

5

  § 1341 .............................................................................................................. 2
  § 1341(a) ................................................................................................... 3, 11

6

  § 1343 ............................................................................................... 4, 13, 14
  § 1343(a) ........................................................................................................ 13

7

  § 1344 ....................................................................................................... 4, 13
  § 1345 ..................................................................................................... 13, 14

8

  § 1345(b) ....................................................................................................... 13

9

  § 1345(b)(1) ..................................................................................................... 3
  § 1345(b)(5) ..................................................................................................... 3

10

  § 1345(c) ................................................................................................... 3, 14
  § 1345(f)(1) ...................................................................................................... 2

11

  § 1345(j) ......................................................................................................... 14

12

  § 1345(p) .................................................................................................. 3, 14
  § 1351(f) ........................................................................................................... 3

13

  § 1351(g) ......................................................................................................... 3
  § 1352.1(a) ....................................................................................................... 3

14

  § 1367 ............................................................................................................. 13
  § 1367(i) ............................................................................................... 3, 4, 20

15

  §§ 123460-123468 ......................................................................................... 6

16

COURT RULES

17

Federal Rules of Civil Procedure

18

  Rule 56 ............................................................................................................ 2

19

OTHER AUTHORITIES

20

Code of Federal Regulations, Title 45

21

  § 144.103 ......................................................................................................... 2

22

California Code of Regulations, Title 28
  § 1300.67(a) ..................................................................................................... 3

23

  § 1300.67(f) ...................................................................................................... 3

24

David Masci, *Where major religious groups stand on abortion*, PEW RESEARCH
  (June 21, 2016), https://www.pewresearch.org/fact-tank/2016/06/21/where-

25

  major-religious-groups-stand-on-abortion/ ............................................. 9

26

Deb Gordon, *Health Insurance Confusion Continues To Plague Americans, New
  Data Show*, FORBES (Feb. 8, 2021),

27

  https://www.forbes.com/sites/debgordon/2021/02/08/health-insurance-

28

  confusion-continues-to-plague-americans-new-data-show/?sh=4af21c3f4667 ................... 12

### TABLE OF AUTHORITIES
#### (continued)

**Page**

Larry Gordon, *Santa Clara University Drops Insurance for Elective Abortions*,
L.A. TIMES (Oct. 10, 2013), http://articles.latimes.com/2013/oct/10/local/la-
me-ln-abortion-university-20131010 ........................................................................ 5

Margot Sanger-Katz, *It's Not Just You: Picking a Health Insurance Plan Is Really
Hard*, N.Y. TIMES (Dec. 11, 2020),
https://www.nytimes.com/2020/12/11/upshot/choosing-health-insurance-is-
hard.html ................................................................................................................. 12

Tracy Seipel, *Santa Clara University President Triggers Abortion Uproar*,
MERCURY NEWS.COM (Oct. 9, 2013),
https://www.mercurynews.com/2013/10/09/santa-clara-university-president-
triggers-abortion-uproar ........................................................................................... 5

**INTRODUCTION**

The Department of Managed Health Care (DMHC) licenses and regulates certain health care service plans (health plans or Plans) and their products.  DMHC does not regulate employers and other subscribers of health plan products, including churches such as the Plaintiffs in this case.  When DMHC learned that it had erroneously approved plan products that violated California law, it notified the seven health plans offering those unlawful products by letter on August 22, 2014.  These letters stated that, under California law, all plans must provide coverage for lawful abortions.

Plaintiffs Foothill Church, Calvary Chapel of Chino Hills, and Shepherd of the Hills Church (Plaintiffs) challenge the DMHC Director's issuance of the letters, but not the law underlying the letters.  Plaintiffs also challenge the Director's subsequent grant of a legally permissible exemption to a health plan that sought an exemption.  This exemption—for a product offered by a DMHC-regulated Plan ("Anthem Blue Cross" or "Anthem")—accommodates religious opposition to abortion and is consistent with federal law.  Specifically, the exemption allows Anthem to offer coverage to qualifying "religious employers" that excludes abortion coverage except in the cases of rape, incest, and when the pregnant person's life is in danger.

Plaintiffs wish to provide their employees with health insurance that provides even more limited abortion coverage; namely, a product that would exclude abortion coverage except to save the health or life of the pregnant person.  To date, no Plan has requested DMHC's approval to make such a product available.  The Director cannot force a health plan to provide such a product for Plaintiffs; she can merely respond to a Plan's request for an exemption from the abortion coverage requirements of the Knox-Keene Act (Knox-Keene or the Act) for a plan product for religious employers, as she did in the case of Anthem.  And DMHC does not review exemption requests from non-regulated entities, so any alleged "refusal" of Plaintiffs' exemption request would be on the basis that DMHC does not consider these types of requests, not on the merits of the request.

Plaintiffs' Free Exercise Claim fails because the Director's actions in not expanding the Plan exemption process to Plaintiffs satisfy strict scrutiny.  The Director has a compelling government interest in not extending the Knox-Keene exemption process to entities like Plaintiffs that DMHC does not regulate.  Any other interpretation would be unworkable, forcing DMHC to review

1

1   exemption requests regarding myriad objections from any of the 26 million enrollees in DMHC-

2   regulated Plans. This would lead to third-party harms by creating a patchwork of coverage for these

3   enrollees, and force the Director to expand DMHC's jurisdiction beyond that delegated to it by the

4   Legislature.  Limiting exemption requests to licensed health plans is narrowly tailored to, and is the

5   least restrictive means of, achieving these compelling government interests.

6       Plaintiffs' Equal Protection claim also fails.  Plaintiffs have failed to introduce any evidence

7   that the DMHC Director treated them differently from similarly situated groups on the basis of

8   their religious beliefs.  As a result, the Court should grant the Department's motion for summary

9   judgment and dismiss Plaintiffs' Equal Protection claim.

