ROB BONTA, State Bar No. 202668
Attorney General of California
KARLI EISENBERG, State Bar No. 281923
Supervising Deputy Attorney General
MELISSA RIESS, State Bar No. 295959
HAYLEY PENAN, State Bar No. 313693
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7785
 Fax: (916) 324-5567
 E-mail: Melissa.Riess@doj.ca.gov
*Attorneys for Defendant Mary Watanabe, in her official capacity as Director of the Department of Managed Health Care*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FOOTHILL CHURCH, CALVARY CHAPEL OF CHINO HILLS and SHEPHERD OF THE HILLS CHURCH,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARY WATANABE, in her official capacity as Director of the California Department of Managed Health Care,**<br><br>Defendant. | 2:15-CV-02165-KJM-EFB<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 17, 2022<br>Dept: Courtroom 3<br>Judge: Chief Judge Kimberly J. Mueller<br>Action Filed: Oct. 23, 2017 |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 2

    I.    The Proper Inquiry Is Whether DMHC Satisfies Strict Scrutiny in Refusing to Grant Plaintiffs an Exemption ........................................................................... 2

    II.    The DMHC Director's Actions Satisfy Strict Scrutiny ........................................... 4

        A.    DMHC Has a Compelling Interest in Limiting Knox-Keene Exemptions to Entities It Regulates and Plaintiffs' Arguments to the Contrary Are Unconvincing ................................................................... 5

        B.    DMHC's Exemption System is Narrowly Tailored .................................... 7

        C.    To the Extent the Court Concludes Defendant's Actions Do Not Survive Strict Scrutiny, the Remedy Should Be No More Burdensome than Necessary to Provide Relief to Plaintiffs ...................... 8

    III.    DMHC's Conduct Does Not Violate the Equal Protection Clause ......................... 9

Conclusion ................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Burwell v. Hobby Lobby Stores, Inc.*
    573 U.S. 682 (2014) .................................................................................................................. 5

*Child's Healthcare Is a Legal Duty, Inc. v. Min De Parle*
    212 F.3d 1084 (8th Cir. 2000) .................................................................................................. 5

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*
    508 U.S. 520 (1993) .................................................................................................................. 5

*City of Cleburne v. Cleburne Living Ctr.*
    473 U.S. 432 (1985) .................................................................................................................. 9

*Dr. A v. Hochul*
    142 S. Ct. 552 (2021) ................................................................................................................ 5

*Fulton v. City of Phila.*
    141 S. Ct. 1868 (2021) ..................................................................................................... *passim*

*Fulton v. City of Phila.*
    No. 2:18-cv-02075-PBT, ECF No. 79 (E.D. Pa. Oct. 1, 2021) ................................................. 9

*Haines v. N.H. Dep't of Health & Hum. Servs.*
    No. 08-CV-505-SM, 2009 WL 1307203 (D.N.H. Apr. 28, 2009) ............................................ 5

*Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard*
    38 Cal. App. 5th 421 (2019) ................................................................................................. 4, 7

*Religious Sisters of Mercy v. Azar*
    513 F. Supp. 3d 1113 (D.N.D. 2021) ........................................................................................ 5

*Robinson v. Child.'s Hosp. of Bos.*
    No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016) ............................................. 5

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*
    968 F.3d 738 (9th Cir. 2020) .................................................................................................... 4

*We The Patriots USA, Inc. v. Hochul*
    17 F.4th 266 (2d Cir. 2021) ...................................................................................................... 5

*Wisconsin v. Yoder*
    406 U.S. 205 (1972) .................................................................................................................. 3

# TABLE OF AUTHORITIES
(continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ................................................................. *passim*

United States Constitution, Fourteenth Amendment ................................................................. 9

**STATUTES**

California's Knox-Keene Health Care Service Plan Act of 1975 .......................................... *passim*

# INTRODUCTION

Plaintiffs have brought an as-applied challenge under the Free Exercise Clause to the California state law requirement that health care service plans (health plans or Plans) cover abortion. The relevant inquiry for the Court is whether Plaintiffs are entitled to an exemption from this requirement. The inquiry is not whether the abortion coverage requirement itself, or the Department of Managed Health Care (DMHC or the Department) Director's implementation of that requirement, in general violate the Free Exercise Clause. In short, it is the DMHC Director's refusal to grant Plaintiffs an exemption, not the underlying policy, to which the Court should apply strict scrutiny. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1881 (2021).

