Jeremiah Galus (Arizona Bar No. 030469)*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@ADFlegal.org

Jacob E. Reed (Ohio Bar No. 99020)*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
jreed@ADFlegal.org

*Admitted pro hac vice

Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678
(916) 960-2211
alex@medinamckelvey.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **FOOTHILL CHURCH, CALVARY CHAPEL CHINO HILLS, and SHEPHERD OF THE HILLS CHURCH,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARY WATANABE, in her official capacity as Director of the California Department of Managed Health Care,**<br><br>Defendant. | 2:15-CV-02165-KJM-EFB<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: SCOPE OF INJUNCTION**<br><br>Dept:   Courtroom 3, 15th Fl.<br>Judge:  Hon. Kimberly J. Mueller |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii
INTRODUCTION ........................................................................................................................ 1
ARGUMENT ................................................................................................................................ 2
    I.     The Churches are entitled to a permanent injunction............................................. 2
    II.    The permanent injunction should halt the ongoing constitutional violation and seek to remedy the harm caused by the August 22, 2014, letter. ..................... 2
        A.    The Churches must be allowed to obtain a plan that provides coverage consistent with their religious beliefs about abortion. ................. 2
        B.    The injunction should extend to all employers with sincere religious objections to providing abortion coverage. ................................................. 5
        C.    The injunction should also require the State to notify health plans about the religious exemption. ................................................................... 7
CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

**CASES**

*Amone v. Aveiro*,
  No. 04-00508, 2005 WL 8131765 (D. Haw. June 17, 2005) ........................................................ 5

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) .................................................................................................... 6

*Doe v. Reed*,
  561 U.S. 186 (2010) ............................................................................................................. 6, 9

*East Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .................................................................................................... 6

*eBay, Inc. v. MercExchange, LLC*,
  547 U.S. 388, (2006) ............................................................................................................... 2

*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................................................................................ 2

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ............................................................................................................ 7

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) .................................................................................................. 5

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
  941 F.2d 970 (9th Cir. 1991) .................................................................................................... 3

*Lee v. California Buchers' Pension Trust Fund*,
  No. C-94-2010 EFL, 1996 WL 382943 (N.D. Cal. June 26, 1996) .......................................... 5

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .................................................................................................... 2

*Missionary Guadalupanas of Holy Spirt, Inc. v. Rouillard*,
  251 Cal. Rptr. 3d 1 (Cal. Ct. App. 2019) ................................................................................. 5

*National Association of Wheat Growers v. Becerra*,
  468 F. Supp. 3d 1247 (E.D. Cal. 2020) .................................................................................... 2

*Rosemond v. Markham*,
  135 F. Supp. 3d 574 (E.D. Ky. 2015) ....................................................................................... 5

*Sammartano v. First Judicial District Court*,
  303 F.3d 959 (9th Cir. 2002) .................................................................................................... 5

*Sharp v. Weston*,
  233 F.3d 1166 (9th Cir. 2000) ........................................................................................... 3, 4, 7

*Skyline Wesleyan Church v. California Department of Managed Health Care*,
  968 F.3d 738, (9th Cir. 2020) .................................................................................................. 5

*Thomas v. Review Board. of Indiana Employment Security Division*,
  450 U.S. 707 (1981) ................................................................................................................ 5

*Trump v. International Refugee Assistance Project*,
  137 S. Ct. 2080 (2017) ............................................................................................................ 7

**STATUTES**

California Health & Safety Code

    1342(b) ................................................................................................................................ 4, 10

    1342(e) ..................................................................................................................................... 4

    1342(h) ..................................................................................................................................... 4

    1343(b) .................................................................................................................................. 4, 8

    1344(a) .................................................................................................................................. 4, 8

    1346(a)(4) ................................................................................................................................ 4

    1367(i) ................................................................................................................................... 4, 8

    1367.25(c) ................................................................................................................................ 4

    1374.21(a) .............................................................................................................................. 10

    1374.22 .................................................................................................................................. 10

42 U.S.C. § 1988 ................................................................................................................................ 2

# INTRODUCTION

On August 22, 2014, the California Department of Managed Health Care did something no State had done before: it mandated that health plans cover all legal abortions without providing for a religious exemption. This caused employers with sincere religious objections to abortion, including the Plaintiff Churches, to immediately cover abortion in their employee healthcare plans. It also eliminated an entire market of existing abortion exclusions and limitations designed to accommodate religious objections to abortion. And to make things worse, the DMHC's letter instructed health plans that they could insert objectionable abortion coverage into plans *without even telling the objecting employer*.

