UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Foothill Church, et al., | Case No. 2:15-cv-02165 KJM EFB |
| Plaintiffs, | |
| v. | |
| Mary Watanabe, in her official capacity, as Director of California Department of Managed Healthcare, | ORDER |
| Defendant. | |

The court has summarized the background of this litigation in its previous order granting summary judgment for the plaintiff churches on their Free Exercise Clause claim and granting defendant's motion for summary judgment on plaintiffs' Equal Protection Clause claim. *See* Prev. Order (Aug 24, 2022) at 1–15, ECF No. 129.[1] Only a brief summary is necessary here.

In July 2018, counsel for plaintiffs Foothill Church, Calvary Chapel Chino Hills and Shepherd of the Hills Church (the Churches) sent a letter to California's Department of Managed Health Care (DMHC) requesting an exemption from the DMHC's abortion care coverage requirement. Riess Decl., Ex. Y (Letter from plaintiffs' counsel to DMHC) at 2, ECF No. 110-

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1

28. Defendant Mary Watanabe is the DMHC's Director. The Churches did "not object to providing coverage for abortions when absolutely necessary to save the life of the mother, but their religious beliefs prohibit them from covering elective abortions under any other circumstance . . . ." *Id.* at 3.[2] California's Attorney General responded, arguing the DMHC could only consider granting exemptions to health plans, not employers or other plan customers. Riess Decl., Ex. Z (Letter from DMHC's counsel to plaintiffs' counsel) at 2–3, ECF No. 110-29.

In August 2022, as noted, the court granted summary judgment for the Churches on their Free Exercise Clause claim, finding the state's Knox-Keene Act provides a "system of individual exemptions," *see Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1881 (2021) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)), and the DMHC's policy of not considering exemption requests from employers was not narrowly tailored to serve a compelling interest, Prev. Order (Aug. 24, 2022) at 17–20. The court directed the parties to file supplemental briefing on remedies and the scope of injunctive relief. *Id.* at 22. The parties have submitted supplemental briefs and responses. *See* Pls.' Suppl. Br., ECF No. 132; Def.'s Suppl. Br., ECF No. 135; Pls.' Resp. to Def.'s Suppl. Br. (Pls.' Resp.), ECF No. 136; Def.'s Resp. to Pls.' Suppl. Br. (Def.'s Resp.), ECF No. 137. The Churches seek a permanent injunction for themselves and all religious employers with sincere religious objections to providing abortion care coverage. Defendant Director Watanabe argues any injunction should apply only to the Churches and include coverage for abortion care services where the life or health of the pregnant person is at risk.

For the following reasons, the **court grants a permanent injunction** as described below.

I.  **DISCUSSION**

   A.  **Legal Standard for Permanent Injunction**

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such

---

[2] *See* Prev. Order (Aug. 24, 2022) at 9 n.11 (explaining why Churches' description of abortions they oppose as "elective" is unclear).

as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The court considers the totality of the circumstances when determining if a permanent injunction is appropriate. *La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014). For elements (3) and (4), "[w]hen the government is a party, the balance of equities and public interest factors merge." *Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F.Supp.3d 1247, 1265 (E.D. Cal. 2020).

In deciding on a remedy, "[a] district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). However, such relief must be "no more burdensome to the defendant[] than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). This is especially true when a court is directing a state agency to act in a certain manner. *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) ("Federalism principles make tailoring particularly important where . . . plaintiffs seek injunctive relief against a state or local government."). Likewise, "[a]n injunction must be narrowly tailored to remedy the specific harm shown." *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976); *see also Lamb-Weston, Inc.*, 941 F.2d at 974 (relief "must be tailored to remedy the specific harm alleged")); *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987) (if relief can be "structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown"). Indeed, an "overbroad injunction is an abuse of discretion." *Lamb-Weston, Inc.*, 941 F.2d at 974 (citations omitted).

A court must also "state the reasons why [the injunction] issued; state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). The court is obligated to craft an understandable and thus enforceable injunction, i.e., it cannot be "impermissibly vague." *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 685 (9th Cir. 1988); *see also Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[Rule 65(d)] was designed to prevent uncertainty and confusion on the part of those

1 faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood"); *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) (interpreting *Schmidt* to mean "the language of injunctions . . . [must] be reasonably clear so that ordinary persons will know precisely what action is proscribed").

  **B.**  **Analysis**

    **1.**  **Permanent Injunction**

    The Churches succeeded on the merits of their motion for summary judgment on their Free Exercise Clause claim and therefore satisfy the four-factor test entitling them to permanent injunctive relief on this claim. *See* Prev. Order (Aug. 24, 2022).