10                          **STANDARD OF REVIEW**

11      Summary judgment is appropriate when there is no genuine issue of material fact and the

12  moving party is entitled to judgment as a matter of law.  *Matsushita Elec. Indus. v. Zenith Radio*

13  *Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56).  The party moving for summary

14  judgment meets its initial burden by showing "that the nonmoving party does not have enough

15  evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire*

16  *& Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving

17  party discharges this burden, "the nonmoving party must produce evidence to support its claim or

18  defense."  *Id.* at 1103.  "If the nonmoving party fails to produce enough evidence to create a

19  genuine issue of material fact," the moving party prevails.  *Id.*

20                          **LEGAL BACKGROUND**

21      DMHC regulates "health care service plans" under the Knox-Keene Act.[1]  §§ 1340, 1341.

22  A health care service plan is a company offering health coverage products, which are specific

23  packages of benefits and services that a Plan offers to subscribers.[2]  DMHC regulates 94 full-

---

[1] Unless otherwise noted, all statutory references are to the California Health & Safety Code.

[2] The terms used by the Knox-Keene Act are different from those set out by federal law. The term "Plan" is defined in the Knox-Keene Act as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost of these services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." § 1345(f)(1).  Under federal regulations, the entity that offers the coverage is called a "health insurance issuer."  45 C.F.R. § 144.103; *see also* 42 U.S.C.

2

service health plans, serving 26 million enrollees.  Defendant's Statement of Undisputed Material Facts (SUF) 1.

To obtain a license from DMHC to operate in the state, a Plan must submit documentation identifying what coverage it will offer, the materials it will issue to subscribers or enrollees, and the form of the contract it will issue to Plan subscribers.  § 1351(f), (g); *see also* Declaration of Melissa Riess (Riess Decl.), Exhibit A (Deposition of Nancy Wong (Wong Depo.)) at 19:24-21:17. If a Plan wishes to amend coverage or documentation for one of its products, it must submit amendments or modifications in writing to DMHC for review.  § 1352.1(a); *see also* Riess Decl., Ex. A (Wong Depo.) at 28:13-34:24.  Unless DMHC objects by written notice within 30 days to the amendment on the basis that it is untrue, misleading, deceptive, or otherwise not in compliance with the Knox-Keene Act, the Plan may use the amended language.  *Id.*

DMHC is charged with ensuring that Plans "provide enrollees with access to quality health care services and protect and promote the interests of enrollees." § 1341(a).  The Act requires that Plans "provide to subscribers and enrollees all of the basic health care services," which includes "Physician services" and "Preventive health services."  § 1367(i); § 1345(b)(1), (5).  "Physician services" are broadly defined to include services provided by licensed physicians, and "preventive health services" to include "a variety of voluntary family planning services."  Cal. Code Regs. tit. 28, § 1300.67(a), (f).

The California Court of Appeal concluded that, as stated in the August 22, 2014 letters, the Knox-Keene Act requires Plan products to include coverage of lawful abortions.  *Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard,* 38 Cal. App. 5th 421, 437 (2019), *review denied* (Nov. 20, 2019) (holding that "abortion services are unambiguously included in the statutory categories of 'basic health care services' set forth in the statute" and rejecting the argument "that

§ 201 et seq.  What is referred to here and under state law as a "product"—the specific package of benefits and services covered under a contract with a purchaser—is called a "plan" under these federal regulations.  *See id*.  The term "enrollee" as used in the Knox-Keene Act refers to "a person who is enrolled in a plan and who is a recipient of services from the plan."  § 1345(c). The term "subscriber" as used in the Act refers to "the person who is responsible for payment to a plan or whose employment or other status, except for family dependency, is the basis for eligibility for membership in the plan."  §1345(p).

voluntary abortions are necessarily inconsistent with regulatory language that limits the scope of 'basic health care services' to 'medically necessary' services"); *Skyline Wesleyan Church v. Cal. Dep't Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020) ("Because the Court of Appeal's decision in *Missionary Guadalupanas* represents 'the ruling of the highest state court issued to date,' and we have not seen any 'persuasive data' that the California Supreme Court would reach different conclusions, we are 'bound by' that decision to the extent its interpretation of California law is relevant.") (citations omitted).

Plans may seek exemptions from the Knox-Keene requirement to provide all "basic health care services." § 1367(i). The Act vests the DMHC Director with discretion to grant such exemptions, "for good cause, by rule or order," to "a plan contract or class of plan contracts."[3] *Id.* To obtain an exemption from the requirements of the Knox-Keene Act, it is the Plan's responsibility to request one. §§ 1343, 1344, 1367(i). Plans requesting an exemption generally file an amendment or a material modification that includes the new language, or a redlined version of the changes that they are seeking to make to the evidence of coverage documents. SUF 2. Plans may seek exemptions from the requirements of the Knox-Keene Act for various reasons. SUF 3. Entities that are not regulated by DMHC, including plan product subscribers such as Plaintiffs, are not authorized under the statute to seek exemptions from the requirements of the Knox-Keene Act from DMHC.

## FACTUAL BACKGROUND

**I.    AS A RESULT OF MEDIA INQUIRIES REGARDING EMPLOYERS RESTRICTING ACCESS TO ABORTION COVERAGE IN EMPLOYEE HEALTH PLANS, DMHC CONDUCTED A LEGAL ANALYSIS TO DETERMINE WHAT IS REQUIRED UNDER CALIFORNIA LAW**

In October 2013, Santa Clara University (SCU) announced that it would no longer be providing its employees with a health plan product that covered abortion. This issue quickly hit U.S. news outlets, and DMHC began receiving media inquiries regarding the lawfulness of SCU's

---

[3] The different "classes" referenced in the Knox-Keene Act refer to the classes of regulated entities—health plans, not consumers, enrollees, or subscribers. See *infra* at 12-15 for full analysis.

4

health plan product.[4]  Riess Decl., Ex. C; Ex. D (Deposition of Marta Green (Green Depo.)) at 10:10-12:13; Ex. E, F, and G (emails between DMHC's communications officer and journalists regarding the issue).  DMHC also received consumer inquiries, including from a professor at SCU. *See, e.g.*, Riess Decl., Ex. H (contacting DMHC about SCU abortion coverage changes and seeking information about DMHC's role in approving this change); Riess Decl., Ex. K (Wong Decl.) ¶ 4.  In response, DMHC began looking into whether such health plan products complied with state law. *See* Riess Decl., Ex. L (Deposition of Michelle Rouillard (Rouillard Depo.)) at 17:20-20:19; Ex. D (Green Depo.) at 17:12-18:8 (DMHC conducted a legal analysis regarding SCU abortion coverage).