The Director has demonstrated that limiting exemptions from the requirements of the Knox-Keene Act to entities that are subject to that Act's requirements furthers a compelling interest: namely, it enables the Director and her Department to carry out one of their fundamental purposes, which is to ensure that health plan products comply with state law requirements designed to ensure that Californians have access to essential healthcare services. Requiring that exemption requests, to accommodate religious views, be submitted by health plans in reference to specific products is narrowly tailored to achieving this goal. It is narrowly tailored because it allows the Department to grant exemptions for religious reasons while also reviewing plan products to ensure they comply with other essential state law requirements. The Director has made clear to Plaintiffs that she would consider an exemption from the abortion coverage requirement to accommodate Plaintiffs' religious beliefs as long as the request comes via a Plan. Such a process allows DMHC to ensure that the health plan product otherwise complies with California law. Accordingly, Defendant Director respectfully asks the Court to dismiss Plaintiffs' Free Exercise claim because her actions satisfy strict scrutiny.

If the Court were to conclude that the Director's actions do not satisfy strict scrutiny, the Director respectfully requests that any injunctive relief be no broader than necessary to provide complete relief to the Plaintiffs before the Court. Any relief ordered by the Court should be applicable to the Plaintiffs only and should be limited to requiring DMHC to approve Plaintiffs' exemption request for a plan product that excludes abortion in all instances, except to protect the

1

1  life or health of the pregnant person.  Any broader relief would not be necessary to resolve
2  Plaintiffs' alleged harm and would unnecessarily open the door to avoidable third-party harms.
3      Plaintiffs' Equal Protection claim is without merit.  Plaintiffs continue to fail to identify any
4  evidence that the Director has treated them differently from similarly situated groups on the basis
5  of their religious beliefs.
6      Accordingly, Defendant respectfully requests that the Court grant her motion for summary
7  judgment, deny Plaintiffs' motion, and dismiss Plaintiffs' Free Exercise and Equal Protection
8  claims.

**ARGUMENT**

**I.  THE PROPER INQUIRY IS WHETHER DMHC SATISFIES STRICT SCRUTINY IN REFUSING TO GRANT PLAINTIFFS AN EXEMPTION**

Plaintiffs argue that this Court should review DMHC's "decision to enforce the Abortion Coverage Requirement in the *first place*, not the process by which it may later consider exemptions." Pls.' Mem. Opp'n Def.'s Mot. Summ. J. at 7 (Pls.' Opp'n), ECF No. 122 (emphasis in original).  This argument is contradicted by Plaintiffs' own pleadings, which make clear that they are challenging the effect of the requirement for health plans to cover abortion *as it applies to Plaintiffs*.  This is not a facial challenge to the Knox-Keene Act.  In fact, Plaintiffs have repeatedly challenged their ability to obtain an exemption from the abortion coverage requirement, and this is exactly the form of relief they seek and would be entitled to if they prevailed on their Free Exercise Clause claim.  Thus, the proper inquiry is the constitutionality of the abortion coverage requirement as it applies to Plaintiffs—in other words, whether Plaintiffs should be exempted from the abortion coverage requirement, not the constitutionality of the requirement in general.  Such an inquiry is also consistent with *Fulton*.

Plaintiffs' argument that their challenge focuses on the "State's decision to enforce the Abortion Coverage Requirement in the *first place*," Pls.' Opp'n at 1, ECF No. 122 (emphasis in original), is entirely unfounded.  From the inception of this litigation, Plaintiffs have sought relief from the requirement for health plans to cover abortion as this policy *applies to Plaintiffs*.  *See, e.g.*, Second Am. Compl. ¶ 1, ECF No. 72 ("This legal action challenges the constitutionality of California's Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act"), *as applied*