Over eight years later, this Court has held that the abortion-coverage requirement violates the Churches' rights under the Free Exercise Clause. The question now is how to remedy that constitutional violation. Given the history and facts, a permanent injunction is warranted and should include at least the following features.

*First*, the injunction must ensure the Churches and similarly situated employers can in fact obtain a healthcare plan that limits or excludes abortion coverage consistently with their religious beliefs, as they had before the August 22, 2014, letter was issued. This will require a meaningful religious exemption that both allows employers to request their desired plan and requires the health plans to provide it.

*Second*, the injunction should instruct the DMHC to notify all health plans in writing about the religious exemption and to tell the health plans that they must inform their subscribers of the exemption's availability. This will help undo the harm caused by the August 2014 letter and help restore the status quo as it existed before the constitutional violation.

*Third*, the injunction should order the DMHC to post the religious-exemption letter on its website to ensure that all health plans and interested parties are aware of the exemption. This will counteract any confusion that might otherwise result from the August 22, 2014, letter, which remains posted on the DMHC's website and does not mention a religious exemption.

*Finally*, the injunction must prohibit the DMHC from enforcing the abortion-coverage requirement in any way against a health care plan provided or offered to the Churches or other

employers with sincere religious objections to providing abortion coverage.

As detailed below, the Court has the power to grant all the requested relief.

# ARGUMENT

## I. The Churches are entitled to a permanent injunction.

For a permanent injunction, a plaintiff must establish (1) success on the merits; (2) an irreparable injury; (3) that remedies available at law, such as monetary damages, are inadequate; (4) that the balance of hardships support an injunction; and (5) that the public interest would not be disserved by an injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "When the government is a party, the balance of equities and public interest factors merge." *Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1265 (E.D. Cal. 2020).

Here, the Churches are entitled to a permanent injunction. They have succeeded on the merits of their free-exercise claim. *See* ECF No. 129 (granting summary judgment for the Churches). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and the remedies available at law cannot compensate for that ongoing injury. The government also has no interest in enforcing an unconstitutional law, and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).[1]

## II. The permanent injunction should halt the ongoing constitutional violation and seek to remedy the harm caused by the August 22, 2014, letter.

Any permanent injunction should be crafted so that the Churches' healthcare plans do not have to cover abortion in violation of the Churches' beliefs and that those affected by the August 22, 2014, letter are notified of the Court's ruling and the availability of a religious exemption.

### A. The Churches must be allowed to obtain a plan that provides coverage consistent with their religious beliefs about abortion.

The starting point for any permanent injunction is that it must be "tailored to remedy the specific harm alleged," *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir.

---

[1] As prevailing parties, the Churches are also entitled to attorney's fees under 42 U.S.C. § 1988. The Churches therefore intend to file a motion for attorney's fees at the appropriate time in accordance with Fed. R. Civ. P. 54(d) and Local Rule 293.

1991), and "aimed at curing the underlying constitutional violation," *Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir. 2000). Based on those guiding principles, any injunction must guarantee the Churches do not have to cover abortion in their healthcare plans in violation of their beliefs.

At a minimum, then, the injunction should order the DMHC to adopt and implement a religious exemption that (i) allows the Churches to request a plan that excludes or limits abortion coverage consistently with their religious beliefs, and (ii) requires health plans to provide the Churches with their requested plans. Relatedly, the injunction must prohibit the DMHC from rejecting or otherwise withholding regulatory approval of the requested plans—that is, it must enjoin the DMHC from enforcing the abortion-coverage requirement. This would create a meaningful religious exemption, finally bringing an end to constitutional violations that have been ongoing for over eight years.

The Court can grant the requested relief. "Once a constitutional violation has been found, a district court has broad powers to fashion a remedy." *Sharp*, 233 F.3d at 1173. Here, the proposed injunction would merely instruct the DMHC to take actions that the California Legislature has already empowered the agency to take. Indeed, the DMHC has broad statutory authority to grant exemptions from any of the Knox-Keene Act's requirements, including the abortion-coverage requirement. *See* Cal. Health & Safety Code §§ 1343(b), 1344(a), and 1367(i). And the Act expressly requires the DMHC to consider the interests of plan subscribers when enforcing the law or implementing any rules or regulations. *See, e.g.*, Cal. Health & Safety Code § 1342(b) ("Ensuring that subscribers . . . are educated and informed of the benefits and services available . . . ."); *id*. § 1342(e) ("Promoting effective representation of the interests of subscribers . . . ."); *id*. § 1342(h) ("Ensuring that subscribers . . . have their grievances expeditiously and thoroughly reviewed by the department."); *id*. § 1346(a)(4) (empowering the director to "[s]tudy, investigate, research, and analyze matters affecting the interests of . . . subscribers"). The proposed injunction, if adopted, would order the DMHC to exercise its already-existing authority to exempt plan subscribers like the Churches who have sincere religious objections to providing coverage for abortion. And by guaranteeing that the Churches once again have access to plans accommodating

their religious beliefs, the injunction would simply restore the status quo as it existed before the constitutional violation (i.e., before the August 22, 2014, letter).