    First, the Churches have established irreparable injury by showing the State violated their rights guaranteed by the Free Exercise Clause by refusing to consider their exemption request. *See id.* at 16–20; *see also Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Second, the only relief plaintiffs request that is available and appropriate for this First Amendment violation is injunctive relief. *See* Second Am. Compl. at 31, ECF No. 71; Pls.' Suppl. Br. at 6. Third, the balance of hardships between the Churches and DMHC warrants injunctive relief. The right to Free Exercise is a core constitutional right. Furthermore, the Director of the DMHC may for "good cause" exempt a plan or plan contract from the statute's "basic health care services" requirement, *see* Cal. Health & Safety Code § 1367(i), and the Director may "waive any requirement of any rule or form where in [her] discretion that requirement is not necessary," *see id.* § 1344(a). There is no competing interest to balance. As this court previously observed, nothing in the Knox-Keene Act "appears to preclude the Director from fielding requests from religious claimants," or from "directing the religious claimant's plan to submit a revised evidence of coverage document comporting with the religious claimant's belief to the DMHC for approval." Prev. Order (Aug. 24, 2022). Finally, regarding the fourth factor, the public interest as described in the DMHC's motion for summary judgment would not be disserved by a permanent injunction. *See* Def.'s Mot. for Summ. J. (Def.'s MSJ) at 18–25, ECF No. 110. As noted above, this element

4

merges with the third when the government is a party. *Wheat Growers*, 468 F. Supp. 3d at 1265. But on its own, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

### 2.     Scope of Injunction

Finding a permanent injunction appropriate, the court considers the parties' competing arguments regarding the scope and contours of such an injunction.

The court first briefly reviews what its summary judgment order did and did not address. This litigation began in 2015, *see* Compl., ECF No. 1, when the Churches challenged the DMHC's decision to issue a letter to seven health plans directing the plans to remove any limitations or exclusions of abortion services from the health care coverage they offered, *see* Riess Decl., Ex. U (Aug. 22, 2014 letters from DMHC to seven plans), ECF No. 110-24. In mid-2018, after this court had submitted the State's third and final motion to dismiss for decision, the Churches asked the DMHC for a religious exemption. Riess Decl., Ex. Y (Letter from plaintiffs' counsel to DMHC) at 2. A few months later, the DMHC responded it could not consider requests from employers. Riess Decl., Ex. Z (Letter from DMHC's counsel to plaintiffs' counsel) at 2–3. After this court granted the DMHC's third motion to dismiss in 2019, *see Church v. Rouillard*, 371 F. Supp. 3d 742 (E.D. Cal. 2019), the Churches appealed. In 2021, the Ninth Circuit remanded for this court to consider plaintiffs' Free Exercise and Equal Protection claims in light of the Supreme Court's intervening decision in *Fulton v. City of Philadelphia, Pennsylvania*, *supra*. *See Foothill Church v. Watanabe*, 3 F.4th 1201 (9th Cir. 2021).

Considering the Churches' 2018 request and the decision in *Fulton*, this court granted summary judgment to the Churches on the narrow issue of whether the Free Exercise Clause obligated the DMHC to consider a 2018 request directly from the Churches to exempt them from the abortion care coverage requirement. *See generally* Prev. Order (Aug. 24, 2022). The court found the DMHC's "denial of the Churches' request for exceptions to accommodate their religious beliefs, based solely on the fact that those requests did not originate with a plan, was not narrowly tailored to serve a compelling interest." *Id.* at 21. The DMHC had articulated three

interests in refusing to consider requests from the Churches—(1) to prevent a flood of exemption requests from enrollees, (2) to prevent third-party harm to enrollees, which may occur if employers opted out of legally mandated healthcare coverage, and (3) to respect the California State Legislature's restrictions on DMHC's jurisdiction—none of which the court found compelling and narrowly tailored. *Id.* at 18.

In addressing these interests, the court did not conclude the Free Exercise Clause obligated the DMHC to grant all religious employers' requests. *See generally id.* Indeed, the court observed the DMHC "could reject outlandish requests on their merits," and wrote, "if the DMHC receives and approves an exemption request from a religious claimant . . . [the DMHC may request] a revised evidence of coverage document that includes the approved exemption." *Id.* In short, the court's order focused on the Churches' ability to present their exemption request to the DMHC and receive a timely response.