In November 2013, after DMHC had begun its review, stakeholder groups, including the National Health Law Program (NHeLP), American Civil Liberties Union (ACLU), and Planned Parenthood, also began contacting DMHC requesting meetings.[5]  Riess Decl., Exs. M, N, O, P, and Q; Ex. R (Deposition of Gary Baldwin (Baldwin Depo.)) at 20:5-22:4; Ex. S (Deposition of Sherrie Lowenstein (Lowenstein Depo.)) at 45:18-46:11.

## II.   DMHC ISSUED THE AUGUST 22, 2014 LETTERS TO SEVEN HEALTH PLANS, REFLECTING WHAT IS REQUIRED BY LAW

After reviewing relevant law and Plan documents, DMHC concluded that it had erroneously failed to object to abortion restrictions in products offered by seven Plans.  Riess Decl., Ex. U (Aug. 22, 2014 Letters) at 1.  Accordingly, the Director, on August 22, 2014, sent letters to the seven Plans that had such restrictions "to remind plans that the [Knox-Keene Act] requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy.  Thus, all health plans must treat maternity services and legal abortion neutrally."  SUF 4.  The letters also advised that these Plans' exclusions and limitations on pregnancy termination services are incompatible with

---

[4] *See, e.g.*, Tracy Seipel, *Santa Clara University President Triggers Abortion Uproar*, MERCURY NEWS.COM (Oct. 9, 2013), https://www.mercurynews.com/2013/10/09/santa-clara-university-president-triggers-abortion-uproar/; Larry Gordon, *Santa Clara University Drops Insurance for Elective Abortions*, L.A. TIMES (Oct. 10, 2013), http://articles.latimes.com/2013/oct/10/local/la-me-ln-abortion-university-20131010.

[5] These stakeholder groups routinely contact California governmental entities regarding healthcare issues, especially Planned Parenthood, which is a Medi-Cal provider.  Riess Decl., Ex. T (Deposition of Donna Campbell (Campbell Depo.)) at 11:22-12:10, 15:8-20, 21:15-22:3; Ex. S (Lowenstein Depo.) at 80:21-81:13, 82:6-83:19.

5

1   reproductive privacy and choice rights under the Reproductive Privacy Act and the California

2   Constitution.  Riess Decl., Ex. U (Aug. 22, 2014 Letters) at 1-2.

3        The Plan coverage documents for these products limited abortion coverage and used

4   confusing and vague terminology, including "elective abortion," "voluntary abortion," and

5   "therapeutic abortion," to limit abortion coverage.  The August 22, 2014 letters noted that these

6   limitations are "inconsistent with the Knox-Keene Act and the California Constitution."  *Id.* at 2;

7   *see also Missionary Guadalupanas*, 38 Cal. App. 5th at 430 (The descriptors of "elective,"

8   "voluntary," "therapeutic," and "medically necessary" when used to exclude or limit coverage for

9   abortion are "inconsistent with the Knox-Keene Act and the California Constitution.").  The

10  Reproductive Privacy Act, which sets out the state's policy on lawful abortions, also does not

11  distinguish between, define, or use the terms "elective abortion," "voluntary abortion," or

12  "involuntary abortion."  §§ 123460-123468.  These terms are also unsupported by the medical

13  community.  A patient may "elect" or "volunteer" for a certain course of medical treatment;

14  however, that does not render the treatment any less "medically necessary."  Riess Decl., Ex. W

15  (Expert Report of Dr. Victor Chan) ¶¶ 9-11, 10 ("Generally, because a patient 'elects,' 'chooses,'

16  or 'selects' a certain course of medical treatment does not make it any more or less 'medically

17  indicated' or 'medically necessary'").

18       Accordingly, the letters called on each recipient Plan to review and amend current health plan

19  documents to ensure that they complied with the Knox Keene Act.  SUF 5.[6]  Each Plan made the

20  necessary changes promptly and without objection.  SUF 6.

21  **III.   DMHC GRANTED A REQUEST FOR A RELIGIOUS EXEMPTION**

22       After DMHC issued the letters, one Plan, Anthem Blue Cross, sought an exemption from

23  DMHC requesting approval of a contract limiting abortion coverage for "religious employers,"

24  which would exclude abortion coverage except in the cases of rape, incest, or where the woman's

25

26  [6] The letters noted that, "[a]lthough health plans are required to cover legal abortions, no
    individual health care provider, religiously sponsored health carrier, or health care facility may be
27  required by law or contract in any circumstance to participate in the provision of or payment for a
    specific service if they object to doing so for reason of conscience or religion."  Riess Decl., Ex.
28  U (Aug. 22, 2014 Letters) at 1 n.3.

6

Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, or in the
Alternative, for Summary Adjudication of Claims (2:15-CV-02165-KJM-EFB)

1   life is in danger.  SUF 7.  In October 2015, the Director granted Anthem's exemption request in

2   full.  SUF 8.

3   **IV.   NO PLAN HAS REQUESTED AN EXEMPTION THAT WOULD SATISFY PLAINTIFFS'**
    **RELIGIOUS BELIEFS**

4

5          Plaintiffs are Christian churches that want to offer their employees a health plan product that

6   comports with their religious beliefs by excluding coverage of  all abortions other than those

7   "performed to save the life of the" pregnant person.[7]  *See* Second Amended Complaint (SAC) (ECF

8   72) ¶¶ 7, 27-29, 47, 48.  No Plan has requested an exemption from the Knox-Keene Act

9   requirements for such a product.  SUF 9; *cf.* SUF 11, 12.  However, DMHC's Director explicitly

10  left open the possibility of granting such an exemption—should she receive one from a regulated

11  Plan.  SUF 10.  Plaintiffs have failed to identify evidence demonstrating that they took *any steps* to

12  look for a product that comported with their religious views before filing this lawsuit.[8]

13                                      **ARGUMENT**

14  **I.   THE DIRECTOR'S ACTIONS DO NOT VIOLATE THE FREE EXERCISE CLAUSE**

15         Plaintiffs' claim that the DMHC Director has violated their Free Exercise rights under the

16  First Amendment must fail because the Director's actions satisfy strict scrutiny.  In their Second

17  Amended Complaint, Plaintiffs challenge the Director's "interpretation and application of the

18  Knox-Keene Act," referring to the August 22, 2014 letters and the grant of an exemption to Anthem.

19  However, because a system of individualized exemptions is available with respect to health plan

20  products' compliance with Knox-Keene, the Court here must review whether the DMHC Director

21  has appropriately refused to extend a system of exemptions to Plaintiffs.  *Emp. Div., Dep't of Hum.*

22         [7] Plaintiffs seek a plan that "forbids elective abortions under any circumstance." SAC
    (ECF 72) ¶ 7. As noted above, "elective abortion" is not a legal or medical term, and Plaintiffs
23  nowhere provide their own definition.  However, their allegations imply that a plan product
    limiting coverage to abortions "performed to save the life of the" pregnant person would meet
24  their needs.  SAC (ECF 72) ¶¶ 47, 48.