2

to the Churches to require their employee group health plans to provide coverage for elective abortions in violation of the Churches' religious beliefs." (emphasis added)); Pls.' Opp'n Def.'s Mot. Dismiss Second Am. Compl. at 1, ECF No. 77 ("[W]ith their Second Amended Complaint, the Churches bring an *as-applied constitutional challenge* to the Knox-Keene Act." (emphasis added)). Contrary to their arguments in their opposition, Plaintiffs *have* challenged their ability to obtain an exemption from the abortion coverage requirement from the beginning of this lawsuit, and pled their case extensively on this point. *Compare* Pls.' Opp'n at 7, ECF No. 122, *with* Pls.' Second Am. Compl., ECF No. 72, ¶¶ 147-155 (section of complaint titled "Refusing exemptions for plans that meet the Churches' religious beliefs"); *see also* ¶¶ 7, 38, 113-155 (section titled "Exemptions abound, but not for the Churches"), 173, 179 (allegations discussing the availability of exemptions from the Knox-Keene Act). Indeed the relief Plaintiffs request in their complaint is entirely consistent with the Court's consideration of whether Plaintiffs should have an exemption. *See* Second Am. Compl. at 31, ECF 72 (prayer for relief seeking a permanent injunction prohibiting the DMHC Director "from enforcing the new interpretation of the Knox-Keene Act's "basic health care services requirement . . . *against the Churches*" (emphasis added)).

Given that this is an as-applied challenge (as Plaintiffs have repeatedly stated), the Court is tasked with reviewing the constitutionality of a law as it applies to a particular plaintiff and whether it would be constitutionally appropriate for that plaintiff to be exempt from the law. *See, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 236 (1972) (holding that state statute requiring school attendance violated Free Exercise as applied to Amish plaintiffs, who were deemed exempt from the statute, but clarifying that "[n]othing we hold is intended to undermine the general applicability of the State's compulsory school-attendance statutes"); *see also Fulton*, 141 S. Ct. at 1916-17 (Alito, J., concurring in judgment) ("The granting of an exemption from a generally applicable law is tantamount to a holding that a law is unconstitutional as applied to a particular set of facts"). Thus, the appropriate question here concerns the constitutionality of the DMHC Director's refusal to grant an exemption from the Knox-Keene requirement—not the constitutionality of the Knox-Keene Act

requirement to cover abortion or the DMHC Director's letters articulating that existing state law requirement.[1]

This analysis is entirely consistent with *Fulton*. In *Fulton*, the Court held that when a state refuses to extend a system of discretionary individualized exemptions to a plaintiff, it is the refusal to grant the exemption that is subject to strict scrutiny, not the underlying policy itself. *Fulton*, 141 S. Ct. at 1881. There, the City attempted to defend its refusal to grant the plaintiffs an exemption from its general non-discrimination policy by arguing that the interests underlying the policy were compelling. The Supreme Court rejected this argument, holding that the relevant question was "not whether the City has a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in *denying an exception to [the plaintiff]*." *Id.* (emphasis added). Likewise here, the relevant question is whether Defendant has a compelling interest in refusing to grant Plaintiffs an exemption from the Knox-Keene Act's abortion coverage requirement. The question is not whether DMHC has a compelling government interest in enforcing the state law abortion coverage requirements generally.

In short, the Court should apply strict scrutiny to the Director's refusal to grant Plaintiffs an exemption from the Knox-Keene abortion coverage requirement—not to the underlying policy requiring health plans to cover abortions.

## II.    THE DMHC DIRECTOR'S ACTIONS SATISFY STRICT SCRUTINY

The Director's refusal to grant an exemption to Plaintiffs survives strict scrutiny. *See* Def.'s Mem. Supp. Mot. Summ J. (Def.'s Mot.) at 7-16, ECF No. 110; Def.'s Mem. Opp'n Pls.' Mot. Summ. J. (Def.'s Opp'n) at 5-10, ECF No. 121. To satisfy strict scrutiny, the Director must show that she acted in pursuit of compelling government interests and that her actions were

---

[1] To the extent that Plaintiffs distinguish between the Knox-Keene Act itself and the DMHC Director's interpretation and application of the Act, this is a distinction without a difference. The Director's letters simply reiterated the Knox-Keene requirement; indeed, they constitute the "only legally tenable interpretation" of California law, as acknowledged by the California Court of Appeal and Ninth Circuit. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, at 752 n.10 (9th Cir. 2020) (citing *Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard,* 38 Cal. App. 5th 421, 426 (2019), *rev. denied* (Nov. 20, 2019)). The letters themselves did nothing to change the legal obligations of the health plans.