The proposed injunction is also supported by the religious exemption set forth in the Knox-Keene Act's contraceptive mandate—an exemption that the DMHC is already familiar with and that has proven workable. That exemption allows an employer to request a healthcare plan without coverage for "contraceptive methods that are contrary to the religious employer's religious tenets." Cal. Health & Safety Code § 1367.25(c). And, if requested, the exemption states that the plan "*shall* be provided." *Id*. (emphasis added). In the same way, the State can adopt an exemption from the abortion-coverage requirement that requires health plans to provide the Churches with their requested plans, ensuring that the constitutional violation is remedied. As this Court recognized, the DMHC can in fact "direct[] the religious claimant's plan to submit a revised evidence of coverage document comporting with the religious claimant's belief to the DMHC for approval." ECF No. 129 at 20.

Unlike the Churches' proposed injunction, the State's earlier proposal has no precedent at all and would not even "cur[e] the underlying constitutional violation." *Sharp*, 233 F.3d at 1173. The State has argued that the Court's injunction should only require the DMHC to exempt plan language "that excludes abortion in all instances except to save the life *or health* of the pregnant person." Def. Opp'n to Pls' Mot. for Summ. J. at 10, ECF No. 121 ("Def. Opp'n") (emphasis added). But such an "exemption" would not accommodate the Churches' religious beliefs, which forbid abortion in all circumstances unless necessary to save the mother's life. Lewis Decl. ¶ 9, ECF No. 111-3; Rutherford Decl. ¶ 8, ECF No. 111-4; Hibbs Decl. ¶ 9, ECF No. 111-5.

The State's suggestion that the injunction should forbid plans from using "vague and confusing terms" like "elective" or "voluntary" abortions, Def. Opp'n 13, is also wrong. For one thing, health plans used those terms for many years before August 2014, showing that they are in fact understandable and workable. For another, the DMHC cannot reject plans that satisfy an employer's religious beliefs simply because secular government officials think the terms agreed upon by the employer and health plan are "confusing." The government cannot dictate what does or does not satisfy an employer's religious beliefs. *See Skyline Wesleyan Church v. California*

*Dep't of Managed Health Care*, 968 F.3d 738, 750 (9th Cir. 2020) (court can issue an injunction that bars the DMHC from declining approval for a plan "that comports with [a church's] religious beliefs"). Nor may it adopt a rule denouncing certain beliefs as not "acceptable, logical, consistent, or comprehensible to others." *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981).

The better approach, and one that would truly remedy the constitutional violations, is to require the DMHC to implement a meaningful religious exemption that guarantees those with sincere religious objections to abortion can obtain a plan with language satisfying their beliefs.

### B. The injunction should extend to all employers with sincere religious objections to providing abortion coverage.

The State's enforcement of the abortion-coverage requirement infringes not just the Churches' rights, "but also the interests of other people." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)). Other employers have also been forced to cover abortions in violation of their sincerely held religious beliefs. *See, e.g.*, *Missionary Guadalupanas of Holy Spirt, Inc. v. Rouillard*, 251 Cal. Rptr. 3d 1 (Cal. Ct. App. 2019) (order of Catholic nuns forced to cover abortion). Because the Churches' complaint seeks relief for similarly situated employers, the injunction should protect them too. *See* Second Am. Compl., Prayer for Relief, ECF No. 72.[2]

This Court has held that the abortion-coverage requirement fails strict scrutiny, concluding that "[n]one of the [the State's] interests are sufficiently compelling" and that the DMHC's "rigid approach" is not "narrowly tailored." *See* ECF No. 129. Yet the State seems to think others besides the Churches should continue to suffer under it. Indeed, the State has argued that any injunction must be limited to the Churches and should not extend to other employers