Mindful of its duty to tailor injunctive relief and burden defendant no more than necessary, *see Califano*, 442 U.S. at 702, the court turns to the parties' arguments on the scope of the injunction. The Churches ask the court to issue an injunction that, "at minimum," orders "the DMHC to adopt and implement a religious exemption that (i) allows the Churches to request a plan that excludes or limits abortion coverage consistently with their religious belief, and (ii) requires health plans to provide the Churches with their requested plans." Pls.' Suppl. Br. at 7.[3]

---

[3] To avoid issuing an "overbroad" injunction, *Lamb-Weston, Inc.*, 941 F.2d at 974, the court does not consider any requested relief broader than the Churches' "minimum" request and what is warranted under the court's previous order. Specifically, the court will not consider the Churches' request to extend the injunction to "all employers with sincere religious objections to providing abortion coverage," Pls.' Suppl. Br. at 9, or their request that defendant "notify health plans about the religious exemption," *id.* at 11.

Relatedly, the parties disagree regarding whether the Churches' challenge was facial or as applied, arguing this question impacts the scope of the remedy. *See id* at 10; Def.'s Suppl. Br. at 8. The court did not explicitly address this question in its summary judgment order but recognizes "a claim can have 'characteristics of both' a facial and as-applied challenge." Pls.' Supp. Br. at 10 (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)). As the Supreme Court also observed in *Doe*, "[t]he label is not what matters." *Doe*, 561 U.S. at 194. Here, on remand from the Ninth Circuit and in light of the Supreme Court's decision in *Fulton*, this court considers the parties' arguments regarding whether the DMHC's refusal to consider the Churches' exemption request was narrowly tailored to serve a compelling government interest. The court limits the relief accordingly. *See, e.g., Fulton v. City of Phila.*, No. 18-02075 (E.D. Pa. Oct. 1, 2021) (ECF

The Churches further argue the injunction "must prohibit the DMHC from rejecting or otherwise withholding regulatory approval of the requested plans—that is, it must enjoin the DMHC from enforcing the abortion-coverage requirement." *Id.* The Churches do not propose specific language for when abortion care services should be covered in their own health care plan contracts. *See generally id.*

Defendant urges the court to craft an exemption that "excludes abortion in all instances, except to protect the life or health of the pregnant person." Def.'s Suppl. Br. at 6. Defendant previously has not advanced arguments related to health, as discussed further below. For the purposes of its proposed remedy now, she defines preserving "health" as including:

> care intended to treat a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of medical attention could reasonably be expected to result in: (i) placing the health of the individual in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part; as determined by a medical professional providing care to the patient

*Id.* at 6 n.1. Defendant notes this definition is similar to the definition of health appearing in the Emergency Medical Treatment & Labor Act (EMTALA), 42 U.S. Code § 1395dd. She argues plaintiffs "have not been clear about what remedy they seek through this litigation, and not until plaintiffs' reply in support of summary judgment did they clarify that 'life or health' would not be sufficient." *Id.* at 8 n.10. Defendant contends "this is the first opportunity" she has had "to argue that [DMHC] has a compelling interest in requiring any exemption from the abortion requirement to include coverage for abortions needed to protect the life or health of the pregnant person." *Id.*

While the Churches did not fully spell out the exact coverage they requested in their Second Amended Complaint or summary judgment briefing,[4] defendant was made aware of what the Churches' religious beliefs proscribed no later than July 12, 2018. *See* Riess Decl., Ex. Y (Letter from plaintiffs' counsel to DMHC). Indeed, the relief the Churches requested in 2018 was

---

No. 79) at 4 (prohibiting [city defendants] "from refusing 'to contract with CSS for the provision of foster care services unless [CSS] agrees to certify same-sex [or unmarried] couples as foster parents.' *See Fulton*, 141 S. Ct. at 1882.").

[4] *See, e.g., supra* n.2.