25         [8] Plaintiffs identify no evidence, and do not even allege, that the letters resulted in their
    existing plan providing coverage for abortion where it previously did not do so.  They simply
26  allege that "[w]ere it not for this new interpretation and application of the Knox-Keene Act, the
    Churches *would and could obtain* group health insurance for their employees that limits or
27  excludes coverage for abortion consistent with their religious beliefs."  SAC ¶ 51 (emphasis
    added).  And Plaintiffs' prayer for relief does not include a request for nominal damages, which
28  would be expected if they had lost something that they previously had.

                                            7

1  *Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990) ("[W]here the State has in place a system of

2  individual exemptions, it may not refuse to extend that system to cases of 'religious hardship'

3  without compelling reason."); *see also Fulton v. City of Phila.,* 141 S. Ct. 1868, 1881 (2021) ("The

4  question, then, is not whether the City has a compelling interest in enforcing its non-discrimination

5  policies generally, but whether it has such an interest in denying an exception to [the plaintiff].").

6  Such a refusal must satisfy strict scrutiny, and the State must demonstrate that its existing

7  exemption system is designed to serve compelling government interests and is narrowly tailored to

8  pursuing these goals.  *Fulton,* 141 S. Ct. at 1877, 1881; *Church of the Lukumi Babalu Aye, Inc. v.*

9  *Hialeah* 508 U.S. 520 533, 531-32 (1993).[9]

10  Here, the Director has compelling reasons for not expanding the Plan exemption framework

11  to non-regulated entities and individuals, and the limitation of this exemption process is narrowly

12  tailored to the government's goals.  Opening up the exemption process to non-regulated entities

13  would be unmanageable, requiring DMHC's Director to review exemption requests from entities

14  not subject to its regulatory authority, and without a complete picture of the plan product coverage

15  in its entirety.  This would threaten extensive third-party harm to enrollees because it would allow

16  plan products to be altered, eliminating coverage of medically necessary healthcare services that

17  enrollees are entitled to by law.  It would also force the Director to expand DMHC's jurisdiction

18  beyond that delegated to it by the Legislature.

19  **A.      DMHC's Director Has a Compelling Interest in Only Considering**
          **Exemption Requests from Entities that She Regulates**

20

21  Ensuring DMHC's exemption process is only available to DMHC-licensed Plans serves three

22  compelling government interests: (1) preventing a flood of exemption requests from over 26 million

23  enrollees who may have objections to paying for healthcare, varying from blood transfusions to

24  vaccines to birth control—forcing DMHC to grant exemption requests in isolation; (2) preventing

25  significant third-party harm to enrollees by allowing enrollees or subscribers, including employers,

26  to opt out of legally-mandated healthcare coverage, creating a patchwork of healthcare benefits

27  ────────────────

28  [9]In the particular circumstances of this case, Defendant does not dispute that strict scrutiny applies.  *See Fulton*, 141 S. Ct. at 1877.

8

1    with gaps in coverage for those third parties—reimposing the very barriers to basic healthcare

2    services access that the Legislature sought to eradicate with Knox-Keene; and (3) not expanding

3    DMHC's jurisdiction beyond that specifically authorized by the Legislature.   These compelling

4    government interests satisfy strict scrutiny.   *See, e.g.*, *Fisher v. Univ. of Tex.*, 570 U.S. 297, 308

5    (2013) ("educational benefits that flow from student body diversity" is a compelling interest);

6    *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (state interest in upholding public confidence

7    in judicial integrity is compelling).

8                    **1.    Allowing Exemption Requests from Unregulated Entities is
                            Unworkable**

9

10          The Director has a compelling interest in ensuring DMHC's statutory exemption process is

11   only available to licensed health plans to avoid opening the floodgates to exemption requests from

12   the 26 million enrollees with coverage from Plans that it regulates.   As Plaintiffs' own Complaint

13   acknowledges, individuals' beliefs regarding the scope of abortion coverage vary widely.   SAC

14   (ECF 72) ¶¶ 144-45.[10]   Additionally, enrollees might have religious objections to a wide variety of

15   coverage provisions for critical medically necessary services—for example, those related to

16   contraception, vaccinations, blood transfusions, end-of-life care, and gender-affirming care.   *See,*

17   *e.g.*, *Dr. A v. Hochul*, 142 S. Ct. 552 (2021) (objections to COVID-19 vaccine requirements because

18   fetal cells were used in vaccine production); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682

19   (2014) (religious objections to providing certain types of contraceptive coverage for employees);

20   *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368

21   (2d Cir. 2021) (religious objections to mandatory COVID-19 vaccine policy); *Child's Healthcare*

22   *Is a Legal Duty, Inc. v. Min De Parle*, 212 F.3d 1084, 1088 (8th Cir. 2000) (religious objections to

23   all medical care because religion is the "sole means of healing"); *Religious Sisters of Mercy v. Azar*,

24   513 F. Supp. 3d 1113 (D.N.D. 2021), *judgment entered sub nom. Religious Sisters of Mercy v.*

25   *Cochran*, No. 3:16-CV-00386, 2021 WL 1574628 (D.N.D. Feb. 19, 2021) (religious objections to

26

27          [10] The variation in beliefs about abortion among different religious organizations is wide
     ranging.  *See* David Masci, *Where major religious groups stand on abortion*, PEW RESEARCH
28   (June 21, 2016), https://www.pewresearch.org/fact-tank/2016/06/21/where-major-religious-
     groups-stand-on-abortion/.

1   performing or covering gender-transition procedures); *Robinson v. Child.'s Hosp. of Bos.*, No. 14-
2   10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016) (religious objections to influenza
3   vaccination); *Haines v. N.H. Dep't of Health & Hum. Servs.*, No. 08-CV-505-SM, 2009 WL
4   1307203 (D.N.H. Apr. 28, 2009) (religious objections to mental health screening).

5        If the Director had to review exemption requests related to the religious beliefs of all non-
6   regulated consumers on aspects of healthcare coverage with which they object, DMHC's operations
7   would grind to a halt, especially given that DMHC regulates 94 full-service health plans, serving
8   26 million enrollees.  SUF 1.  The "government simply could not operate if it were required to
9   satisfy every citizen's religious needs and desires."  *Lyng v. Nw. Indian Cemetery Protective Ass'n*,
10  485 U.S. 439, 452 (1988); *Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338,
11  362-63 (3rd Cir. 2017) ("[F]act that the Government may require insurers to offer coverage for
12  expenditures for certain services that some might find objectionable on religious grounds cannot
13  form the basis of requiring the Government to adjust its program on behalf of all employees").

14       The availability of secular categorical exemptions from the abortion coverage requirement
15  does not demonstrate that DMHC lacks a compelling interest in limiting exemptions to DMHC-
16  regulated Plans.  *See* SAC (ECF 72) ¶¶ 113-33, 167-69.  Categorical exemptions are set out in
17  statute, limited to a narrow set of Plan types, and do not require any exemption request to be made
18  by a Plan.  And any individualized exemptions that DMHC's Director has granted to Plans are not
19  comparable to the exemption sought by Plaintiffs because no enrollees or subscribers, including
20  employers—whether religious or secular—sought, or were eligible to seek, those individualized
21  exemptions.  *Cf*. SAC (ECF 72) ¶¶ 117-133; 170-171.

22       Further, the mere existence of these exemptions does not weigh against the compelling
23  government interests here.  The fact that a statute or rule has made exceptions or failed to address
24  the entire scope of a problem does not cast doubt on the strength of a governmental interest.  *See*
25  *Williams-Yulee*, 575 U.S. at 449 ("[s]tate need not address all aspects of a problem in one fell
26  swoop; policymakers may focus on their most pressing concerns").  The tax code, for example,
27  contains many religious and secular exemptions, but that does not mean that the government's

28

compelling interest in generating revenue is unworthy of credence or that additional accommodations to the tax code must be made for religious objectors. *Hernandez v. Comm'r*, 490 U.S. 680, 682 (1989) (the fact that the government "has already crafted some deductions and exemptions" in the tax code is "of no consequence").

Additionally, in requesting that Defendant review and approve exemption requests from non-regulated entities or individuals, Plaintiffs ask DMHC to approve *hypothetical* plan product documents, and to excuse some unknown health plan from compliance with California law. Allowing exemption requests from the 26 million individuals who currently utilize a DMHC-regulated plan product related to *any* medical offering with which they have a religious objection, without the health plan at the table and without a clear picture of the whole plan product, would interfere with DMHC's ability to review and approve complete health plan products to ensure that they comply with the law.

### 2.    DMHC's Director Has a Compelling Government Interest in Preventing Third Party Harms to Enrollees

Permitting enrollees and subscribers, like Plaintiffs, to submit exemption requests to DMHC's Director could also create a patchwork of healthcare benefits with gaps in coverage for third parties.  Under Knox-Keene, DMHC must ensure that Plans "provide enrollees with access to quality health care services and protect and promote the interests of enrollees."  § 1341(a). DMHC's Director has a compelling interest in ensuring that enrollees can obtain healthcare coverage to which they are entitled by law.  The existing framework for reviewing Plan exemptions allows DMHC to consider exemptions in the context of the Plan's product offerings.

The need to avoid third-party harm has been widely recognized as a compelling government interest. *See, e.g.*, *States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016) ("scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants" is an important part of the compelling government interest analysis); *Priests for Life v. U.S. Dep't of Health & Hum. Servs.*, 808 F.3d 1, 26 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from the denial of rehearing en banc) ("The Government may *of course* continue to require religious organizations' *insurers* to provide contraceptive coverage to the religious organizations' employees, even if the religious

11

1    organizations object." (first emphasis added)).  In *Hobby Lobby*, the Court instructed that "courts

2    must take adequate account of the burdens a requested accommodation may impose on

3    nonbeneficiaries," which "will often inform the analysis of the Government's compelling interest

4    and the availability of a less restrictive means of advancing that interest."  573 U.S. at 729 n.37;

5    *see also id.* at 739 (Kennedy, J., concurring) (religious exercise should not "unduly restrict other

6    persons, such as employees, in protecting their own interests, interests the law deems compelling");

7    *see also United States v. Lee*, 455 U.S. 261 (1982) (rejecting Amish employer's religious claims

8    that would "impose the employer's religious faith on the employees"); *Estate of Thornton v. Caldor*

9    *Inc.*, 472 U.S. 703, 710 (1985) (invalidating statute that gave Sabbath observers an absolute and

10   unqualified right not to work on the Sabbath, thus "impos[ing]" "significant burdens" on

11   employees).[11]

12       Allowing individual enrollees or subscribers to obtain exemptions from Plan coverage

13   requirements would result in a wide array of patchwork plan products without full coverage for all

14   basic health services—ultimately leading to enrollees being denied healthcare to which they are

15   legally entitled.  Insurance is already incredibly confusing for consumers [12]—an expanded

16   exemption process would make it nearly impossible for enrollees to understand whether their Plan

17   provides the coverage they need.  And this is nothing compared to the harm of being unable to

18   receive medically necessary care because it has been exempted from coverage.

19

20

21

22       [11] The Court should also be wary of running afoul of the Establishment Clause if it were to
     grant Plaintiffs' requested relief.  Courts have invoked the Establishment Clause to invalidate
     accommodations that "would require the imposition of significant burdens on other employees."

23   *Estate of Thornton*, 472 U.S. at 710; *see also Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15 (1989)
     (plurality op.) (striking down a statute exempting only religious periodicals from sales and use

24   taxes (in part) because it "burdens nonbeneficiaries markedly" (i.e., non-religious periodicals)).

         [12] Deb Gordon, *Health Insurance Confusion Continues To Plague Americans, New Data*

25   *Show*, FORBES (Feb. 8, 2021), https://www.forbes.com/sites/debgordon/2021/02/08/health-
     insurance-confusion-continues-to-plague-americans-new-data-show/?sh=4af21c3f4667; Margot

26   Sanger-Katz, *It's Not Just You: Picking a Health Insurance Plan Is Really Hard*, N.Y. TIMES

27   (Dec. 11, 2020), https://www.nytimes.com/2020/12/11/upshot/choosing-health-insurance-is-
     hard.html.

28

### 3.   DMHC's Director Has a Compelling Government Interest in Not Expanding DMHC's Statutory Authority

The Director has a compelling interest in not expanding DMHC's authority beyond that granted to it by the California Legislature.  There is nothing in Knox-Keene that indicates that DMHC's enforcement authority was intended to apply to anything but health plans.  This includes its exemption authority.[13]  *See* §§ 1343, 1344, 1367.

Knox-Keene makes clear that neither enrollees nor subscribers are regulated under the Act, and DMHC's Director is not free to disregard the will of the Legislature expressed in these statutes. *See Tex. v. U.S.,* 809 F.3d 134, 183 n.191 (5th Cir. 2015) (Agency had no "leeway" to implement Deferred Action for Parents of American and Lawful Permanent Residents program because it "may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law'"); *see also People ex rel. Dep't of Alcoholic Beverage Control v. Miller Brewing Co.*, 104 Cal. App. 4th 1189, 1198-99 (2002) ("[T]he Department's exercise of its authority must be consistent with the Legislature's delegation of authority, and any rule or administrative action that enlarges or exceeds the power delegated by the Legislature is void.").

The Director's exemption authority is set out in Sections 1343, 1344, and 1367 of Chapter 2.2 of Division 1 of the Health and Safety Code (encompassing Sections 1340-1399.874, inclusive). Section 1343 states that "[t]his chapter shall apply to health care service plans and health care service plan contracts as defined in subdivisions (f) and (o) of Section 1345."  § 1343(a).  Section 1343 goes on to provide that "[t]he director may . . . exempt from this chapter any class of persons or plan contracts if the director finds the action to be in the public interest and not detrimental to the protection of subscribers, enrollees, or persons regulated under this chapter."  § 1345(b).  It would make no sense to "exempt" a subscriber or enrollee that contracts with a regulated health

---

[13] Any different interpretation of the Act would be contrary to California law.  *See Skyline*, 968 F.3d 738, 747 (9th Cir. 2020) (granting Defendants' Petition for Rehearing and amending its opinion to eliminate language that could suggest that DMHC may exempt the purchaser or subscriber of a Plan, such as Plaintiff, from the requirements of the Knox-Keene Act); Defendants-Appellants' Pet. for Rehearing at 1-2, *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 18-55451 (ECF 58) (arguing that the original opinion had the "potential to create confusion by suggesting that a regulatory relationship exists between plan purchasers or subscribers and DMHC—when, in fact, no such regulatory relationship exists under California law").

1   plan "from this chapter" (Knox-Keene) when the subscriber or enrollee is not subject to the

2   requirements of the "chapter" to begin with. *Rea v. Blue Shield of Cal*., 226 Cal. App. 4th 1209,

3   1230 (2014) ("Statutes are to be read in context, with the nature and obvious purpose of the statute

4   in mind. '[W]e do not construe statutes in isolation, but rather read every statute "with reference to

5   the entire scheme of law of which it is part so that the whole may be harmonized and retain

6   effectiveness.'") (internal citations omitted).

7       The use of "person" in this provision refers to a health care service plan or other entity

8   regulated by DMHC.  A "health care service plan" is defined in subdivision (f) of Section 1345 as

9   "[a]ny *person* who undertakes to arrange for the provision of health care services to subscribers or

10  enrollees… [or] [a]ny *person* … who solicits or contracts with a subscriber or enrollee in this state

11  to pay for … the provision of health care services." (emphasis added).  Clearly then, it is the

12  Legislature's intent that a health care service plan is considered a "person" under the Act such that

13  the use of the term "person" in Section 1343 must be understood to refer to a health care service

14  plan regulated by DMHC.

15      Further, the definition of "person" provided in this chapter *does not* include enrollees or

16  subscribers (such as Plaintiffs).  § 1345(j) (defining "person" as "any person, individual, firm,

17  association, organization, partnership, business trust, foundation, labor organization, corporation,

18  limited liability company, public agency, or political subdivision of the state.")  This definition

19  should be read to intentionally exclude enrollees and subscribers.  *See Silvers v. Sony Pictures

20  Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) ("The doctrine of *expressio unius est

21  exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute

22  designates certain persons, things, or manners of operation, all omissions should be understood as

23  exclusions.'").  Indeed, both "enrollee" and "subscriber" are separately defined within Section

24  1345. § 1345(c), (p).  Accordingly, if enrollees and subscribers were intended to be included in the

25  exemption provisions of Section 1343, the terms "enrollee" and "subscriber" would have been used,

26  or the term "person" would have been defined to include "enrollees" and "subscribers."

27      Finally, even if it were not clear from the Act that neither subscribers nor enrollees are

28  regulated under Knox-Keene, DMHC is entitled to deference in connection with its interpretation

14

1  of the state statutes DMHC is charged with enforcing.  *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 911

2  (9th Cir. 2003) (affording deference to state agency's interpretation of state statute that the agency

3  enforces); *Sharon S. v. Super. Ct.*, 31 Cal. 4th 417, 436 (2003) (under California law, agency's

4  "interpretation of a statute [it] is charged with enforcing deserves substantial weight," and such

5  weight is even "greater" "where the agency has special expertise"); *see also City of Bangor v.*

6  *Citizens Commc'ns Co.*, 532 F.3d 70, 94 (1st Cir. 2008) ("Federal courts generally defer to a state

7  agency's interpretation of those statutes it is charged with enforcing").  Any other interpretation

8  would require the Court to override DMHC's interpretation of the law it is charged with enforcing.

9  For these reasons, it would be an expansion of the authority delegated to DMHC by the

10 Legislature if DMHC's Director were to review exemption requests from subscribers or enrollees,

11 and the Director has a compelling interest in not expanding DMHC's jurisdiction beyond that

12 delegated to it by the Legislature.

13  **B.  Limiting Exemption Requests to Licensed Health Plans Is Narrowly**
        **Tailored to, and Is the Least Restrictive Means of, Achieving the**
14      **Director's Compelling Government Interests**

15 Limiting the DMHC Director's review of exemption requests to licensed, regulated health

16 plans is narrowly tailored to achieve the Director's compelling government interests.  Narrow

17 tailoring requires that a government action restrict the free exercise of religion no more than

18 necessary to advance the government's compelling interest and that the government "seriously

19 undertook to address the problem with the least intrusive tools readily available to it."  *McCullen*

20 *v. Coakley*, 573 U.S. 464, 494 (2014); *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707,

21 718 (1981).  For an action to be narrowly tailored, it must be neither "overbroad [n]or

22 underinclusive in substantial respects because the proffered objectives are not pursued with

23 respect to analogous nonreligious conduct and those interests could be achieved by narrower

24 ordinances that burdened religion to a far lesser degree."  *Lukumi*, 508 U.S. at 522.  The DMHC

25 Director's limitation of its exemption process to the entities it regulates satisfies both

26 requirements.

27 There are no less restrictive means to achieve these compelling government interests, let

28 alone any less restrictive means that would work "equally well."  *Hobby Lobby*, 573 U.S. at 731;

15

1   *see also Sherbert v. Verner* 374 U.S. 398, 409 (1963) (rejecting alternatives that would be

2   "unworkable"); *Kaemmerling v. Lappin*, 553 F.3d 669, 684 (D.C. Cir. 2008) (rejecting alternative

3   methods of identification that would be "less effective").  The only option other than limiting

4   exemption requests to DMHC-licensed Plans would be allowing *all* 26 million enrollees in

5   DMHC-licensed Plans to request exemptions, seeking a hypothetical plan product that fits the

6   individual's religious beliefs—all without any Plan involvement or a complete review of the plan

7   product in their entirety.  As explained above, this is untenable and contrary to the Director's

8   compelling interests in only reviewing exemption requests from entities that are subject to

9   DMHC's jurisdiction.

10      In determining whether the government action is the least restrictive means of furthering a

11   compelling interest, a key consideration is whether other alternatives would impose harm on third

12   parties.  *Hobby Lobby*, 573 U.S. at 729 n.37 ("courts must take adequate account of the burdens a

13   requested accommodation may impose on nonbeneficiaries," which "will often inform the

14   analysis of the Government's compelling interest and the availability of a less restrictive means of

15   advancing that interest" ); *see also id.* at 739 (Kennedy, J., concurring) (religious exercise should

16   not "unduly restrict other persons, such as employees, in protecting their own interests, interests

17   the law deems compelling").  Any exemption process that allows Plaintiffs to submit exemption

18   requests directly to DMHC would harm third parties, as discussed above.

19      Because limiting the exemption process to DMHC-licensed health plans is narrowly tailored

20   to achieve the compelling interests of avoiding third-party harms, maintaining a functional system

21   for regulating health plan coverage, and ensuring the DMHC Director doesn't expand DMHC's

22   jurisdiction, and there are no less restrictive means of furthering these interests, the Director's

23   actions survive strict scrutiny.  In short, Plaintiffs failed to present evidence that would allow a

24   reasonable fact-finder to conclude that the Director violated the Free Exercise Clause.

25   **II.    THE DIRECTOR'S ACTIONS DO NOT VIOLATE THE EQUAL PROTECTION CLAUSE**

26      Plaintiffs' Equal Protection claim fails because they have not demonstrated that they are

27   similarly situated to the groups they allege were treated differently by DMHC.  As a result, the

28   Court need not apply either rational basis or strict scrutiny review to the Director's conduct.  Even

16

1  if Plaintiffs had been able to identify a similarly situated group who received different treatment,

2  they have not demonstrated that any alleged differential treatment was based on their membership

3  in a protected class, and thus the Court would apply rational basis review to DMHC's conduct.

4  DMHC issued the letters and granted an exemption to Anthem on religious grounds to meet a

5  legitimate government interest, and thus would easily survive rational basis review.

6      The fact that a plaintiff was treated differently from others is not inherently problematic.

7  "[T]he Equal Protection Clause does not forbid classifications" because "[o]f course, most laws

8  differentiate in some fashion between classes of persons." *Nordlinger v. Hahn*, 505 U.S. 1, 10

9  (1992).  What the Equal Protection Clause of the Fourteenth Amendment requires is "that all

10 persons *similarly situated* should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473

11 U.S. 432, 439 (1985) (emphasis added).  The first step in an Equal Protection analysis is to

12 identify a group classified by the state and a control group "composed of individuals who are

13 similarly situated to those in the classified group *in respects that are relevant to the state's*

14 *challenged policy*."  *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (emphasis added).

15     Here, Plaintiffs cannot demonstrate that they are similarly situated to the groups they allege

16 were given different treatment.  Plaintiffs' SAC identifies two groups whom they allege received

17 different, preferential treatment from DMHC:  (1) "persons and businesses" who were granted

18 exemptions from the abortion coverage requirements of the Knox-Keene Act, SAC (ECF 72) ¶¶

19 186, 188; and (2) other religious employers whose plan was granted an exemption from Knox-

20 Keene's abortion coverage requirement, *id.* at ¶¶ 192-93.  But Plaintiffs are not similarly situated

21 to either of these groups.

22     First, Plaintiffs are *plan subscribers*, whereas the "persons and businesses" who received

23 exemptions based on religious beliefs were *Plans*.  As this Court has previously held, the August

24 2014 letters that Plaintiffs challenge as violating their Equal Protection rights apply to Plans, not

25 plan subscribers like Plaintiffs, "and do not make any classification with respect to [subscribers]."

26 ECF 86 (Order re Motion to Dismiss SAC) at 10.  Plaintiffs have not alleged or introduced any

27 facts demonstrating that Plans are similarly situated to subscribers, who are their customers.

28 Plans are heavily regulated and must comply with extensive requirements under state and federal

17

law.  SUF 13.  These regulations exist in part to protect plan subscribers, including employers

such as Plaintiffs, by ensuring that the products offered to them comply with legal requirements.

Riess Decl., Ex. V (Letter from DMHC to HHS OCR) at 2 n.4 ("Enrollees of DMHC-regulated

plans enjoy some of the strongest health care consumer protections in the country," and

describing protections).  Unlike Plans, plan subscribers have no regulatory relationship with

DMHC.  SUF 14.  As described above, DMHC has a number of compelling interests that justify

limiting the exemption process to regulated entities.  *See supra* at 9-15; *see also Progressive*

*Democrats For Social Justice, et al., v. Rob Bonta*, No. 21-CV-03875-HSG, 2022 WL 612806, at

*13-14 (N.D. Cal. Mar. 1, 2022) (state and local employees not similarly situated for purposes of

campaign contribution solicitation limitations because of different levels of oversight, and the size

and nature of the workforces is different).  Plans and plan subscribers are not similarly situated.

Second, Plaintiffs allege they were treated differently by DMHC from religious employers

who benefited from the Anthem exemption, and that the Anthem exemption demonstrates that

DMHC gave preferential treatment to certain religious beliefs over Plaintiffs'.  SAC (ECF 72) ¶

192.  But Plaintiffs do not allege, nor is there any evidence, that DMHC granted the Anthem

exemption but refused an exemption seeking to accommodate Plaintiffs' religious beliefs because

of the substance of those beliefs.  To the contrary, there is no evidence in the record that any Plan

sought an exemption that would satisfy Plaintiffs' religious beliefs, nor is there evidence that

before filing this suit, Plaintiffs took any steps to request that a Plan seek an exemption on their

behalf, as Anthem did for other religious employers.  In granting the Anthem exemption, DMHC

was simply responding to a request—the only request—that was submitted to it by a regulated

entity.  Indeed, DMHC's Director has specifically left open the possibility that she would

consider any future request for an exemption from the Knox-Keene abortion coverage

requirement from a regulated entity that may come before her.  SUF 10.  While certain religious

employers may be differently affected by the exercise of her exemption authority than others,

"[a]n equal protection claim will not lie by 'conflating all persons not injured into a preferred

class receiving better treatment' than the plaintiff."  *Thornton v. City of St. Helens*, 425 F.3d

1158, 1167 (9th Cir. 2005).  Thus, Plaintiffs have failed to identify a group to which they are

1   similarly situated in ways relevant to their claim who received different treatment.  As a result,

2   their Equal Protection claim fails at the first step of the analysis and should be dismissed.

3          Assuming arguendo that Plaintiffs were able to demonstrate they received different

4   treatment to those similarly situated, Plaintiffs cannot show that the Director acted with an intent

5   or purpose to discriminate against Plaintiffs based on their membership in a protected class, and

6   thus, rational basis review would apply to the Director's conduct.  *City of Cleburne*, 473 U.S. at

7   440 (state action presumed to be valid and subject to rational basis review unless it targets a

8   protected class).  Plaintiffs have not introduced any facts supporting their claim that the Director

9   exercised her authority to grant individualized exemptions "so that religious employers with

10  preferred beliefs about abortion may be accommodated."  SAC ¶ 192.  Nor have Plaintiffs

11  introduced any evidence that demonstrates that the Director has granted or refused exemptions

12  based on the specific religious views of the subscribers of health plans about abortion coverage.

13  To the contrary, the Director has stated that she would consider an exemption request on religious

14  grounds for a product that comported with religious beliefs similar to those of Plaintiffs.  SUF 10.

15  To the extent that Plaintiffs have not been able to purchase coverage that satisfies their religious

16  beliefs, they have shown no evidence that this is because the Director discriminated against them

17  on the basis of their religious beliefs.  Rather, the undisputed evidence in the record shows that

18  the Director simply has never received a request for an exemption for such a product.  Thus, the

19  differential treatment that Plaintiffs allege is not the result of their membership in a protected

20  class, and rational basis review applies.

21         The Director's actions easily satisfy rational basis review.  Under rational basis review, the

22  state's conduct "is presumed to be valid and will be sustained if the classification . . . is rationally

23  related to a legitimate state interest."  *Gallinger*, 898 F.3d at 1017 (citing *City of Cleburne*, 473

24  U.S. at 440) (citations omitted).  In issuing the letters to Plans, DMHC's Director was satisfying

25  her duty to ensure that products her agency is charged with regulating comply with state law—not

26  only a legitimate state interest but one of the essential functions of her agency.  Further, as

27  acknowledged by the California Court of Appeal and Ninth Circuit, the letters constituted the

28  "only legally tenable interpretation" of the Knox-Keene Act.  *Skyline Wesleyan Church v.*

*California Dep't of Managed Health Care*, 968 F.3d at 752 n.10 (citing *Missionary Guadalupanas*, 38 Cal. App. 5th at 426).  The Director treats Plans differently from subscribers because Plans are selling products to the public in accordance with state law.  In granting the exemption to Anthem, the Director and DMHC were simply carrying out their duty to grant exemptions to Knox-Keene's requirements for "good cause."  § 1367(i).  The Director has not only a legitimate interest, but a compelling interest, in treating those who have submitted requests differently from those who have not.  Any other arrangement would be unworkable, requiring her to anticipate the myriad potential objections that might arise from the Act's requirements.  Thus, to the extent that the letters and existing exemption differentiate between Plaintiffs and other groups, these classifications are in pursuit of the legitimate state interest of regulating Plan products to ensure sufficient coverage and protect healthcare access for Californians.  As a result, Plaintiffs' Equal Protection claim must fail.

## CONCLUSION

Defendant respectfully requests that this Court grant Defendant's Motion for Summary Judgment and dismiss Plaintiffs' Complaint with prejudice.


Dated:  April 1, 2022                                   Respectfully submitted,

                                                        ROB BONTA
                                                        Attorney General of California
                                                        KARLI EISENBERG
                                                        Supervising Deputy Attorney General



                                                        */s/ Melissa Riess*
                                                        MELISSA RIESS
                                                        HAYLEY PENAN
                                                        Deputy Attorneys General
                                                        *Attorneys for Defendant Mary Watanabe, in her official capacity as Director of the Department of Managed Health Care*

SF2015403026
Foothill FINAL MSJ Brief_2022-03-31_Phillips Dec.docx