4

narrowly tailored to achieve those interests. *See Fulton,* 141 S. Ct. at 1877, 1881; *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-32 (1993). The Director satisfies both prongs and Plaintiffs' arguments to the contrary are unavailing.

### A. DMHC Has a Compelling Interest in Limiting Knox-Keene Exemptions to Entities It Regulates and Plaintiffs' Arguments to the Contrary Are Unconvincing

Plaintiffs' arguments that the Director's compelling government interests are not sufficient to satisfy strict scrutiny are unconvincing. First, the Director's compelling interest in limiting exemptions to regulated entities to prevent a flood of objections from enrollees regarding any aspect of healthcare is *not* speculative; Defendant has cited multiple lawsuits demonstrating the myriad of healthcare services to which individuals have objected. Pls.' Opp'n at 9-10, ECF No. 122. Second, Plaintiffs conflate third-party benefit with third-party harm and fail to provide any support for their argument that avoiding third-party harm is not a compelling government interest. *Id.* at 10-11. Finally, the Director has never argued that state law overrides the protections of the U.S. Constitution. *Id.* at 11-13.

First, Plaintiffs argue that Defendant's compelling government interest is based on mere speculation, and goes beyond the issue before the Court: an abortion exemption. Pls.' Opp'n at 9-10, ECF No. 122. However, the Director has provided numerous non-speculative examples where plaintiffs have objected to the provision of various healthcare services, including, for example, objections related to contraception, vaccinations, blood transfusions, end-of-life care, and gender-affirming care.[2] And, if the Director were to allow exemption requests from non-

---

[2] *See* Def.'s Mot. at 9-10, ECF No. 110 (citing *Dr. A v. Hochul*, 142 S. Ct. 552 (2021) (objections to COVID-19 vaccine requirements because fetal cells were used in vaccine production); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (religious objections to providing certain types of contraceptive coverage for employees); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (religious objections to mandatory COVID-19 vaccine policy); *Child's Healthcare Is a Legal Duty, Inc. v. Min De Parle*, 212 F.3d 1084, 1088 (8th Cir. 2000) (religious objections to all medical care because religion is the "sole means of healing"); *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113 (D.N.D. 2021), *judgment entered sub nom. Religious Sisters of Mercy v. Cochran*, No. 3:16-CV-00386, 2021 WL 1574628 (D.N.D. Feb. 19, 2021) (religious objections to performing or covering gender-transition procedures); *Robinson v. Child.'s Hosp. of Bos.*, No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016) (religious objections to influenza vaccination); *Haines v. N.H. Dep't of Health & Hum. Servs.*, No. 08-CV-505-SM, 2009 WL 1307203 (D.N.H. Apr. 28, 2009) (religious objections to mental health screening).

DMHC-regulated entities like Plaintiffs related to abortion coverage, there is no basis on which DMHC could then refuse to consider exemption requests from other non-DMHC-regulated subscribers with religious objections. Thus, the Director's compelling government interest is solidly grounded in non-speculative concerns about the consequences of granting Plaintiffs' exemption requests.

Plaintiffs also once again argue that the existing statutory exemptions undermine Defendant's compelling government interests. *See* Pls.' Opp'n at 10, ECF No. 122 (arguing that existence of provisions allowing Plans to exclude coverage for contraception and infertility treatment in products for religious employers shows that "the State can indeed advance its interests while still accommodating religion"). But, as the Director has explained, these statutory exemptions do not allow for *non-DMHC-regulated entities* (e.g. employers) to seek exemptions directly from DMHC. Def.'s Opp'n at 7-9, ECF. No. 121. Rather, they require DMHC-regulated Plans to provide these coverage exclusions when sought by a religious employer-subscriber. Thus, the exemptions do not undermine the Director's concerns that there will be a tidal wave of exemption requests from the 26 million enrollees and subscribers, who up until this point have not been able to seek exemption requests directly from the Department.

Second, Plaintiffs conflate the provision of a third-party benefit with third-party harm. *See* Pls.' Opp'n at 10-11, ECF No. 122 (arguing that a third-party benefit does not justify a burden on free exercise). The Director's compelling interest is not in ensuring there is a benefit to third parties, but rather it is in protecting third parties from the harm that would result from losing coverage for critical medically necessary healthcare services outside of the process by which coverage decisions are made, without the protections ordinarily afforded by that process. *See* Def.'s Mot. at 11-12, ECF No. 110. As explained above, the existence of categorical and individualized exemptions from the Knox-Keene Act for DMHC-regulated Plans does not undermine the Director's compelling interests in refusing to extend the exemption process to non-DMHC-regulated entities. This is because Plans request exemptions by submitting plan product documentation which shows the changes to the documents' language in redline. Def.'s Statement

6

of Undisputed Material Facts (SUF) 2, ECF No. 110-1.  This enables DMHC staff to review the modifications to the plan products to ensure that the rest of the product complies with the requirements of state law.  DMHC does not review exemption requests from non-regulated entities like Plaintiffs because doing so would prevent the agency from being able to review and approve the product to which the exemption would apply.  *See* Def.'s Mot. at 11-12, ECF No. 110.

Finally, Plaintiffs argue that "the state's interest in complying with state law cannot override its obligation to comply with the U.S. Constitution."  Pls.' Opp'n at 11, ECF No. 122.  To be clear, the Director has never argued that state law overrides the protections of the U.S. Constitution.  The Director has never even said that Plaintiffs are not entitled to an exemption from the requirements of state law, only that any exemption request must come from a DMHC-regulated Plan.  In fact, the Director has made clear that she would consider an exemption request from a DMHC-regulated Plan for a product that comports with Plaintiffs' religious beliefs.  Def.'s SUF 10.  The issue is not whether Plaintiffs are entitled to be able to obtain a product that comports with their religious beliefs, but rather whether the Director is obligated to consider a request directly from Plaintiffs without a DMHC-regulated Plan involved and at the table.  The Director has never received a request for an exemption from a Plan for a product that comports with Plaintiffs' religious beliefs.  And in the absence of an exemption request from a Plan for a product that comports with Plaintiffs' religious beliefs, the Director has a compelling interest in not expanding the Plan exemption process set out in the Knox-Keene Act to non-DMHC-regulated entities like Plaintiffs.

**B.   DMHC's Exemption System is Narrowly Tailored**

In arguing that the Director's actions were not narrowly tailored, Plaintiffs focus on the wrong conduct.  Pls.' Opp'n at 13-15, ECF No. 122.  As discussed above, the pertinent conduct is the Director's refusal to extend the existing system of exemptions to Plaintiffs.  The Director's letters simply restated existing law and Plaintiffs have never challenged the underlying laws that are the basis for the abortion coverage requirement.  *See Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard,* 38 Cal. App. 5th 421, 426 (2019), *rev. denied* (Nov. 20, 2019) (holding that the

letters simply restated existing law requiring abortion coverage). Accordingly, Plaintiffs' argument that the Director's actions were not narrowly tailored because issuing the letters increased the likelihood it would have to review additional exemption requests has no merit. Pls.' Opp'n at 13-15, ECF No. 122. In issuing the letters, the Director withdrew inadvertent approvals of plan products that had unlawful abortion exclusions, including vague and confusing terminology that left consumers without a clear picture of what is actually covered by their plan product. The subscribers impacted by the withdrawal of these inadvertent approvals were overwhelmingly employed by non-religious entities. *See* Riess Decl. Ex. V (Letter from DMHC to HHS OCR) at 4 n.6, ECF No. 110-25; (of the 28,000 individuals enrolled in plan products that did not comply with the Knox-Keene abortion coverage requirement, 95 percent were affiliated with non-religious employers). However, because DMHC is not generally provided with information about what individuals or employers subscribe to particular plan products, it was impossible for DMHC to withdraw these inadvertent approvals only for subscribers who were not religious employers. DMHC's only options were leaving unlawful products in the marketplace or informing the Plans that it had inadvertently approved Plan products with unlawful abortion exclusions.

  **C.** **To the Extent the Court Concludes Defendant's Actions Do Not Survive Strict Scrutiny, the Remedy Should Be No More Burdensome than Necessary to Provide Relief to Plaintiffs**

To the extent that the Court concludes that the Director's actions do not survive strict scrutiny, the appropriate relief is an injunction requiring the Director to grant Plaintiffs' exemption request for a plan product that excludes abortion in all instances except to save the life or health of the pregnant person. *See* Def.'s Opp'n at 10-14, ECF No. 121. Such an order would then enable Plaintiffs to request that a Plan create a product for Plaintiffs that is in line with Plaintiffs' religious beliefs.

As laid out in Defendant's opposition, the ultimate remedy provided to the plaintiff in *Fulton* is instructive here. Def.'s Opp'n at 10-14, ECF No. 121. In *Fulton*, the district court ordered that "[t]he City of Philadelphia . . . [is] PROHIBITED from refusing to contract with CSS for the provision of foster care services unless [CSS] agrees to certify same-sex [or unmarried]

couples as foster parents." *Fulton v. City of Phila.*, No. 2:18-cv-02075-PBT, ECF No. 79 at 4 (E.D. Pa. Oct. 1, 2021) (internal citations omitted). Thus, like *Fulton*, the appropriate remedy here is an order requiring the Director to grant Plaintiffs an exemption for a product that comports with their religious beliefs about abortion. The following proposed language would remedy Plaintiffs' alleged harm: "DMHC, its Director, and all those acting in concert with them, are PROHIBITED from refusing to grant Plaintiffs' exemption request for a health plan that excludes abortion coverage in all instances except to save the health and life of the pregnant person." Such an injunction would provide a guarantee to a Plan that any such plan product would be lawful if made available for Plaintiffs. Plaintiffs could then go to any of the 94 full service health plans regulated by DMHC, inform them of this Court's order, and ask the Plan to create such a product for Plaintiffs. Any broader relief would be in excess of what is necessary to remedy Plaintiffs' alleged harm.

### III. DMHC's Conduct Does Not Violate the Equal Protection Clause

Plaintiffs' Equal Protection claim should be dismissed. Plaintiffs continue to fail to prove the core elements of an Equal Protection claim: that they were treated differently from others who are similarly situated, and that the different treatment was based on their membership in a protected group. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (Equal Protection Clause requires "that all persons similarly situated should be treated alike."). Plaintiffs have failed to identify any evidence supporting their argument that they are similarly situated to the health plan that obtained an exemption from the Knox-Keene requirement to cover abortion. In their opposition, Plaintiffs argue that DMHC's regulatory authority "affects" plan purchasers and enrollees as well as regulated entities. Pls.' Opp'n at 15, ECF No. 122. The Director does not dispute this point, but this fact does not prove that Plaintiffs are similarly situated to a Plan for purposes of an Equal Protection claim. Plaintiffs additionally assert—with no citation to any evidence—that the Director refused to grant them an exemption based on the substance of their religious beliefs. *Id.* However, the record contains no evidence to support this assertion, nor to refute the evidence the Director has submitted that she refused to grant Plaintiffs an exemption to the Knox-Keene Act because they are not subject to the Act's requirements and are not an entity

9

regulated by the DMHC Director.  Def.'s SUF 12.  Plaintiffs' efforts to bootstrap an Equal Protection argument to their Free Exercise claim are unavailing, and Defendant respectfully requests that the Court dismiss the Equal Protection claim with prejudice.

## CONCLUSION

Defendant respectfully requests that this Court grant Defendant's Motion for Summary Judgment and dismiss Plaintiffs' Second Amended Complaint with prejudice.  If this Court grants Plaintiffs' Motion for Summary Judgment with respect to Plaintiffs' Free Exercise claim, Defendant respectfully requests that the remedy be limited to requiring the Director to approve Plaintiffs' exemption request seeking approval of a plan product that excludes abortion in all instances except to save the life or health of the pregnant person.

Dated:  May 13, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
KARLI EISENBERG
Supervising Deputy Attorney General

*/s/ Melissa Riess*

MELISSA RIESS
HAYLEY PENAN
Deputy Attorneys General
*Attorneys for Defendant Mary Watanabe, in her official capacity as Director of the Department of Managed Health Care*