---

[2] Courts, including the Supreme Court, consistently endorse such relief. *E.g.*, *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("We leave the injunctions entered by the lower courts in place with respect to respondents *and those similarly situated*.") (emphasis added); *Lee v. Cal. Butchers' Pension Trust Fund*, No. C-94-2010 EFL, 1996 WL 382943, at *2 (N.D. Cal. June 26, 1996) (enjoining defendant "from discriminating against plaintiff Lee or any other similarly situated plan participant"); *Amone v. Aveiro*, No. 04-00508, 2005 WL 8131765, at *1 (D. Haw. June 17, 2005) (entering permanent injunction against government in favor of plaintiff, "individually, and on behalf of all persons similarly situated"); *Rosemond v. Markham*, 135 F. Supp. 3d 574, 590 (E.D. Ky. 2015) (enjoining the enforcement of "laws in an unconstitutional manner against [Plaintiff] or others similarly situated").

harmed by the coverage mandate. Def. Opp'n 11–12. But this Court need not turn a blind eye to constitutional violations. "[T]here is 'no general requirement that an injunction affect only the parties in the suit.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1169–70 (9th Cir. 1987)). "The equitable relief granted by the district court is acceptable where it is 'necessary to give prevailing parties the relief to which they are entitled.'" *Id*. (quoting *Bresgal*, 843 F.2d at 1170–71). And as noted, the Churches have requested relief for similarly situated employers—i.e., those with sincere religious objections to providing abortion coverage.

Despite the Churches' requested relief, the State contends this lawsuit should be treated as a limited as-applied challenge because the Churches have argued that the coverage requirement is unconstitutional as applied to them. *See* Def. Opp'n 11–12. But this misunderstands the scope of the Churches' argument and how courts interpret facial and as-applied challenges. In *Doe v. Reed*, 561 U.S. 186, 194 (2010), the Supreme Court explained that a claim can have "characteristics of both" a facial and as-applied challenge. Thus, the Churches' free-exercise claim here is "'as-applied' in the sense that it does not seek to strike the [coverage requirement] in all its applications." *Id*. But the claim is also "'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all [employers with sincere religious objections to abortion coverage]." *Id*. In any event, "[t]he label is not what matters." *Id*. "The important point is that [the Churches'] claim and relief that would follow"—an injunction barring the DMHC from enforcing the abortion-coverage requirement against plans provided to employers with sincere religious objections to abortion—"reach beyond the particular circumstances of these plaintiffs." *Id*.

Even so, it is hard to comprehend why the State would even resist an injunction that extends to others who have had their constitutional rights violated. The DMHC has expressed concern that exempting the Churches could lead to a "flood" of other exemption requests, which they say would require case-by-case reviews and cause their operations to "grind to a halt." Def. Memo. of P. & Auth. in Supp. of Mot. for Summ. J. at 10, ECF No. 110. Yet a narrow injunction would just exacerbate that purported problem; a broader injunction, in contrast, would solve it.

Regardless, the State cannot legally withhold a religious exemption from those who need it, given the Supreme Court's ruling in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). As the Court there explained, "[t]he creation of a system of exceptions" undermines any assertion that a challenged law "can brook no departures." *Id*. at 1882. Because the DMHC can exempt any plan or class of plan contracts from the abortion-coverage requirement for secular reasons, *see* Cal. Health & Safety Code §§ 1367(i), 1343(b), 1344(a), the Free Exercise Clause prohibits it from enforcing that requirement against plans provided to employers with sincere religious objections. *See Fulton*, 141 S. Ct. at 1882 (system of exceptions undermines the government's compelling interest and fails narrow tailoring).

For the same reasons the State cannot justify violating the Churches' constitutional rights, it cannot justify violating the rights of those with similar religious beliefs. The Court's permanent injunction should say so. Anything less will lead to piecemeal litigation and be inconsistent with basic principles of justice and fairness.

### C. The injunction should also require the State to notify health plans about the religious exemption.

Along with violating the constitutional rights of the Churches and others, the DMHC's actions eliminated an entire market of abortion coverage exclusions and limitations for religious organizations. Because undoing this harm will help remedy the constitutional violations, the permanent injunction should also require the DMHC to notify all health plans—in writing—of the religious exemption and require the DMHC to instruct the health plans to notify their subscribers of the exemption's availability.

This, too, is within Court's "broad powers to fashion a remedy." *Sharp*, 233 F.3d at 1173. As the Supreme Court has explained, the proper scope of an injunction depends "as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). And here, the equities require more than telling the DMHC that it cannot reject certain plan language. That is because the August 22, 2014, letter demanded that health plans *immediately* comply with the coverage mandate and advised them that including abortion exclusions or limitations in *any* of their plans would violate state law and the

California Constitution. Galus Decl. Ex. 1 at 1–2, ECF No. 111-7. Predictably, all health plans complied with the coverage mandate right away, causing the market of abortion coverage exclusions and limitations to disappear overnight. Over eight years later, the DMHC continues to post the August 22, 2014, letter on its website, perpetuating the mistaken belief that health plans cannot accommodate religious objections to abortion coverage. *See* DMHC, Laws & Regulations, Director's Letters and Opinions, https://perma.cc/648D-BM8T. As noted, the letter instructs all health plans that they must provide coverage for all legal abortions and does not mention any possible religious exemption.

What's more, the DMHC told health plans that they did not even have to notify their subscribers when adding abortion coverage to their plan contracts, advising the health plans that they could just "omit any mention of coverage for abortion services." Galus Decl. Ex. 1 at 2, ECF No. 111-7. Some health plans, including those that insured the Churches, followed this advice and never told those affected about the change. *See* Blue Shield Amendment Filing No. 3171.1 [Galus Decl. Ex. 3 at 1–3, ECF No. 111-9] (explaining it was "remov[ing] references to abortion services" in plans offered to religious groups); Aetna Summ. Desc. of Plan Org. and Op. [Galus Decl. Ex. 4 at 1, ECF No. 111-10] (explaining it "opted to remove reference" to abortion "[s]ince abortion is a basic health care service"). So some employers *still* may not know they are providing abortion coverage in violation of their religious beliefs.

The injunction should remedy this injustice. The DMHC was wrong—both ethically and legally—to tell health plans they did not have to notify their subscribers. The Knox-Keene Act states that "changes in coverage . . . shall not become effective unless the plan has delivered in writing a notice indicating the change or changes." Cal. Health & Safety Code § 1374.21(a). It further provides that the written notice to the "group contract holder" must "describe . . . any changes in the plan design or change in benefits" and must "specify . . . the reason or reasons" for the changes. *Id.* § 1374.22. But rather than uphold this aspect of state law, the DMHC—through the August 2014 letter—encouraged health plans to violate it. This deprived affected plan subscribers of their rights and tried to hide the constitutional violation.

To remedy this aspect of the harm, the Court's injunction should require the DMHC to

Plaintiffs' Supplemental Brief re: Scope of Injunction (2:15-CV-02165-KJM-EFB)
8

send another letter to health plans that: (i) tells them there is now a religious exemption from the abortion-coverage requirement; and (ii) directs them to notify their subscribers of the availability of the religious exemption. *See* Cal. Health & Safety Code § 1342(b) (instructing the DMHC to make sure "that subscribers and enrollees are educated and informed of the benefits and services available in order to enable a rational consumer choice in the marketplace"). After all, an exemption serves no purpose if no one knows it exists or knows how to avail themselves of it.

## **CONCLUSION**

For all these reasons, the Churches respectfully request that the Court remedy the ongoing constitutional violations by granting a permanent injunction with the following language:

IT IS HEREBY ORDERED THAT:

1. Defendant implement a religious exemption from the abortion-coverage requirement set out in the August 22, 2014, letter that:
   (a) Allows Plaintiffs and other employers with sincere religious objections to providing abortion coverage to request a health care service plan contract without coverage for abortion services that conflict with the employer's religious beliefs; and
   (b) Requires health plans to provide a contract without coverage for such abortion services if requested.
2. Defendant issue a written letter to California health plans within 14 days that:
   (a) Informs the health plans of the religious exemption from the abortion-coverage requirement; and
   (b) Directs the health plans to notify their subscribers of the availability of the religious exemption.
3. Defendant publish the religious exemption letter on the Department of Managed Health Care's website, placing it on the same webpage where the Department posts the August 22, 2014, letter.
4. Defendant, her agents and employees, all persons or entities in privity with her, and anyone acting in concert or participation with her are permanently enjoined from

enforcing the abortion-coverage requirement set out in the August 22, 2014, letter against any health care plan provided or offered to Plaintiffs or other employers with sincere religious objections to providing abortion coverage.

Dated: September 23, 2022

Respectfully submitted,

s/ *Jeremiah Galus*
Jeremiah Galus (Arizona Bar No. 030469)*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@ADFlegal.org

Jacob E. Reed (Ohio Bar No. 99020)*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4718
jreed@ADFlegal.org

Alexander M. Medina (California Bar No. 222015)
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678
(916) 960-2211
alex@medinamckelvey.com

*Admitted *pro hac vice*
*ATTORNEYS FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2022, service of the foregoing Plaintiffs' Supplemental Brief re: Scope of Injunction was made by way of the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 23, 2022                    s/ *Jeremiah Galus*
                                             Jeremiah Galus
                                             *Attorney for Plaintiffs*