7

for the DMHC to exempt the Churches' plan contracts from covering abortion care services except "when absolutely necessary to save the life of the mother," even in "circumstances of rape and incest." *Id*. at 2–3. In response, as noted, the State's Attorney General claimed the DMHC could only consider granting exemptions for religious employers to health plans, noting it had already done so once, not for employers or other plan customers. Riess Decl., Ex. Z (Letter from DMHC's counsel to plaintiffs' counsel) at 2–3. The State did not raise the compelling interest it now says it has in the health of a pregnant person, nor did the State advance this argument in its prior briefing. *See generally id*.[5]

Taking account of the procedural and litigation history reviewed above, this court is bound to issue an injunction "narrowly tailored to remedy the specific harm shown," *Bresgal*, 843 F.2d at 1170, and the specific harm identified is the DMHC's refusal to consider an exemption request from the Churches. *See* Prev. Order (Aug. 24, 2022) at 18–20; *see also Fulton*, 141 S. Ct. at 1881 (First Amendment requires courts to "scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants," so the question "is not whether the [defendant] has a compelling interest in enforcing its [challenged] policies generally, but whether

---

[5] To the extent defendant seeks to introduce new arguments regarding why she believes the DMHC may refuse the relief the Churches requested in the July 2018 letter or their reply brief, defendant could have sought leave of court to file an amended motion or opposition. *See* E.D. Cal. R. 230. Or, she could have filed a motion to alter or amend the judgment. *See* Fed. R. Civ. P. 59(e) (for filings submitted within 28 days of judgment); Fed. R. Civ. P. 60(b) (for filings submitted more than 28 days after judgment). In the Ninth Circuit, courts may consider a Rule 59(e) motion if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (citing *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009)). Courts may likewise consider a Rule 60(b) motion for final judgment relief in the case of "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," or "any other reason that justifies relief." *Platforms Wireless*, 617 F.3d at 1100 (quoting *Spectrum Worldwide*, 555 F.3d at 780). Because defendant did not file any such motions, the court does not consider the argument at this juncture. *See Sun-Tek Industries, Inc. v. Kennedy Sky Lites, Inc.*, 848 F.2d 179, 182 (Fed. Cir. 1988) ("a district court is without authority to alter or amend a judgment which is not subject to a timely motion under Rule 59(e)"); *Atchison, Topeka & Santa Fe Ry. Co. v. California State Bd. of Equalization*, 102 F.3d 425, 427 (9th Cir. 1996) ("A motion must be made in writing 'unless made during a hearing or trial.'" (quoting Fed. R. Civ. P. 7(b))).

it has such an interest in denying an exception to [plaintiff]" (internal quotation and citation omitted)).  Accordingly, the court declines to adopt either party's proposed injunction and instead orders defendant to consider requests and proposals from the Churches for abortion care coverage comporting with their religious beliefs, and to approve or provide feedback on the proposed coverage within 30 days.[6]  If and when defendant approves coverage language comporting with the religious employer's beliefs, the defendant must request the employer's plan submit an amended evidence of coverage document containing the approved language within 30 days.[7]

---

[6] The court notes the record appears to contain one example of a response the DMHC previously has provided with respect to coverage Anthem Blue Cross secured for its religious employers, without drawing objections.  *See* Galus Decl. Ex. 14, ECF No. 111-20 ("services for abortion . . . provided . . . in the case where a woman suffers from a physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, that would, as certified by a physician, place the woman in danger of death unless an abortion is performed.").

[7] The court also notes the Churches said a plan "completely" excluding coverage for abortion would not burden their religious exercise.  *See* Pls.' Response to Def.'s Suppl. Br. at 9–10.  While it does not affect the court's decision here, California Assembly Bill 2134, approved in late September 2022, amended the Knox-Keene Act and added, in pertinent part, section 1367.32 to California's Health and Safety Code.  Section 1367.32(a) provides:

> A health care service plan that provides health coverage to the employees of a religious employer that does not include coverage and benefits for both abortion and contraception shall provide, in writing upon initial enrollment and annually thereafter upon renewal, each enrollee with information regarding both of the following.
>
> (1) Abortion and contraception benefits or services that are not included in the enrollee's health care service plan contract.
>
> (2) Abortion and contraception benefits or services that may be available at no cost through the California Reproductive Health Equity Program.

Cal. Health & Safety Code § 1367.2(a).  This provision suggests the DMHC may approve a plan contract and evidence of coverage document that does not cover abortion care services under any circumstances.

9

Case 2:15-cv-02165-KJM-EFB   Document 138   Filed 02/03/23   Page 10 of 10

## II. CONCLUSION

The court **grants plaintiffs' request for a permanent injunction on their Free Exercise Clause claim** and **orders defendant to consider requests and proposals from the Churches for abortion care coverage comporting with their religious beliefs, and to approve or provide feedback on the proposed coverage within 30 days**. **If and when defendant approves coverage language comporting with the Churches' beliefs, she must request the employer's plan submit an amended evidence of coverage document containing the approved language within 30 days**.

IT IS SO ORDERED.

DATED: February 2, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE